**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)**

|  |  |
|---|---|
| **ASHLEY AMARIS OVERBEY, ET AL.,** | |
| *Plaintiffs*, | |
| v. | **CIVIL ACTION NO. 1:17-CV-1793 (JFM)** |
| **THE MAYOR AND CITY COUNCIL OF BALTIMORE, ET AL.,** | |
| *Defendants*. | |

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT MAYOR AND CITY
COUNCIL OF BALTIMORE'S MOTION TO DISMISS OR FOR SUMMARY
JUDGMENT AND TO STRIKE JURY DEMAND**

Defendant, Mayor and City Council of Baltimore ("the City"), by undersigned counsel

and pursuant to Rules 12(b)(6), 56, 12(f) and 39(a)(2) of the Federal Rules of Civil Procedure,

respectfully submits this Memorandum of Law in support of its Motion to Dismiss or for

Summary Judgment and to Strike Plaintiff's Jury Demand.

Respectfully submitted,

_____/s/_____
Jason R. Foltin, Assistant Solicitor (No. 29855)
Lydie E. Glynn, Assistant Solicitor (No. 29902)
Frederic Smalkin, Jr., Assistant Solicitor (No. 19240)
BALTIMORE CITY LAW DEPARTMENT
100 N. Holliday Street, Room 101
Baltimore, Maryland 21202
(410) 396-4431 office
(410) 547-1025 facsimile
Jason.Foltin@baltimorecity.gov
Fred.Smalkin@baltimorecity.gov
Lydie.Glynn@baltimorecity.gov
*Attorneys for the Mayor and City Council of Baltimore,
Defendant*

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ........................................................................................................... 1

UNDISPUTED MATERIAL FACTS ............................................................................ 2

LEGAL STANDARDS ................................................................................................. 7

    **Motion to Dismiss**............................................................................................. **7**

    **Motion for Summary Judgment** ..................................................................... **8**

ARGUMENT ................................................................................................................. 9

**I.   The Non-Disparagement clause does not violate the First Amendment because Ms. Overbey agreed to a valid contractual provision limiting her speech and entitling the City to liquidated damages for her failure to abide by the parties' agreement to end the dispute between them. .......................................................................... 10**

    A.  Ms. Overbey knowingly and voluntarily limited her speech and exercised her freedom to settle a dispute contractually by expressly acknowledging that she had read the eight-page Settlement Agreement and was represented by counsel during its negotiation................................................................................................... 10

        *1.  Ms. Overbey expressly acknowledged that she had read the Settlement Agreement and was knowingly and voluntarily limiting her right to speak publicly about her case. ...................................................................................................... 11*

        *2.  The Non-Disparagement clause in the City's Settlement Agreement with Ms. Overbey does not undermine the public interest and promotes the speedy and amicable resolution of disputes without the use of scarce and expensive judicial resources. ...................................................................................................... 15*

    B.  The City is not responsible for Ms. Overbey's misunderstanding of the Settlement Agreement, and the Non-Disparagement clause remains valid. ................................. 18

**II.  The Baltimore Brew's claims must be dismissed for lack of standing and failure to state a claim upon which relief can be granted. .......................................................... 19**

    A.  The Baltimore Brew cannot allege an injury in fact and therefore lacks standing to bring its First Amendment claim before this Honorable Court. ................................. 19

    B.  The Baltimore Brew is not entitled to access information that parties have agreed to keep from the public. ............................................................................................ 21

**III. Plaintiffs' three contract claims are barred by Maryland's statute of limitations and accord and satisfaction, and lack any substantive merit............................................. 22**

A. All contract claims in the Amended Complaint are time-barred under Maryland law because they were not brought within one year of the alleged breach. ...................... 22

B. Ms. Overbey waived her contract claims against the City by accepting the City's $31,500 payment under the Settlement Agreement. .................................................. 23

C. Plaintiffs' interpretation of Maryland public policy does not clearly and unequivocally outweigh the law's traditional interest in protecting the parties' expectations, its abhorrence of unjust enrichment, and the public interest in allowing speedy and amicable resolution of suits. .................................................................... 24

D. The amount of liquidated damages in the Non-Disparagement clause is not unlawful because it was subject to negotiation and reflects the inherent difficulty of proving the amount of harm resulting from Ms. Overbey's undisputed breach. .......................... 26

E. The City rightly withheld liquidated damages from its payment to Ms. Overbey under the Settlement Agreement because she undisputedly breached the Non-Disparagement clause. ............................................................................................... 28

**IV. Plaintiffs are not entitled to a jury trial under the express terms of the Settlement Agreement. ........................................................................................................................ 29**

CONCLUSION.......................................................................................................................... 31

CERTIFICATE OF COMPLIANCE......................................................................................... 32

TABLE OF AUTHORITIES ..................................................................................................... 33

## INTRODUCTION

This case arises from a settlement agreement that Plaintiff Ashley Overbey ("Ms. Overbey") signed, on advice of counsel, in August 2014 ("the Settlement Agreement" or "the Agreement"), terminating a lawsuit she had brought against three individual Baltimore City Police Officers.  Ms. Overbey's Settlement Agreement included a release of all potential claims against the Officers and the City in exchange for $63,000.00 ("the Settlement Sum").  The Agreement also included a Non-Disparagement clause; Ms. Overbey agreed to limit her future public comments about the matter, and if she failed to do so, the City would be entitled to fifty percent (50%) of the total Settlement Sum as liquidated damages.  Ms. Overbey, joined by Plaintiff Baltimore Brew, now claims that the Non-Disparagement clause is void under Maryland law and the First Amendment to the United States Constitution, and that the City stands in breach of what remains of the contract.

Plaintiffs' First Amendment claims are not conventional First Amendment claims.  They do not allege that their rights to speak or report were violated by a City statute, ordinance, or regulation.  Nor do Plaintiffs allege that the City decided *ex post* to retaliate, after Ms. Overbey spoke.  Rather, Plaintiffs admit that Ms. Overbey voluntarily agreed to limit her comments on a matter of public concern in exchange for a negotiated benefit (*i.e.*, monetary compensation), but that the City nonetheless violated Ms. Overbey's First Amendment rights when it withheld half of the Settlement Sum, as agreed.  Fundamentally, then, Plaintiffs' claims are contract claims.

Ms. Overbey's decision to accept the terms and conditions of the Settlement Agreement was a deliberate choice that she made after considering the recommendations and advice of her counsel.  She chose to accept monetary compensation in lieu of pursuing a damages award, and by virtue of that exchange, both parties sacrificed their right to have an ultimate authority resolve

1

their claims and defenses.  This left the door open for Ms. Overbey to continue the debate over her case, but she signed the Agreement in order to bring the dispute to an end, expressly agreeing to limit her public comments in exchange for financial compensation.  Ms. Overbey now seeks to repudiate her knowing and voluntary act, and thereby throw into question all settlement agreements entered into by governments and private parties who have mutually agreed to resolve their disputes without resorting to litigation.  Plaintiffs' claims have no basis in law or public policy, and their Amended Complaint must therefore be dismissed.  Alternatively, the City is entitled to summary judgment and declaratory relief in its favor.

## UNDISPUTED MATERIAL FACTS

Plaintiffs' Amended Complaint discusses many alleged incidents of police misconduct in Baltimore City and around the nation, but those allegations – troubling as they may be – are irrelevant.  The facts pertinent to the instant case are few and uncontroversial.  On or about April 30, 2012, Ms. Overbey summoned the Baltimore City Police Department to her apartment in Baltimore City, Maryland.  Am. Compl. (ECF No. 5), ¶¶ 32, 34.  Ms. Overbey was arrested and charged with six counts of assault and one count of resisting arrest.  *Id.* at ¶ 44. The Office of the State's Attorney for Baltimore City later dismissed the charges against Ms. Overbey.  *Id.* at ¶ 45.

Over one year later, on or about August 28, 2013, Ms. Overbey filed a Complaint in the Circuit Court of Maryland for Baltimore City against Baltimore City Police Officers Fred Hannah, Martin Richardson, and Grant Galing.  *Id*. at ¶ 46.[1]  Ms. Overbey's publicly available,

---

[1] Plaintiffs assert that Ms. Overbey's original lawsuit was brought against the City, as well as the three individual officers listed above. Am. Compl. ¶ 46.  Her complaint, however, did not include the City or the Police Department as named defendants. *See* Ms. Overbey's Complaint filed in the Circuit Court of Maryland for Baltimore City ¶¶ 3-5, attached hereto and incorporated herein as **Exhibit 1**.

twelve-page Complaint set forth her detailed factual account of her arrest on April 30, 2012, and claimed false arrest, false imprisonment, battery, violation of the Maryland Declaration of Rights, and malicious prosecution.  *See generally* **Ex. 1**.  The case advanced through the pretrial phases, with counsel exchanging discovery requests and responses.  *See generally* Circuit Court of Maryland for Baltimore City Case Information Sheet, attached hereto and incorporated herein as **Exhibit 2**.  Ms. Overbey was represented by counsel at every stage of the litigation, including during settlement negotiations.  *Id.*; *see* Am. Compl. ¶ 52-56.

After pursuing her lawsuit for nearly two years, Ms. Overbey entered into a Settlement Agreement ("the Settlement Agreement" or "the Agreement") to resolve her claims.  *Id.* at ¶ 48. The Agreement is a brief, eight-page document that contains only nineteen numbered paragraphs of material terms.  *See generally* Ms. Overbey's Settlement Agreement, attached hereto and incorporated herein as **Exhibit 3**.[2]  Paragraph 8, entitled "No Admission of Liability," explains the purpose of the Agreement:

> It is understood and agreed by the Settling Parties that this Agreement and the releases contained herein shall not be construed as an admission of liability on the part of the Released Parties, any such liability being expressly denied, and that rather, the purpose of this Agreement is to fully and finally resolve all differences amongst the Settling Parties and to allow the Settling Parties to avoid the time, expense and uncertainties of protracted litigation.

**Ex. 3** ¶ 8.

---

[2] Although Plaintiffs have referenced the Settlement Agreement as "Exhibit A" to their Complaint, Am. Compl. ¶ 48, the City was not served with a copy of this document, nor was it uploaded to this Court's CM/ECF filing system.  The City has therefore included it as an exhibit to this Motion, to complete the record.

3

Because the Settlement Agreement ended the parties' dispute in lieu of a final judgment on the merits, it contained a narrowly-tailored provision entitled "Non-Disparagement and Limitation on Public Statements":

> It is understood and agreed by the Settling Parties that in exchange for the payment of the Settlement Sum by the Released Parties, the Releasing Party, and that party's agents, representatives and attorneys shall strictly refrain from and avoid any attempt at defaming and/or disparaging the Released Parties, including each of the Released Parties' employees or agents regarding any matter related to, or arising from, the Litigation or the Occurrence. Further, in exchange for the payment of the Settlement Sum by the Released Parties and because the allegations of the Occurrence and Litigation are disputed, the Settling Parties agree that the Releasing Party and his or her agents, representatives and attorneys, shall limit their public comments regarding the Litigation and the Occurrence to the fact that a satisfactory settlement occurred involving the Parties. It is understood and agreed by the Settling Parties that this limitation on public statements shall include a prohibition against discussing any opinions, facts or allegations in any way connected to the Litigation or the Occurrence, or substance of any prior settlement offers or discussions with the news media, except that the Releasing Party's counsel may indicate that the Litigation has been settled to avoid the cost, time, expense and uncertainties of protracted litigation.
>
> The Settling Parties agree and understand that a breach of the obligations set forth in this Paragraph 9 is deemed by the Settling Parties to be a material breach of this Agreement for which the City is entitled to a refund of fifty percent (50%) of the Settlement Sum ($31,500.00) from the Releasing Party. The remainder of the Settlement Sum and all other obligations of this Agreement shall remain in force. If it is necessary for the City to pursue recovery in litigation of the refund it is entitled to under this paragraph, the City will be entitled to recover all reasonable attorneys fees, costs and expenses of such litigation from the Releasing Party.

*Id*. at ¶ 9.

Finally, in addition to providing for attorney's fees in the event of litigation over the Non-Disparagement clause, the parties explicitly waived the right to trial by jury. *Id*. at ¶ 15.

Ms. Overbey maintains that she signed the Settlement Agreement on the advice and encouragement of her counsel. Am. Compl. ¶ 52. By signing the Agreement, she expressly

4

represented and acknowledged that the terms had been negotiated, **Ex. 3** ¶ 13 ("The Parties

acknowledge and agree that **this Agreement represents the product of negotiations and shall**

**not be deemed to have been drafted exclusively by any one party** … .") (emphasis added),

and that she was knowingly and voluntarily executing the Agreement after reviewing it with her

attorneys:

> Each of the Settling Parties represents that each has read this
> Agreement and acknowledges that each has been represented or
> had the opportunity to be represented by legal counsel of their own
> choice throughout all of the negotiations which preceded the
> execution of this Agreement and that each party has voluntarily
> executed this Agreement with the consent and/or on the advice of
> such legal counsel. Each of the Settling Parties further
> acknowledges that each and such party's counsel have had
> adequate opportunity to make whatever investigation or inquiry
> they may deem necessary or desirable in connection with the
> subject matter of this Agreement prior to the execution hereof and
> the delivery and acceptance of the considerations specified herein.
> …

*Id*. at ¶ 16.

Shortly thereafter, on September 10, 2014, the City's Board of Estimates ("the BOE")[3]

ratified the Agreement.  *See id.* at ¶ 57; *see also* **Ex. 3** ¶ 4 (noting that payment of the Settlement

Sum was subject to, and contingent upon, the prior approval of the City's Board of Estimates).

Barely one day later, Ms. Overbey indisputably breached the Settlement Agreement by

making several provocative statements about the litigation on the *Baltimore Sun's* website,

including her personal judgment that the three individual Officers were culpable.  *See* Am.

Compl. ¶ 63 ("IF I were wrong my charges wldntve been thrown out and i wldntve received a

---

[3] The Board is composed of three elected positions (the Mayor of Baltimore City, the President
of the Baltimore City Council, and the Baltimore City Comptroller), and two Mayoral
appointments (the Director of the Baltimore City Department of Public Works and the Baltimore
City Solicitor).  BALTIMORE CITY CHARTER, Art. VI, § 1(a).

dime. Its people like you who make this cite the ****it…").  In addition to these posts, Ms.

Overbey made inflammatory statements on the *Baltimore Sun's* Facebook page, indicating that

she felt no need to abide by her agreement to limit public comments:

> Well I was the victim Victor Del Rio and FYI I WASNT TRYIN
> TO GET A CHECK! U white people in this city really URK me bc
> all of you believe the government and cops are golden and all us
> blacks jus lookin for a check.. WELL I PAY MY TAXES AND
> WORK JUS LIKE YOU AND THESE COPS BEAT ME FOR NO
> REASON OTHER THAN BC THEY CAN! I WANTED
> BADGES ON THE TABLE BC THEY SHLDNT BE ON THE
> STREETS BUT THE CITY WLDNT ALLOW THAT TO
> HAPPEN SO BEFORE U GO COMMENTING ON WHAT U
> DNT KNO DO US ALL A FAVOR AND DONT SAY
> ANYTHING! its always the ones who dnt kno jack wit the most to
> say! We argued bc the cops violated my home and were
> unprofessional from the time they arrived SO STOP BEING
> IGNORANT bc not al that u read is true and this article is no
> where near CLOSE TO WHAT REALLY HAPPENED!!! And for
> anyone else who has a negative opinion this is for you too!!! I
> wont say any more nor will I respond to anything else now that ive
> made my point.. The level of ignorance in this city is pathetic tho
> and facts r it mostly comes from these high and mighty white folks
> who feel they r entitled to EVERYTHING and we as black people
> arent! Well there are plenty of us who do work and do rite as
> citizens... So get a damn grip and most of alll MIND UR
> BUSINESS BC IM THE ONE WHO WAS THE VICTIM AND
> HAS TO DEAL WIT ALL THE BS BEHIND THIS INCIDENT!
> Take care now
>
> …
>
> Thx to all wit POSITIVE things to say!!!! LOL victor!! You sir are
> a sad case so ill just continue to laugh at u!! And Rayne whoever
> you are... lol IT BECAME A BLACK WHITE THING WHEN
> PEOPLE MADE IT DAT WAY! Far from a racist sweetheart my
> kid is half white LOL but I dislike any person who comes for me
> without ALL FACTS! PERIOD and fyi all the negativity has been
> from the WHITE citizens swear the lil black girl was actn "ghetto"
> jus to get a check and YES I SPOKE ON IT so my dear IF u dnt
> like it all u have to do IS MIND UR BUSINESS LIKE I STATED
> BEFORE... This was my life and MY privacy was invaded by this
> article... I cld talk to the papers BUT I have nothing to prove to
> ANY OF U... I jus hate ignorance so yea when its too stupid I jus
> have to address it... That is all folks... Take care♡♡

6

*See* Screenshots of Overbey Facebook Comments, attached hereto and incorporated herein as **Exhibit 4**.

Because Ms. Overbey breached the Agreement so soon after it was signed, the City had not yet issued payment.  The City therefore delivered a check to Ms. Overbey and her attorney for fifty percent of the full Settlement Sum, as provided by the express terms of the Non-Disparagement Clause, and in full statisfaction of the Settlement Agreement.  *See id.* at ¶ 64.  Accompanying this check was a letter explaining Ms. Overbey's undisputed breach of the Settlement Agreement. *See id.*; *see also* October 8, 2014 Letter from D. Ralph to R. Smith, attached hereto and incorporated herein as **Exhibit 5**.

Plaintiff Baltimore Brew did not report on the matter during the two years that Ms. Overbey pursued her case, before she had agreed to the Non-Disparagement clause.  And neither Ms. Overbey nor her counsel challenged the City's decision to include the Non-Disparagement clause in the Agreement, or to withhold any portion of the Settlement Sum as a result of Ms. Overbey's breach.  Instead, Ms. Overbey accepted the City's tender in full of $31,500.00, and then waited almost three years to file the instant Amended Complaint.

## LEGAL STANDARDS

### Motion to Dismiss

"A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint." *Bonham v. Weinraub*, 413 F. App'x 615, 616 (4th Cir. 2011) (citing *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008)).  Rule 8(a)(2) requires only a short and plain statement showing entitlement to relief, but "it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 679-70 (2009).  Plaintiffs' Amended Complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is

7

plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Under the plausibility standard, the Complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* at 555.  Thus, in considering the motion to dismiss, this Court can "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679.  Well-pleaded factual allegations contained in the Complaint are assumed to be true "even if [they are] doubtful in fact," but legal conclusions are not entitled to judicial deference.  *See Twombly*, 550 U.S. at 555 (stating that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation'" (citations omitted)).

To survive a Rule 12(b)(6) motion, the legal framework of the Complaint must be supported by factual allegations that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The Supreme Court has explained that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.  The plausibility standard requires that the pleader show more than a sheer possibility of success. *Twombly*, 550 U.S. at 556.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  Thus, this Court may "draw on its judicial experience and common sense" to determine whether the pleader has stated a plausible claim for relief.  *Id.* at 679.

## Motion for Summary Judgment

A motion for summary judgment is appropriate where "there is no genuine dispute as to any material fact" and "the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56. In assessing a motion for summary judgment, all reasonable inferences must be

drawn in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The party opposing summary judgment, however, "may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 256. A complete failure of proof "necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

## ARGUMENT

Plaintiffs bring a total of five claims against the City and the Police Department, seeking declaratory, injunctive, and contractual relief, and demanding a trial by jury. In Count I, Ms. Overbey alleges that the Non-Disparagement clause contained in the City's Settlement Agreement unlawfully penalizes protected speech in violation of the First Amendment. Am. Compl. ¶¶ 77-87. In Count II, Plaintiff Baltimore Brew alleges that the Non-Disparagement clause impinges on the free exercise of the press as protected by the First Amendment. *Id.* at ¶¶ 88-94. In Count III, both Plaintiffs claim that the Non-Disparagement clause violates Maryland public policy. *Id.* at ¶¶ 94-103. Count IV of the Amended Complaint, by Ms. Overbey only, seeks a declaratory judgment that the Non-Disparagement clause is an unlawful liquidated damages provision. *Id.* at ¶¶ 104-09. Finally, in Count V, Ms. Overbey brings a state law breach of contract claim premised on the City's decision to withhold a portion of the Settlement Sum for her breach of the Non-Disparagement clause. *Id.* at ¶¶ 105-13.

None of these five counts passes judicial scrutiny as a matter of law. By signing the Settlement Agreement on the advice and encouragement of counsel, Ms. Overbey waived any right to sue the City over the liquidated damages in the Settlement Agreement's Non-Disparagement clause. Further, the Baltimore Brew lacks standing to challenge the Settlement Agreement, and all of the contract claims in the Amended Complaint are barred by the applicable

Maryland statute of limitations.  Finally, the Settlement Agreement expressly waives the right to a jury trial.

**I.   The Non-Disparagement clause does not violate the First Amendment because Ms. Overbey agreed to a valid contractual provision limiting her speech and entitling the City to liquidated damages for her failure to abide by the parties' agreement to end the dispute between them.**

The First Amendment, as applied to the States through the Fourteenth Amendment,[4] prohibits the City from "abridging the freedom of speech, or of the press[.]"  U.S. CONST. AMEND. I, XIV.  In this case, the Non-Disparagement clause does not abridge Plaintiffs' freedom of speech because Ms. Overbey either voluntarily limited her speech or simply misunderstood the fact that she had agreed to a valid liquidated damages provision.

**A.   Ms. Overbey knowingly and voluntarily limited her speech and exercised her freedom to settle a dispute contractually by expressly acknowledging that she had read the eight-page Settlement Agreement and was represented by counsel during its negotiation.**

The rule of law that constitutional rights may be waived under certain circumstances is well-established.  *D.H. Overmyer v. Frick Co.*, 405 U.S. 174, 185 (1972). While this principle is most commonly applied in the context of criminal proceedings, it has been expressly applied to contractual waivers as well. *Id.*; *Lake James Community Volunteer Fire Dept., Inc. v. Burke County, North Carolina*, 149 F.3d 277, 280 (4th Cir. 1998) ("[S]imply because a contract includes a waiver of a constitutional right does not render the contract *per se* unenforceable."); *Erie Telecommunications v. City of Erie, Pa.*, 853 F.2d 1084, 1099 (3rd Cir. 1988) ("We know of no doctrine … providing a *per se* rule that constitutional claims, even First Amendment claims, may not be waived."); *Paragould Cablevision v. City of Paragould*, 930 F.2d 1310, 1315

---

[4] Plaintiffs fail to identify their particular constitutional causes of action, which appear to be brought under 42 U.S.C. § 1983 (2017).

(8th Cir. 1991) *cert. denied*, 502 U.S. 963 (1991); *Leonard v. Clark*, 12 F.3d 885, 890 (9th Cir. 1993).  The Fourth Circuit has held that waivers of constitutional rights – including specifically First Amendment rights – are enforceable so long as they are knowing, voluntary, and not contrary to the relevant public interest.  *Lake James*, 149 F.3d at 280.

Ms. Overbey's constitutional challenge to the Non-Disparagement clause fails as a matter of law because she knowingly entered into the Settlement Agreement to resolve her pending litigation, and in doing so, voluntarily limited her First Amendment rights.  Moreover, the Non-Disparagement clause does not undermine the public interest because it was intended to resolve a dispute amicably and without the time and expense of litigation, and because it was not intended to silence Ms. Overbey.  As such, any restrictions placed on Ms. Overbey's ability to speak on certain, limited matters were self-imposed and not contrary to the relevant public interest.

1. *Ms. Overbey expressly acknowledged that she had read the Settlement Agreement and was knowingly and voluntarily limiting her right to speak publicly about her case.*

In *Overmyer,* the Supreme Court held that three factors indicate a knowing and voluntary contractual waiver of a constitutional right: (1) the Plaintiff was represented by an attorney who reviewed the Contract before it was signed and therefore was aware of the significance of the waiver provision; (2) the parties negotiated the terms of the Contract, including the waiver clause ; and (3) the agreement containing the waiver provision was supported by substantial consideration.  405 U.S. at 185-87.  *See also Erie,* 853 F.2d at 1097 (First Amendment waived where the Contract had been negotiated, the plaintiff was represented by counsel, and the plaintiff received substantial consideration).

First, like the parties in *Overmyer*, *Leonard*, and *Lake James*, Ms. Overbey was represented by counsel throughout the contractual negotiations, and she executed the Agreement after receiving legal advice and weighing her options. *See* Am. Compl. ¶ 52.  As proof, the

11

Settlement Agreement contains an explicit provision, entitled "Knowing and Voluntary Act," which states:

> Each of the Settling Parties represents that each has read this Agreement and acknowledges that each has been represented or had the opportunity to be represented by legal counsel of their own choice throughout all of the negotiations which preceded the execution of this Agreement and that each party has voluntarily executed this Agreement with the consent and/or on the advice of such legal counsel. **Each of the Settling Parties further acknowledges that each and such party's counsel have had adequate opportunity to make whatever investigation or inquiry they may deem necessary or desirable in connection with the subject matter of this Agreement prior to the execution hereof and the delivery and acceptance of the considerations specified herein.** The Settling Parties shall bear their own costs, including, but not limited to, attorney's fees associated with the Dispute.

**Ex. 3** ¶ 16 (emphasis added).

Although Ms. Overbey claims that she did not fully understand the Non-Disparagement clause, that contention cannot stand in the face of the clear and compelling evidence that she signed a simple and clear Settlement Agreement. The Agreement is a mere eight pages with no fine print, and the Non-Disparagement clause is set off in its own, clearly-labeled paragraph. *Id.* at ¶ 9; *see Mowbray v. Zumot*, 536 F. Supp. 2d 617, 620 (D. Md. 2008) (enforcing a jury waiver provision that was contained in "a longer document" that was "far from voluminous"). The Non-Disparagement clause is also readily comprehensible, plainly stating that Ms. Overbey was to refrain from making defamatory or disparaging comments against the City and the three individual Officers, and placing certain limitations on public statements she or her attorney might make about the litigation. *See* **Ex. 3** ¶ 9. Ms. Overbey recognized and expressly acknowledged that she was waiving a constitutional right by signing the Agreement in exchange for substantial monetary compensation. *See id.* at ¶ 16.

12

Second, Ms. Overbey negotiated the Agreement and its Non-Disparagement clause with the advice and assistance of counsel.  *See* **Ex. 3** ¶ 13 ("The Parties acknowledge and agree that **this Agreement represents the product of negotiations and shall not be deemed to have been drafted exclusively by any one party** … .") (emphasis added).  As indicated in Plaintiffs' Amended Complaint, Ms. Overbey wanted to receive the monetary compensation offered by the City in exchange for dismissing her pending litigation. *See* Am. Compl. ¶ 53.  She and her counsel had to convince the City that resolving this case for a significant amount of money would be in its best interest, and the City wanted to ensure that the matter would truly be concluded.  The City justifiably sought to limit Ms. Overbey's public statements about the case, because it remained hotly contested and would not be tried to a conclusion in a court of law. Likewise, Ms. Overbey recognized that she was limiting her First Amendment rights by entering into the Agreement with the City and the three individual Officers.  She voluntarily limited these rights to receive substantial monetary compensation.  *See USA Technologies, Inc. v. Tirpak*, Civ. No. 12-2399, 2012 WL 1889157, at *10 (E.D. Pa. May 24, 2012) ("The written agreement, negotiated by counsel, which confers benefits to [the releasing party], is clear and compelling evidence of waiver.").  Enforcing the Agreement as written ensures that each party receives the benefit of its bargain.  Ms. Overbey should not now be permitted to obtain the rights which she voluntarily, knowingly, and intelligently agreed to forego merely because she no longer likes the terms to which she agreed.  As the Court observed in *Paragould*, "[b]y entering into the … agreement, …, [plaintiff] effectively bargained away some of its free speech rights … [plaintiff] cannot now invoke the first amendment to recapture surrendered rights." 930 F.2d at 1315.

Furthermore, there is no merit to Ms. Overbey's claim that her financial position or the City's purportedly superior bargaining power rendered her actions involuntary.  Plaintiffs'

Amended Complaint contains no allegations that the City coerced her to sign the Agreement or to limit her public comments regarding the pending lawsuit. Again, Ms. Overbey's signature clearly indicates that she had read and "voluntarily executed" the Settlement Agreement "with the consent and/or on the advice of counsel." **Ex. 3 ¶** 16. The fact that both parties were adequately represented by counsel throughout the settlement negotiations weighs heavily in favor of finding that her decision to enter into the Agreement was voluntary. *See Democratic Nat'l Comm. v. Republican Nat'l Comm.*, 673 F.3d 192, 206-07 (3d Cir. 2012) (explaining that a settlement agreement negotiated and signed by counsel for one of the settling parties provides clear and compelling evidence that said party knowingly, voluntarily, and intelligently waived certain First Amendment rights). Ms. Overbey could have, on or against the advice of counsel, rejected the Agreement and proceeded to litigate this matter to completion. She did not. Ms. Overbey also could have, at the very least, informed her counsel that she desired to change or otherwise modify certain terms of the Agreement. She did not. Instead, Ms. Overbey expressly acknowledged that it was the product of negotiations and not drafted exclusively by the City. **Ex. 3 ¶** 13. The signed Settlement Agreement therefore stands as clear and compelling evidence that Ms. Overbey knowingly and voluntarily waived the First Amendment rights she now exerts.

Additionally, if this Court were to credit Ms. Overbey's argument that her financial condition invalidates the Non-Disparagement clause, this would suggest that impoverished individuals lack the capacity to enter into such contracts and would throw into question all settlement agreements with parties of low economic status. Allowing Ms. Overbey to breach the Non-Disparagement clause and receive the full Settlement Sum would preclude others from credibly committing to a full and final dispute resolution outside of litigation—even where, as here, the party has expressly acknowledged that the settlement was negotiated. *See* **Ex. 3 ¶** 13.

14

This would be a windfall to Ms. Overbey and the Baltimore Brew, but a loss to all those of low economic status, who would be deprived of efficient alternative dispute resolution and forced against their will to bear the time, expense, and risk of litigation in a court of law.

In sum, there is no factual or legal basis for Ms. Overbey to now claim that she unknowingly or involuntarily waived her First Amendment rights, when her Amended Complaint and the express terms of the Settlement Agreement, signed with the benefit of advice of counsel, show the opposite.

    2.   *The Non-Disparagement clause in the City's Settlement Agreement with Ms. Overbey does not undermine the public interest and promotes the speedy and amicable resolution of disputes without the use of scarce and expensive judicial resources.*

Ms. Overbey knowingly and voluntarily limited her First Amendment rights, and must therefore rely on her claim that the Non-Disparagement clause undermines the public interest by silencing her on the issue of alleged police misconduct. This is incorrect as a matter of undisputed fact and law. The Non-Disparagement clause is narrowly tailored to the specific facts and circumstances of the underlying litigation, and states only that Ms. Overbey will not provide *further* comment on her case, the parties having agreed to bring years of litigation to an end. When this limitation is balanced against the significant public interest in promoting the resolution of matters without the time, expense, and risk of litigation, the only conclusion is that the waiver must be enforced.

Courts apply a balancing test to analyze the public's interest in a person's waiver of a constitutional or statutory right. Specifically, courts have determined that the waiver of a constitutional right is "unenforceable if the interest in its enforcement is outweighed in the circumstances by a public policy harmed by the enforcement of the agreement." *See Davies v. Grossmont Union High Sch. Dist.*, 930 F.2d 1390, 1396 (9th Cir. 1991) (citing *Town of Newton*

*v. Rumery*, 480 U.S. 386, 392 (1987)); *but see Erie*, 853 F.2d at 1099 ("[W]e are of the opinion

that the 'knowing, voluntary and intelligent' standard established by the Supreme Court for the

waiver of constitutional rights, subsumes consideration of the public's interests.").  Whether a

settlement violates public policy is a question of law that the court should decide on a motion to

dismiss.  *See, e.g., Jones v. Dodson*, 727 F.2d 1329, 1339 (4th Cir. 1984); *Livingstone v. North

Belle Vernon Borough,* 91 F.3d 515 (3rd Cir. 1996) (question of whether release-dismissal

agreement is in the public interest is a question of law for the court to decide); *St. Paul Fire &

Marine Ins. Co. v. FDIC,* 968 F.2d 695 (8th Cir. 1992) (whether a contractual provision violates

public policy is a question of law); and *American Casualty Co. v. FDIC,* 39 F.3d 633, 638 (6th

Cir. 1994).

     Plaintiffs allege that it is in the public's interest to hear about possible police misconduct.

The City does not dispute this presumption.  Nevertheless, just as the right to receive speech is

contingent upon the existence of a willing speaker, the "public's interest" in that speech

presupposes a willing speaker. *See Virginia State Bd. of Pharmacy v. Virginia Consumer

Council,* 425 U.S. 748, 756 (1976); *see also Town of Newton*, 480 U.S. at 394 ("Because

[Plaintiff] voluntarily waived his right to sue under § 1983, the public interest opposing

involuntary waiver of constitutional rights is no reason to hold this agreement invalid.").  Here, it

is clear that Ms. Overbey chose not to count herself as a willing speaker.  She knowingly and

voluntarily entered into the Settlement Agreement with the City and the three individual Officers

to resolve her claims in exchange for substantial monetary compensation. *See Town of Newton*,

480 U.S. at 395 (noting that a plaintiff has no public duty to institute a § 1983 action merely to

further the public's interest in revealing police misconduct and instead, explaining that Congress

has confirmed the decision to bring such actions to the injured individuals, not to the public at

16

large).  In so doing, she agreed to abide by the terms and conditions, including the Non-Disparagement clause, contained therein.

Importantly, the Non-Disparagement clause does not seek universal silence with respect to matters involving alleged police misconduct.  In particular, the Agreement was only binding on Ms. Overbey, leaving other members of the public free to voice their concerns about any improper actions by the police.  Ms. Overbey herself was not precluded from speaking out regarding any other instances of purported police misconduct – or any other issues of public concern for that matter – she was merely limited in making certain statements that would undermine the terms of the settlement.  *See* **Ex. 3** ¶ 9.  Moreover, Ms. Overbey was free to comment on her case for the two years preceding settlement.  As stated in her Amended Complaint, the incident in question occurred on April 30, 2012, and she filed suit a short time thereafter. *See* Am. Compl. ¶ 46.  The Agreement, however, was not executed until August 2014. *See generally* **Ex. 3**. Ms. Overbey therefore had **over two years** to make statements regarding her incident, and media outlets such as the Baltimore Brew had that time to investigate and report on the story.  Finally, even after the Agreement was signed, the Baltimore Brew's reporting could draw from the detailed allegations in Ms. Overbey's Complaint.  Neither Plaintiff chose to exercise their First Amendment Rights during that time, and they cannot now claim that the Defendants sought to silence them outright.

In addition, Ms. Overbey's narrowly tailored waiver of her First Amendment rights must be weighed against the considerable and important public interest of avoiding the time and expense of litigation. *Erie*, 853 F.2d at 1096; *Town of Newton*, 480 U.S. at 395-96.  The Settlement Agreement was designed to put an end to litigation and resolve conclusively all claims and disputes between Ms. Overbey, the City, and the three individual Officers.  *See* **Ex. 3**

¶ 8. Without a commitment from Ms. Overbey not to publicly speak on certain, disputed aspects of her litigation, the City and the Officers would not have had any reasonable assurance of closure. Ms. Overbey would have been able to pursue a trial in the court of public opinion, despite having settled her claims in fair exchange for $63,000.00 in compensation. The Settlement Agreement was not a shrewd or opportunistic purchase of Ms. Overbey's silence, and the Non-Disparagement clause was simply a means of upholding the integrity of the entire settlement, as agreed by all parties. By making possible the prospect of settlement, the Non-Disparagement clause helped the parties avoid the expensive and protected litigation that would have otherwise followed.

As such, the public interest in additional information concerning Ms. Overbey's encounter with the police – beyond what had been provided in her Complaint, or what could have been provided in the two years prior to settlement – cannot, standing alone, outweigh the considerable and important public interest of avoiding future conflict and expensive litigation. There is simply no basis for Plaintiffs' claim that enforcing the Non-Disparagement clause compromises a fundamental public right. For these reasons, this Court should dismiss Count I of Plaintiffs' Amended Complaint with prejudice and without leave to amend.

### B. The City is not responsible for Ms. Overbey's misunderstanding of the Settlement Agreement, and the Non-Disparagement clause remains valid.

As a matter of first principles, a First Amendment violation requires "actual or threatened government action to bar speech." *Donnangelo v. Myers*, 187 F.3d 629 (Table), 1999 WL 565834, at*3 (4th Cir. 1999) (citing *Renne v. Geary*, 501 U.S. 312, 320-22 (1991)). Plaintiffs' Amended Complaint therefore alleges, as a necessary element, that "Defendants' actions caused, directly and proximately, Ms. Overbey to suffer damages." Am. Compl. ¶¶ 87, 94. But Ms. Overbey directly contradicts that assertion when she alleges that she "did not appreciate at the

18

time that … the Agreement prohibited her from discussing her case in any public forum[.]" *Id.* at

¶ 54.  For the reasons set forth above, the Settlement Agreement was legally valid and

constitutionally sound.  Thus, to the extent that Ms. Overbey misunderstood the agreement or

relied on her attorney's representation, her damages flow directly and proximately from those

two sources and *not* from the City's actions.   Under those alleged circumstances, the Settlement

Agreement did not violate the First Amendment, and the Non-Disparagement clause remained in

full force and effect at all times relevant to the present case.  The City was therefore entitled to

fifty percent of the Settlement Sum, and Plaintiffs' Amended Complaint fails to state a claim.

## II.  The Baltimore Brew's claims must be dismissed for lack of standing and failure to state a claim upon which relief can be granted.

In Count II of the Amended Complaint, the Baltimore Brew alleges that the Settlement

Agreement's Non-Disparagement clause (a) interferes "with the right of the press to fully and

completely investigate and report on facts of public concern as guaranteed by the First

Amendment;" (b) "restrains free and lawful speech about issues of public concern and in the

process impedes the free exercise of the press as protected by the First Amendment;" and (c)

"impedes the ability of the . . . Baltimore Brew . . . to fully carry out the important role the press

plays in informing the public about government actions."  *See* Am. Compl. ¶¶ 88-94.  This Count

should be dismissed with prejudice because the Baltimore Brew (1) lacks standing and (2) does

not have a First Amendment right to obtain information that parties have agreed to keep from the

general public.

### A.  The Baltimore Brew cannot allege an injury in fact and therefore lacks standing to bring its First Amendment claim before this Honorable Court.

Under Article III of the United States Constitution, a plaintiff must have standing to bring

a claim before a federal court.  *See, e.g.*, *Lexmark Intern., Inc. v. Static Control Components,*

*Inc.*, 572 U.S. 1__, 134 S. Ct. 1377, 1386 (2014).  The Fourth Circuit has held that in order to

have standing to assert First Amendment deprivation claims, a plaintiff must allege "(1) an 'injury in fact'; (2) a 'causal connection between the injury and the conduct complained of,' such that the injury is 'fairly traceable' to the defendant's actions; and (3) a likelihood that the injury 'will be redressed by a favorable decision.'"  *Benham v. City of Charlotte*, 635 F.3d 129, 134 (4th Cir. 2011) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).  To allege an injury in fact, it is sufficient to allege "that one's First Amendment activities have been chilled."  *See Benham*, 635 F.3d at 135.  "Subjective or speculative accounts of such chilling effect, however, are not sufficient;" the "chilling effect must be objectively reasonable."  *Id.* (citation and internal quotation marks omitted).  The Fourth Circuit has also held that "[g]overnment action will be sufficiently chilling when it is 'likely [to] deter a person of ordinary firmness from the exercise of First Amendment rights.'"  *Id.* (quoting *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 500 (4th Cir. 2005)).

In *The Baltimore Sun Co. v. Erhlich*, the Fourth Circuit addressed the issue of whether the press was chilled by the former Governor's instruction to his employees not to speak to two reporters.  437 F.3d 410 (4th Cir. 2006).  With respect to the reporters' ability to allege an injury in fact, the Fourth Circuit stated that "[i]t would be inconsistent with the journalists' accepted role in the 'rough and tumble' political arena to accept that a reporter of ordinary firmness can be chilled by a politician's refusal to comment or answer questions."  *Id.* at 419.  The Fourth Circuit reviewed "'the plaintiff's actual response to the retaliatory conduct'" to determine whether their First Amendment Activity had been chilled.  *Id.* (quoting *Constantine*, 411 F.3d at 500).  Because the reporters "continue[d] to write as frequently as before the issuance of the Governor's directive, despite the inconvenience of relying on and scrutinizing other sources to garner comments" as well as continued "to comment, to criticize, and otherwise speak with the

20

full protection of the First Amendment," the Fourth Circuit concluded that the reporters had not been chilled from expressing themselves.  *Erhlich*, 437 F.3d at 419.  Similarly, in this case, while the Baltimore Brew is "foreclosed from directly accessing sources" due to the sources themselves waiving their right to speak under the First Amendment, the Baltimore Brew has "not been chilled to any substantial degree in [its] reporting."  *See id.*  The Baltimore Brew continues to publish stories about police action and to comment and criticize the Baltimore Police Department and the City with the full protection of the First Amendment.  *See Erhlich*, 437 F.3d at 419.  As such, the Baltimore Brew cannot allege an injury in fact and therefore cannot satisfy the causation and redressibility factors required to establish standing.  Accordingly, the Baltimore Brew does not have standing to bring the First Amendment claim alleged in Count II against the City.

### B. The Baltimore Brew is not entitled to access information that parties have agreed to keep from the public.

It has generally been held that the First Amendment does not guarantee the press a constitutional right of special access to information not available to the public generally."  *Branzburg v. Hayes*, 408 U.S. 665, 684 (1972) (citing *Zemel v. Rusk*, 381 U.S. 1, 16-17 (1965)).  While the Supreme Court has "explained why the right of access to criminal trials is fundamental to a democratic form of government[,] . . . [it] has not extended this rational to include access to civil trial proceedings and papers."  *Boone v. City of Suffolk*, 79 F. Supp. 2d 603, 607 (E.D. Va. 1999) (citing *Globe Newspaper Co. v. Superior Court for the County of Norfolk*, 457 U.S. 596, 606, 611 (1982)).  Moreover, the Supreme Court has concluded that "the First Amendment does not confer on the press a constitutional right to disregard promises that would otherwise be enforced under state law."  *Cohen v. Crowles Media Co.*, 501 U.S. 663, 672 (1991).

In this case, and for the reasons discussed above, the parties reached a legal, constitutional, and enforceable Agreement.  Ms. Overbey entered into the Settlement Agreement knowingly and voluntarily, following negotiations, and agreed to the Non-Disparagement clause. In so doing, Ms. Overbey accepted a large sum of money in exchange *inter alia* for her promise to keep from the public facts and details concerning the events giving rise to and following her suit.  Therefore, under Supreme Court precedent and in light of the Settlement Agreement, the Baltimore Brew does not have a First Amendment right to access information that the parties to the Settlement Agreement promised by contract to keep from the general public.  Accordingly, the Baltimore Brew's claim must therefore be dismissed for failure to state a claim.

### III. Plaintiffs' three contract claims are barred by Maryland's statute of limitations and accord and satisfaction, and lack any substantive merit.

Plaintiffs' Amended Complaint asserts three claims that are based solely on Maryland contract law: Count III, "Public Policy – The Agreement Violates Maryland Public Policy," Am. Compl. ¶¶ 95-103; Count IV, "Declaratory Judgment – Unlawful Liquidated Damages," *id.* at ¶¶ 104-09; and Count V, "Breach of Contract," *id.* at ¶¶ 110-13.  Each of these claims is barred by the Maryland statute of limitations applicable to contract actions against local governments, as well as by the fact that Ms. Overbey accepted the City's tendered payment in satisfaction of the Settlement Agreement.  Even if these claims were not barred, the Non-Disparagement clause is not void under Maryland public policy or the law of liquidated damages.  Additionally, Ms. Overbey's undisputed breach of the Non-Disparagement clause precludes her challenge of the City's decision to withhold agreed-upon liquidated damages.

### A. All contract claims in the Amended Complaint are time-barred under Maryland law because they were not brought within one year of the alleged breach.

The facts relevant to the present dispute all took place within Maryland, and the Settlement Agreement expressly states that it is governed by Maryland Law.  *See generally* Am.

Compl. ¶¶ 1-76; **Ex. 3** ¶ 18.  Therefore, this Court must look to the applicable statute of

limitations in Maryland.  *See Zukowski v. Dunton*, 650 F.2d 30, 34 (4th Cir. 1981) ("Since this

contract is governed by Maryland law, we must look at the Maryland statute of limitations."); *see*

*also Harbor Court Assocs. v. Leo A. Daly Co.*, 179 F.3d 147, 150 (4th Cir. 1999) (applying

Maryland Statute of Limitations in dispute over contract provision that allegedly violated

Maryland public policy).  The statute of limitations applicable to the Amended Complaint's

contract claims is Maryland Code, § 5-5A-01 of the Courts and Judicial Proceedings Article.

This statute bars a contract action based on a written contract, executed on behalf of the

municipal corporation or its units, unless the claimant files suit within one year after the date on

which the claim arose.[5]  MD. CODE, CTS. & JUD. PROC. § 5-5A-01(a), (c) (2017).

      The most recent fact alleged in the Amended Complaint is that the City tendered payment

on October 8, 2014.  Therefore, all contract claims must have arisen on or before that date, and

the limitations period expired on October 8, 2015.  Because Plaintiffs failed to file suit within the

limitations period, all contract claims are time-barred and must be dismissed.

## B.  Ms. Overbey waived her contract claims against the City by accepting the City's $31,500 payment under the Settlement Agreement.

      "[I]t is clear that, in Maryland, when one party tenders a check in settlement of a dispute,

making clear that the tender will satisfy the claim against the tendering party if accepted, the

party who accepts and uses the check, even though protesting against settlement, cannot make

further claim against the tendering party."  *Loh v. Safeway Stores, Inc*., 47 Md. App. 110, 116,

422 A.2d 16, 20 (1980) (cited with approval in *Kitchings v. Mayor & Common Council of Inc.*

*Town of Capitol Heights*, 22 F. App'x 118, 119 (4th Cir. 2001)).  In the present case, the City

---

[5] The Statute alternatively provides one year from the date of completion of the contract that
gave rise to the claim, if that date is later.  MD. CODE, CTS. & JUD. PROC. § 5-5A-01(c) (2017).

tendered payment in full satisfaction of the Settlement Agreement, and Ms. Overbey gladly

accepted the $31,500.00.  Even if Ms. Overbey had accepted payment under protest, her claims

would have been extinguished under Maryland law.  The fact that she accepted $31,500.00

*without protest* and now, three years later, seeks an additional $31,500.00, is beyond the pale of

reason and the law of contract in Maryland.  For this reason, as well, all three Contract claims

must be dismissed.

C. **Plaintiffs' interpretation of Maryland public policy does not clearly and unequivocally outweigh the law's traditional interest in protecting the parties' expectations, its abhorrence of unjust enrichment, and the public interest in allowing speedy and amicable resolution of suits.**

Plaintiffs allege in Count III of the Amended Complaint that the Non-Disparagement

clause is void because it violates Maryland public policy.  Am. Compl. ¶¶ 95-103.  Maryland

courts will invalidate a contract under the inherently "indeterminate" public policy doctrine

"only where the factors that argue against implementing the particular provision clearly and

unequivocally outweigh 'the law's traditional interest in protecting the expectations of the

parties, its abhorrence of any unjust enrichment, and any public interest in the enforcement' of

the contested term."  *Maryland-Nat'l Capital Park & Planning Comm'n v. Washington Nat.

Arena*, 282 Md. 588, 605-07, 386 A.2d 1216, 1228-29 (1978) (citing RESTATEMENT (SECOND) OF

CONTRACTS § 320, Comment b (Tent. Draft No. 12, 1977)).

The Court of Appeals explained the dangers and limits of the "highly elusive" public

policy doctrine at length in *Maryland-National Capital Park & Planning Commission v.

Washington National Arena*.  The Court noted that courts "have been unable to fashion a truly

workable definition of public policy," resorting often "to nothing more than their own personal

experience and intellectual capacity."  *Maryland-Nat'l,* 282 Md. at 605, 386 A.2d at 1228 (citing

6A A. Corbin, CONTRACTS § 1375, at 10 and 18 (1962)).

24

"(P)ublic policy . . . is but a shifting and variable notion appealed to only when no other argument is available, and which, if relied upon today, may be utterly repudiated tomorrow." *Kenneweg v. Allegany County*, 102 Md. 119, 125, 62 A. 249, 251 (1905).

Fearing the disruptive effect that invocation of the highly elusive public policy principle would likely exert on the stability of commercial and contractual relations, Maryland courts have been hesitant to strike down voluntary bargains on public policy grounds, doing so only in those cases where the challenged agreement is patently offensive to the public good, that is, where "the common sense of the entire community would . . . pronounce it" invalid. *Estate of Woods, Week & Co.*, 52 Md. 520, 536 (1879); *Trupp v. Wolff*, 24 Md.App. 588, 616, 335 A.2d 171, *cert. denied*, 275 Md. 757 (1975); *see Aged Men's Home v. Pierce*, 100 Md. 520, 526, 60 A. 277, 70 L.R.A. 485 (1905). This reluctance on the part of the judiciary to nullify contractual arrangements on public policy grounds also serves to protect the public interest in having individuals exercise broad powers to structure their own affairs by making legally enforceable promises, a concept which lies at the heart of the freedom of contract principle. RESTATEMENT (SECOND) OF CONTRACTS, Introductory Note to Ch. 14, at 46 (Tent. Draft No. 12, 1977); *see Baltimore & Ohio etc. Railway v. Voigt*, 176 U.S. 498, 505-06, 20 S.Ct. 385, 44 L.Ed. 560 (1900); *Miller v. Continental Ins. Co.*, 40 N.Y.2d 675, 389 N.Y.S.2d 565, 358 N.E.2d 258, 261 (1976); *Printing & Numerical Reg. Co. v. Sampson*, L.R., 19 Eq. 462, 465 (Ch.1875).

282 Md. at 605-07, 386 A.2d at 1228-29.

Because of the inherent infirmities of the public policy doctrine, Maryland courts will invalidate a contractual provision "only where the factors that argue against implementing the particular provision clearly and unequivocally outweigh 'the law's traditional interest in protecting the expectations of the parties, its abhorrence of any unjust enrichment, and any public interest in the enforcement' of the contested term." *Id.* (quoting RESTATEMENT (SECOND) OF CONTRACTS § 320, Comment b (Tent. Draft No. 12, 1977)). Additionally, "the lesser the relationship becomes . . . between a statute and a contractual provision, the greater is the reluctance of this Court to invalidate the provision on the basis of the public policy embraced in

25

statute." *Finci v. Am. Cas. Co. of Reading, Pennsylvania*, 323 Md. 358, 378, 593 A.2d 1069, 1079 (1991). Finally, "[i]n most cases, courts will not inquire into any inherent disparity in the utility of a given exchange between parties, but solely into its voluntariness." *Willard Packaging Co. v. Javier*, 169 Md. App. 109, 122, 899 A.2d 940, 947 (2006) (citing 24 *Williston on Contracts*, § 65:1, p. 213 (4th ed. 2002); Goetz and Scott, *Liquidated Damages, Penalties and the Just Compensation Principle: Some Notes on an Enforcement Model and a Theory of Efficient Breach*, 77 COLUM. L. REV. 554, n.12 (1977)).

Plaintiffs allege that the Non-Disparagement clause conflicts with two public policies of Maryland, but neither is relevant to this case. First, Plaintiffs cite the Maryland Public Information Act ("the MPIA"), but the Non-Disparagement clause in no way interferes with the disclosure of government or public documents under that statute. Am. Compl. ¶¶ 97-98; *see* MD. CODE, GEN. PROV. §§ 4-101 to 4-601 (2017). Second, Plaintiffs allege that, in what appears to be nothing more than their opinion, "[i]t is the public policy of every state, including Maryland, to encourage the disclosure of criminal activity, and non-disclosure agreements are void if they require silence in the face of an unreported crime." *Id.* Again, however, Plaintiffs can trace no connection between the Non-Disparagement clause and any "unreported crime." Furthermore, Plaintiff Baltimore Brew is not a party to, nor a beneficiary of, the Settlement Agreement, and as discussed in Section II.A above, lacks standing because it has not alleged an injury in fact. Thus, even if Count III of the Amended Complaint were not barred by the Maryland statute of limitations, it fails to state a valid claim.

**D. The amount of liquidated damages in the Non-Disparagement clause is not unlawful because it was subject to negotiation and reflects the inherent difficulty of proving the amount of harm resulting from Ms. Overbey's undisputed breach.**

In Count IV, Ms. Overbey alleges that despite breaching the Non-Disparagement clause, she is entitled to an additional $31,500.00 under the Settlement Agreement because the

liquidated damages provision she agreed to is punitive.  *See* Am. Compl. ¶ 107.  "[T]he determination of whether a particular clause in a contract is to be construed as providing for liquidated damages, or as a penalty, depends on the facts and circumstances in each case and is ordinarily a question of law for the court."  *Willard Packaging*, 169 Md. App. at 120-21, 899 A.2d at 946 (quoting *Traylor v. Grafton*, 273 Md. 649, 667, 332 A.2d 651 (1975) (citations omitted)).  "[T]he fundamental purpose of a valid liquidated damages provision is to provide a reasonable measure of compensation in the event of a breach where, at the time the provision is agreed to the damages are indeterminable or will be otherwise difficult to prove."  *Willard Packaging*, 899 A.2d at 947-48 (quoting *Williston.* § 65:3, p. 250).

    As Ms. Overbey expressly acknowledged when she signed the Settlement Agreement, its core purpose was to "settl[e] and terminat[e] all existing or future claims, disputes, and actions[.]"  **Ex. 3** at p. 1.  When Ms. Overbey undisputedly violated the clear terms of the Non-Disparagement clause by making inflammatory public comments about her case, she re-opened the dispute between the parties in a public forum and violated a central tenet and purpose of the Settlement Agreement.  The reputational damage from this undisputed breach remains difficult to measure, but because Ms. Overbey's actions reduced the Settlement Agreement to mere paper *and* resulted in additional reputational harm to the City and the Officers, the amount of actual damages could easily exceed the full Settlement Sum of $63,000.00.  The parties agreed, however, to liquidated damages of only half of the Settlement Sum, that being $31,500.00.  Having received $31,500.00 *after* flagrantly violating a core term of the Settlement Agreement, Ms. Overbey cannot now be heard to complain that she did not receive an additional $31,500.00.  The amount of liquidated damages was reasonable and not a penalty, and Count III of her Amended Complaint therefore fails to state a claim upon which relief can be granted.

**E.  The City rightly withheld liquidated damages from its payment to Ms. Overbey under the Settlement Agreement because she undisputedly breached the Non-Disparagement clause.**

In Count V of the Amended Complaint, Plaintiffs misrepresent the contents of the Non-Disparagement clause's liquidated damages provision, alleging that "it expressly provided that (1) the City would pay Ms. Overbey in total, and (2) the City could seek a "refund" of 50 percent of the settlement amount upon a violation of Section 9," Am. Compl. ¶ 111.  But the clause does not describe such a process; it only "expressly provides" that if Ms. Overbey breaches the agreement, the City is "entitled to a refund of fifty percent (50%) of the Settlement Sum ($31,500.00)[.]"  **Ex. 3** ¶ 9.  Nothing in that language obligates the City to "disburse the total settlement amount, and . . . seek to recoup that amount if a violation of the Agreement occurred." *See* Am. Compl. ¶ 112.  If the parties had contemplated such a complex procedure, it would have been explicitly set forth in the Non-Disparagement clause.

Furthermore, there is no dispute whatsoever that Ms. Overbey breached the express terms of the Non-Disparagement clause.  The fact that the City did not pay her the full amount and then seek to recoup the funds in litigation surely saved the parties the time and expense of such a process.  To hold otherwise would violate common sense and would not reasonably reflect what the parties intended at the time of formation.  *Brethren Mut. Ins. Co. v. Buckley*, 437 Md. 332, 348, 86 A.3d 665, 674 (2014) ("we always strive to interpret contracts in accordance with common sense") (citation omitted); *Spacesaver Sys., Inc. v. Adam*, 440 Md. 1, 8, 98 A.3d 264, 268 (2014) ("[A court is to] determine from the language of the agreement itself what a reasonable person in the position of the parties would have meant at the time it was effectuated.") (citation omitted).

Ms. Overbey's claim to damages for breach is based on a term that she has invented, and in any event is moot and of no consequence.  Thus, the allegation that she "was harmed . . . in an

amount to be proven at trial" is no more than a "formulaic recitation" of a necessary element that fails as a matter of law.  *See Twombly*, 550 U.S. at 555.  Therefore, this Court must dismiss Count V of the Amended Complaint because Plaintiffs failed to state a claim upon which relief can be granted.

## IV. Plaintiffs are not entitled to a jury trial under the express terms of the Settlement Agreement.

Pursuant to the Settlement Agreement, Ms. Overbey "**VOLUNTARILY WAIVE[D] ANY AND ALL RIGHTS TO A TRIAL BY JURY**" concerning actions "**FOR BREACH OF ANY COVENANT, TERM OR CONDITION OF THIS AGREEMENT.**"  Ex. 3 ¶ 15.  The Fourth Circuit has held that individuals have an absolute right to waive their Seventh Amendment right to a jury trial.  *See Leasing Serv. Corp. v. Crane*, 804 F.2d 828, 832 (4th Cir. 1986).  Additionally, it is well-established that "'the right to a jury trial, having been contractually waived, no longer exist[s].'"  *Mowbray*, 536 F. Supp. 2d at 621 (citation omitted).  A jury waiver provision is enforceable where (1) the consent was voluntary and informed, (2) the jury waiver provision was conspicuous and comprehensible, and (3) the relative bargaining power of the parties was manifestly equal.  *See Leasing Serv. Corp.*, 804 F.2 at 833; *see also Lake James*, 149 F.3d at 280 ("The contractual waiver of a constitutional right must be a knowing waiver, must be voluntarily given, must not undermine the relevant public interest in order to be enforceable.").

As previously stated, Ms. Overbey *knowingly* and *voluntarily* entered into the Settlement Agreement.  She was represented by and received the advice of counsel when reviewing and signing the Agreement and therefore the parties "'were not manifestly unequal in terms of bargaining positions.'"  *Mowbray*, 536 F. Supp. 2d at 621 (quoting *Leasing Serv. Corps.*, 804 F.2d at 833)).  Moreover, the "Waiver of Jury Trial Provision" of the Settlement Agreement is

29

clear and unambiguous, appears in bold capital letter, "set off in its own paragraph" on the second to last page of a short eight-page agreement containing "no fine print and relatively few lengthy paragraphs." *Id.* at 620-21. As such, the jury waiver provision of the Settlement Agreement "is sufficiently conspicuous to merit enforcement." *Id.* at 621. Ms. Overbey knowingly and voluntarily waived her right to a jury trial and the relevant public interest is not undermined by the enforcement of this waiver. Accordingly, Ms. Overbey is not entitled to a jury trial with respect to her claims alleged in the Amended Complaint and her request must be denied.

Furthermore, for the reasons set forth in Sections II and III of this Memorandum, Plaintiff Baltimore Brew lacks standing to bring a First Amendment claim and a Maryland Public Policy claim based on the Settlement Agreement before this Court because it failed to allege an injury in fact and is not a third party beneficiary of the Agreement. Moreover, Count II fails to state a claim upon which relief can be granted and Count III is barred by the statute of limitations. As a result, the Baltimore Brew's demand for a jury trial must also be denied.

## CONCLUSION

Plaintiffs' constitutional and contract claims have no basis in state or federal law or public policy, and their **Amended Complaint** must therefore be **DISMISSED WITH PREJUDICE AND WITHOUT LEAVE TO AMEND**.  In the alternative, this Court must enter summary judgment **AGAINST** Plaintiffs and **IN FAVOR OF** Defendants on all counts in the **Amended Complaint**.  Additionally, Defendant's Motion to Strike Jury Demand must be **GRANTED**.

Respectfully submitted,

_____/s/_____

Jason R. Foltin, Assistant Solicitor (No. 29855)
Lydie E. Glynn, Assistant Solicitor (No. 29902)
Frederic Smalkin, Jr., Assistant Solicitor (No. 19240)
BALTIMORE CITY LAW DEPARTMENT
100 N. Holliday Street, Room 101
Baltimore, Maryland 21202
(410) 396-4431 office
(410) 547-1025 facsimile
Jason.Foltin@baltimorecity.gov
Fred.Smalkin@baltimorecity.gov
Lydie.Glynn@baltimorecity.gov

*Attorneys for the Mayor and City Council of Baltimore, Defendant*

## <u>CERTIFICATE OF COMPLIANCE</u>

I HEREBY CERTIFY that on this 27th day of July, 2017, the foregoing Motion to Dismiss or for Summary Judgment and to Strike Jury Demand, Memorandum of Law in Support of Defendant's Motion to Dismiss or for Summary Judgment and to Strike Jury Demand, and Proposed Orders were filed in accordance with the Electronic Filing Requirements and Procedures, as established by the United States District Court for the District of Maryland.

_____/s/_____

Jason Foltin, *Assistant Solicitor*

BALTIMORE CITY LAW DEPARTMENT

# TABLE OF AUTHORITIES

## Cases

*Aged Men's Home v. Pierce*, 100 Md. 520, 60 A. 277, 70 L.R.A. 485 (1905) ............................ 25

*American Casualty Co. v. FDIC*, 39 F.3d 633 (6th Cir. 1994) .................................................... 16

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .................................................... 9

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................... 7, 8

*Baltimore & Ohio etc. Railway v. Voigt*, 176 U.S. 498, 20 S.Ct. 385, 44 L.Ed. 560 (1900) ........ 25

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................... 8, 29

*Benham v. City of Charlotte*, 635 F.3d 129 (4th Cir. 2011) ..................................... 20

*Bonham v. Weinraub*, 413 F. App'x 615 (4th Cir. 2011) ............................................. 7

*Boone v. City of Suffolk*, 79 F. Supp. 2d 603 (E.D. Va. 1999) ..................................... 21

*Branzburg v. Hayes*, 408 U.S. 665 (1972) ................................................. 21

*Brethren Mut. Ins. Co. v. Buckley*, 437 Md. 332, 86 A.3d 665 (2014) ........................................ 28

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ............................................. 9

*Cohen v. Crowles Media Co.*, 501 U.S. 663 (1991) ............................................. 21

*Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474 (4th Cir. 2005) .......... 20

*D.H. Overmyer v. Frick Co.*, 405 U.S. 174 (1972) .............................................. 10, 11

*Davies v. Grossmont Union High Sch. Dist.*, 930 F.2d 1390 (9th Cir. 1991) .............................. 15

*Democratic Nat'l Comm. v. Republican Nat'l Comm.,* 673 F.3d 192 (3d Cir. 2012) .................. 14

*Donnangelo v. Myers*, 187 F.3d 629 (Table), 1999 WL 565834 (4th Cir. 1999) ........................ 18

*Erie Telecommunications v. City of Erie, Pa.*, 853 F.2d 1084 (3rd Cir. 1988) .......... 10, 11, 16, 17

*Estate of Woods, Week & Co.*, 52 Md. 520 (1879) .................................................. 25

*Finci v. Am. Cas. Co. of Reading, Pennsylvania*, 323 Md. 358, 593 A.2d 1069 (1991) .............. 26

*Giarratano v. Johnson*, 521 F.3d 298 (4th Cir.2008) ................................................. 7

*Globe Newspaper Co. v. Superior Court for the County of Norfolk*, 457 U.S. 596, 606 (1982) .. 21

*Harbor Court Assocs. v. Leo A. Daly Co.*, 179 F.3d 147 (4th Cir. 1999)...................................... 23

*Jones v. Dodson*, 727 F.2d 1329 (4th Cir. 1984) ........................................................... 16

*Kenneweg v. Allegany County*, 102 Md. 119, 62 A. 249 (1905) ..................................................... 25

*Kitchings v. Mayor & Common Council of Inc. Town of Capitol Heights*, 22 F. App'x 118 (4th Cir. 2001) ................................................................................... 23

*Lake James Community Volunteer Fire Dept., Inc. v. Burke County, North Carolina*, 149 F.3d 277 (4th Cir. 1998)................................................................... 10, 11, 29

*Leasing Serv. Corp. v. Crane*, 804 F.2d 828 (4th Cir. 1986)........................................................... 29

*Leonard v. Clark*, 12 F.3d 885 (9th Cir. 1993) ........................................................... 11

*Lexmark Intern., Inc. v. Static Control Components, Inc.*, 572 U.S. 1__, 134 S. Ct. 1377, 1386 (2014) ............................................................................................... 19

*Livingstone v. North Belle Vernon Borough,* 91 F.3d 515 (3rd Cir. 1996) ................................. 16

*Loh v. Safeway Stores, Inc.*, 47 Md. App. 110, 422 A.2d 16 (1980) ........................................... 23

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ................................................................ 20

*Maryland-Nat'l Capital Park & Planning Comm'n v. Washington Nat. Arena*, 282 Md. 588, 386 A.2d 1216 (1978)........................................................................... 24, 25

*Miller v. Continental Ins. Co.*, 40 N.Y.2d 675, 389 N.Y.S.2d 565, 358 N.E.2d 258 (1976)........ 25

*Mowbray v. Zumot*, 536 F. Supp. 2d 617 (D.Md. 2008)........................................................ 12, 29

*Paragould Cablevision v. City of Paragould*, 930 F.2d 1310 (8th Cir. 1991) *cert. denied*, 502 U.S. 963 (1991)......................................................................... 11, 13

*Printing & Numerical Reg. Co. v. Sampson*, L.R., 19 Eq. 462 (Ch.1875) .................................. 25

*Renne v. Geary*, 501 U.S. 312, 320-22 (1991)..................................................................... 18

*Spacesaver Sys., Inc. v. Adam*, 440 Md. 1, 98 A.3d 264 (2014)................................................... 28

*St. Paul Fire & Marine Ins. Co. v. FDIC,* 968 F.2d 695 (8th Cir. 1992) ................................... 16

*The Baltimore Sun Co. v. Erhlich*, 437 F.3d 410 (4th Cir. 2006)........................................... 20, 21

*Town of Newton v. Rumery*, 480 U.S. 386 (1987) ................................................................ 16, 17

*Traylor v. Grafton*, 273 Md. 649, 332 A.2d 651 (1975)................................................................ 27

*Trupp v. Wolff*, 24 Md.App. 588, 335 A.2d 171, *cert. denied*, 275 Md. 757 (1975) .................... 25

*USA Technologies, Inc. v. Tirpak*, Civ. No. 12-2399, 2012 WL 1889157 (E.D. Pa. May 24, 2012) ...................................................................................................................................... 13

*Virginia State Bd. of Pharmacy v. Virginia Consumer Council,* 425 U.S. 748 (1976) ............... 16

*Willard Packaging Co. v. Javier*, 169 Md. App. 109, 899 A.2d 940 (2006) ......................... 26, 27

*Zemel v. Rusk*, 381 U.S. 1 (1965) ........................................................................................... 21

*Zukowski v. Dunton*, 650 F.2d 30 (4th Cir. 1981) .................................................................... 23

**Statutes**

42 U.S.C. § 1983 (2017) ................................................................................................... 10, 16

Baltimore City Charter, Art. VI, § 1(a) ................................................................................ 5

Md. Code, Cts. & Jud. Proc. § 5-5A-01 (2017) ...................................................................... 23

Md. Code, Gen. Prov. §§ 4-101 to 4-601 (2017) .................................................................... 26

**Other Authorities**

Goetz and Scott, *Liquidated Damages, Penalties and the Just Compensation Principle: Some Notes on an Enforcement Model and a Theory of Efficient Breach*, 77 Colum. L. Rev. 554 (1977) ................................................................................................................................. 26

Restatement (Second) of Contracts (Tent. Draft No. 12, 1977) ................................... 24, 25

**Rules**

Fed. R. Civ. P. 8(a)(2) ............................................................................................................ 7

Fed. R. Civ. P. 12(b)(6) ................................................................................................... i, 7, 8

Fed. R. Civ. P. 12(f) ................................................................................................................ i

Fed. R. Civ. P. 39(a)(2) ........................................................................................................... i

Fed. R. Civ. P. 56 ............................................................................................................... i, 8

**Treatises**

A. Corbin, Contracts (1962) ................................................................................................ 24

*Williston on Contracts* (4th ed. 2002) .............................................................................. 26, 27

**Constitutional Provisions**

U.S. CONST. AMEND. I ............................................................................................................. 10

U.S. CONST. AMEND. XIV ........................................................................................................ 10