**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)**

| | |
|---|---|
| **ASHLEY AMARIS OVERBEY, ET AL.,** | |
| *Plaintiffs*, | |
| v. | **CIVIL ACTION NO. 1:17-CV-1793 (JFM)** |
| **THE MAYOR AND CITY COUNCIL OF BALTIMORE, ET AL.,** | |
| *Defendants*. | |

---

**DEFENDANT MAYOR AND CITY COUNCIL OF BALTIMORE'S REPLY
MEMORANDUM IN FURTHER SUPPORT OF ITS MOTION TO DISMISS OR FOR
SUMMARY JUDGMENT AND TO STRIKE PLAINTIFF'S JURY DEMAND**

Defendant, Mayor and City Council of Baltimore ("the City"), by undersigned counsel,

submits this Reply Memorandum in further support of its Motion to Dismiss or for Summary

Judgment and to Strike Plaintiff's Jury Demand.

Respectfully submitted,

/s/
_____
Jason R. Foltin, Assistant Solicitor (No. 29855)
Lydie E. Glynn, Assistant Solicitor (No. 29902)
Frederic Smalkin, Jr., Assistant Solicitor (No. 19240)
BALTIMORE CITY LAW DEPARTMENT
100 N. Holliday Street, Room 101
Baltimore, Maryland 21202
(410) 396-4431 office
(410) 547-1025 facsimile
Jason.Foltin@baltimorecity.gov
Fred.Smalkin@baltimorecity.gov
Lydie.Glynn@baltimorecity.gov
*Attorneys for the Mayor and City Council of Baltimore,
Defendant*

# TABLE OF CONTENTS

ARGUMENT ................................................................................................................... 3

I.   **Ms. Overbey is not entitled to recoup $31,500.00 in stipulated contract damages because the First Amendment does not create a right to monetary payment, and her mere contract claim fails as a matter of law.** ................................................ 3

    A.  All of Ms. Overbey's claims are time-barred by Maryland's one-year statute of limitations for actions on municipal contracts. ............................................. 3

    B.  Ms. Overbey waived any claim to damages by accepting the City's $31,500 payment under the Settlement Agreement. ................................................................. 4

    C.  The City rightfully withheld liquidated damages when she undisputedly breached the contract's unambiguous terms. .................................................................... 5

    D.  Under Maryland law, Ms. Overbey's alleged subjective misunderstanding of the Settlement Agreement's objective terms does not excuse her undisputed breach of contract. .......................................................................................................... 6

    E.  Ms. Overbey cannot meet her burden of demonstrating that the stipulated damages in the Non-Disparagement clause are an unreasonable penalty as a matter of law. ......... 7

        *1.  Plaintiffs misstate case law to avoid their burden to show that the Non-Disparagement clause is a grossly excessive penalty.* ........................................... 8

        *2.  The stipulated damages in the Non-Disparagement clause are legal because they are not grossly excessive and are reasonably related to the uncertain or unmeasurable harm from Ms. Overbey's undisputed breach of contract.* ........... 10

II.  **Plaintiff Baltimore Brew lacks standing because it is not a third-party beneficiary to Ms. Overbey's—or anyone else's— contractual Settlement Agreement with the City.** 12

III. **Plaintiffs' novel constitutional argument that private parties cannot accept Non-Disparagement clauses offered by government entities is unsupported by legal precedent and contrary to logic, common sense, and sound public policy.** ............... 13

    A.  Plaintiffs concede that constitutional rights can be knowingly, voluntarily, and intelligently waived through contract. ..................................................................... 13

        *1.  Ms. Overbey and the City were on a level playing field when negotiating the terms of her Agreement.* ........................................................................................... 14

        *2.  Ms. Overbey knew she was waiving her First Amendment rights by executing her Agreement with the City.* ......................................................................................... 15

B.  Plaintiffs ignore the significant public interests served by the Non-Disparagement clause, and assume that government accountability and transparency depend on press conferences and internet comments. ........................................................................ 17

CONCLUSION .................................................................................................................... 20

TABLE OF AUTHORITIES ................................................................................................ 22

CERTIFICATE OF COMPLIANCE ..................................................................................... 25

## INTRODUCTION

Plaintiffs are trying to perform a magic trick.  In their Complaint and in their Opposition, they take facts that evidence, at most, a simple contract dispute, and use them to conjure a violation of the First Amendment to the United States Constitution.  Plaintiff Ashley Overbey ("Ms. Overbey") has not alleged any constitutional violation because the facts stated in the Complaint show that the Defendants did not restrict her speech.  Indeed, Ms. Overbey's speech on the topic of her police encounter remains unrestricted (to put it mildly).  The only harm to Ms. Overbey alleged in the Complaint is that she was not paid the amount of money she claims she was owed *under the Settlement Agreement.*

The First Amendment does not give Ms. Overbey a right to $63,000.00.  Only the Settlement Agreement—a negotiated contract between two parties, both represented by counsel—gave her a claim to that money.  And under the express terms of their contract, the parties stipulated that the City could withhold or recoup half that amount if she continued their dispute in public.[1]  Ms. Overbey did not abide by the express terms of her contract, and the City rightly withheld half of her settlement funds.  Nowhere in the Complaint or in the Opposition do Plaintiffs put forth any factual allegations that Ms. Overbey has been fined, arrested, or threatened by a government actor because of what she said—the *sine qua non* of a free speech violation.  Rather, the Complaint complains that Ms. Overbey was paid $31,500.00 pursuant to her contract with a government actor, instead of being paid $63,000.00.  Ms. Overbey's claim to the additional $31,500.00 payment is contractual, not constitutional.

---

[1] Plaintiffs would characterize Ms. Overbey's statements about the officers as truthful revelations about terrible police behavior.  The City and the officers in question would characterize the statements as completely untrue.  Both sides had a right to see one or the other characterization vindicated in the court of law, but both chose to enter into a voluntary contract that agreed to forgo a judicial resolution.

With the true nature of the Complaint laid bare, it is easy to see that it does not state a viable contract claim, for a long list of reasons apparent on the face of the Complaint.  Each of these reasons independently requires dismissal, and none was adequately countered in the Opposition.  Ms. Overbey's contract claim is barred by the statute of limitations; it is waived by her acceptance of the lesser amount offered in satisfaction of the claim; it is contrary to the objective meaning of the text of the contract; it cannot be created by Ms. Overbey's subjective misunderstanding of plain contractual terms under Maryland law; and the assertion that Settlement Agreement's liquidated damages provision was an unreasonable penalty is unsupported by factual allegation or legal precedent.

As untenable as Ms. Overbey's claim is, Plaintiff Baltimore Brew's claims are even worse.  Baltimore Brew does not have standing to assert a claim regarding Ms. Overbey's contract rights with the City because Baltimore Brew is neither a party nor a third-party beneficiary to this or any other Settlement Agreement with the City.  Further, Ms. Overbey has spoken openly to the Baltimore Brew despite her contractual agreement not to, and so has sacrificed her right to the $31,500.00 payout she now claims as damages.  Baltimore Brew also attempts to allege that it is harmed in general by the City's overall practice of using Non-Disparagement clauses in settlement contracts because these contracts—to which Baltimore Brew is in no way a party—make it harder to report on the matter that was settled.  The novel constitutional theory that undergirds this claim would have this Court create new law, holding that potential news sources abridge the First Amendment freedom of press by means of voluntary contractual agreements.  That argument is unsupported by any legal precedent and firmly at odds with logic, policy, and common sense.

The Plaintiffs repeatedly and falsely describe the Settlement Agreement's Non-Disparagement clause as a "gag order."  This is more than a melodramatic rhetorical embellishment—it is a misrepresentation used to avoid the plain legal infirmities of Plaintiffs' cases.  Without this false equivalence, the Plaintiffs' grandiose assertions of constitutional infringement is revealed for what it is: a contract claim dressed up in First Amendment flourish.  For these reasons, the Plaintiffs' Complaint fails to state a claim upon which relief can be granted and must be dismissed with prejudice, and without leave to amend.

## ARGUMENT

**I.    Ms. Overbey is not entitled to recoup $31,500.00 in stipulated contract damages because the First Amendment does not create a right to monetary payment, and her mere contract claim fails as a matter of law.**

Whether disguised in constitutional terms or thinly veiled as an equitable demand for specific performance of contractual payments, Ms. Overbey's claims are contractual in nature and not plausible under Maryland law.  All of her contract claims, legal and equitable, are barred because she filed her Complaint after the time allowed by Maryland's statute of limitations for municipal contracts, found at § 5-5A-01(a) and (c) of the Maryland Code, Courts and Judicial Proceedings Article.  Moreover, Ms. Overbey's monetary claim arises not from a violation of her constitutional rights, but from her failure to perform an unambiguous contractual obligation.  Ms. Overbey's claims are not only time-barred as a matter of law, but she is not entitled to the additional $31,500.00 for myriad legal reasons.

### A.   All of Ms. Overbey's claims are time-barred by Maryland's one-year statute of limitations for actions on municipal contracts.

Plaintiffs do not address the City's limitations argument in the body of their Opposition, relegating their defense to a footnote which argues—without legal support—that the statute "is an affirmative defense that the City has the burden of proving," and that "the City's violations

3

are still worth considering, in equity if not in law … ."  Pls.' Opp'n (ECF No. 18) p. 30.  Neither

of these claims has merit.

First, a limitations defense may be reached by a motion to dismiss filed under Rule

12(b)(6) when all facts necessary to the affirmative defense "clearly appear[ ] on the face of the

complaint."  *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (quoting *Richmond,*

*Fredericksburg & Potomac R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993) (emphasis added),

and citing *Desser v. Woods*, 266 Md. 696, 296 A.2d 586, 591 (1972)).

Second, as previously noted, the limitations period applicable to Ms. Overbey's contract

is one year.  MD. CODE ANN, [CTS. & JUD. PROC.] § 5-5A-01(a), (c) (2017).  *See also Zukowski*

*v. Dunton*, 650 F.2d 30, 34 (4th Cir. 1981) ("Since this contract is governed by Maryland law,

we must look at the Maryland statute of limitations."); *see also Harbor Court Assocs. v. Leo A.*

*Daly Co.*, 179 F.3d 147, 150 (4th Cir. 1999) (applying the Maryland Statute of Limitations in a

dispute over a contract provision that allegedly violated Maryland public policy).  Under

Maryland law, when a case involves concurrent legal and equitable remedies, "the applicable

statute of limitations for the legal remedy is equally applicable to the equitable one."  *State Ctr.,*

*LLC v. Lexington Charles Ltd. P'ship*, 438 Md. 451, 604, 92 A.3d 400, 491 (2014) (quoting

*Schaeffer v. Anne Arundel Cty.*, 338 Md. 75, 81, 656 A.2d 751, 754 (1995) (citations omitted)).

Because Ms. Overbey brought this suit more than one year after her claims arose, they are time-

barred both at law and in equity.

**B.  Ms. Overbey waived any claim to damages by accepting the City's $31,500**
**payment under the Settlement Agreement.**

Plaintiffs' Opposition does not so much as footnote the City's argument that Ms.

Overbey's claims are waived by her acceptance of $31,500 in satisfaction of the Settlement

Agreement.  "[I]t is clear that, in Maryland, when one party tenders a check in settlement of a

dispute, making clear that the tender will satisfy the claim against the tendering party if accepted, the party who accepts and uses the check, even though protesting against settlement, cannot make further claim against the tendering party." *Loh v. Safeway Stores, Inc.*, 47 Md. App. 110, 116, 422 A.2d 16, 20 (1980) (cited with approval in *Kitchings v. Mayor & Common Council of Inc. Town of Capitol Heights*, 22 F. App'x 118, 119 (4th Cir. 2001)).  Having accepted $31,500.00 three years ago, Ms. Overbey is simply not allowed under Maryland law to demand more money now.  For this reason, as well, Ms. Overbey's claims must be dismissed.

### C.  The City rightfully withheld liquidated damages when she undisputedly breached the contract's unambiguous terms.

Even if the statute of limitations and the doctrine of accord and satisfaction do not bar Ms. Overbey's claims, the express language of the contractual Settlement Agreement makes clear that she has not been deprived the benefit of any negotiated bargain.  The language of the Settlement Agreement made it abundantly clear that discussing the case in public would result in the Ms. Overbey receiving 50% of the full Settlement Amount.  Plaintiffs' extensive discussion as to whether Ms. Overbey waived her First Amendment rights in exchange for the remaining 50% of the payment is beside the point; she entered into a valid and binding contract, and then did precisely what her agreement said she would not.  Thus, the terms of the contract do not require the City to pay for performance that Ms. Overbey failed to perform.  In *Paragould Cablevision, Inc. v. City of Paragould, Ark.*, 930 F.2d 1310 (8th Cir. 1991), the Eighth Circuit observed that "[b]y entering into the … agreement, …, [plaintiff] effectively bargained away some of its free speech rights … [plaintiff] cannot now invoke the first amendment to recapture surrendered rights."  But what Ms. Overbey now demands is that, having voluntarily bargained away some of her free speech rights in exchange for monetary payment, she should nevertheless be allowed to exercise them and retain the monetary payment premised on her valid and binding

agreement to end the public dispute over her case.  In short, Ms. Overbey wishes to have her

First Amendment rights and eat them too.  She refuses to perform her side of the bargain, yet

demands that the City pay as though she had.  Contracts simply do not work that way.

> **D.  Under Maryland law, Ms. Overbey's alleged subjective misunderstanding of
> the Settlement Agreement's objective terms does not excuse her undisputed
> breach of contract.**

As noted, above, Plaintiffs concede that a party can waive their First Amendment rights

knowingly and voluntarily.  Pls.' Opp'n p. 14-15 (citing *Erie Telecommunications, Inc. v. City of

Erie, Pa.*, 853 F.2d 1084, 1096 (3d Cir. 1988)).  They argue, however, that Ms. Overbey did not

waive her rights because she did not understand the Settlement Agreement's terms.  Even if that

preposterous argument were true, Plaintiffs confuse Constitution and contract to draw attention

away from the twin facts that the Non-Disparagement clause was a valid and unambiguous

contract term, and that the law of unilateral mistake makes Ms. Overbey solely responsible for

the stipulated damages resulting from her undisputed breach.

Plaintiffs' argument proceeds as though the Settlement Agreement were a bill of attainder

unilaterally stripping Ms. Overbey of her constitutional rights, rather than the lawful and

voluntary contract that it was.  Regardless of whether Ms. Overbey was negotiating through her

attorney or directly with the City, she could have refused to accept the proffered terms, including

the Non-Disparagement clause.  Ms. Overbey could not have misunderstood the clear and

unambiguous language of the Non-Disparagement clause when she signed the Settlement

Agreement, and it goes without saying that she is denied the parties' agreed-upon amount of

damages for failing to perform as promised.  But even assuming Ms. Overbey did *not* understand

the Non-Disparagement clause when she read the agreement, this does not alter the objective

terms of the contract into which she and the City entered.  *See, e.g., Manning v. Mercatanti*, 898

F. Supp. 2d 850, 861–62 (D. Md. 2012) (citing, among others, *Cochran v. Norkunas*, 398 Md. 1,

16, 919 A.2d 700 (2007) ("Maryland adheres to the principle of the objective interpretation of contracts."); *Walton v. Mariner Health of Maryland, Inc.*, 391 Md. 643, 660, 894 A.2d 584 (2006) ("Generally, when seeking to interpret the meaning of a contract our search is limited to the four corners of the agreement."  The Court considers "what a reasonable person in the same position would have understood as the meaning of the agreement.")).  Simply put, the contract says what the contract says, not what Ms. Overbey subjectively thought it said.

Under Maryland law, unilateral mistake does not invalidate the terms of a settlement agreement absent "intentional, culpable conduct such as fraud or duress."  *Creamer v. Helferstay*, 294 Md. 107, 125, 448 A.2d 332, 341 (1982); *accord Smelkinson Sysco v. Harrell*, 162 Md. App. 437, 450–51, 875 A.2d 188, 196 (2005).  Ms. Overbey cannot, therefore, avoid her obligations under the Settlement Agreement, including liquidated damages for her undisputed breach of the Non-Disparagement clause.  And more to the point, she cannot somehow avoid her own obligations under the clause and yet demand that the City pay as though her obligations were performed.

Plaintiffs' attempts to frame this matter as constitutional infringement are misleading.  Even if this Court assumes Ms. Overbey did not "knowingly and voluntarily" agree to the Non-Disparagement clause, then she simply held the mistaken belief that she could make public comments about her case *and* retain the entire settlement amount of $63,000.00.  The Settlement Agreement remains the objective record of the funds Ms. Overbey was to receive under the circumstances alleged in the Complaint, and the City rightly withheld the $31,500.00 to which Ms. Overbey was not entitled.

>    **E.  Ms. Overbey cannot meet her burden of demonstrating that the stipulated damages in the Non-Disparagement clause are an unreasonable penalty as a matter of law.**

Plaintiffs correctly cite *Willard Packaging Co. v. Javier*, 169 Md. App. 109, 899 A.2d 940 (2006) for the general proposition that "whether a particular clause in a contract is to be construed as providing for liquidated damages, or as a penalty, depends on the facts and circumstances in each case and is ordinarily a question of law for the court." 169 Md. App. at 120–21 (quoting *Traylor v. Grafton*, 273 Md. 649, 667, 332 A.2d 651 (1975) (citations omitted)). But Plaintiffs seem not to fully understand that case, as they go on to mistake a narrow exception for a general point of law, and incorrectly argue that "[t]he City must show that the amount set forth in the Settlement Agreement, at the time the parties executed the Settlement Agreement, was a reasonable forecast of their damages in the event of a breach, and that the damages in the event of a breach were difficult to forecast." Pls.' Opp'n p. 33. This is incorrect, and under Maryland law it is *Plaintiffs* who have failed to meet their burden to show that the Non-Disparagement clause contains an illegal penalty. *Barrie Sch. v. Patch*, 401 Md. 497, 507–508, 933 A.2d 382, 388 (2007) ("[I]t is the challenger's burden to prove that the liquidated damages provision is invalid and unenforceable.").

1. *Plaintiffs misstate case law to avoid their burden to show that the Non-Disparagement clause is a grossly excessive penalty.*

Plaintiffs cite *Willard* for the proposition that "the burden of showing the enforceability of a liquidated damages clause is upon the party seeking to enforce the clause." Pls.' Opp'n p. 33. While that statement appears in *Willard*, it was a narrowly-tailored exception to the general rule that a challenger bears that burden. *See CAS Severn, Inc. v. Awalt*, 213 Md. App. 683, 701, 75 A.3d 382, 392 (2013). Furthermore, the narrow holding in *Willard* was *dicta* and has emphatically not—as Plaintiffs argue—been "consistently followed in Maryland courts." *See* Pls.' Opp'n p. 33.

In *Willard*, defendant-appellee Javier argued that plaintiff-appellant Willard had forced him to sign the non-compete clause under threat of being fired, and that its liquidated damages provision was an illegal penalty. *Id.* at 116-17, 899 A.2d at 944-45. The Court of Special Appeals started its discussion of the applicable burden by stating that it had found "no definitive Maryland law on this subject," and then noting that what followed was *dicta* intended "to be instructive in future litigation," because plaintiff-appellant Willard had not preserved the issue. 169 Md. App. at 127, 127 n.13, 899 A.2d at 950, 950 n.1. After making these disclaimers, the Court of Special Appeals drew from case law outside Maryland to craft a narrow ruling based on the specific facts presented. It concluded that "a non-breaching party cannot simply survive the legal test of reasonableness, *regardless of the assignment of the burden of proof*, where, as in the case *sub judice*, the court is not dealing with a freely negotiated damages provision made between two parties of equal sophistication." 169 Md. App. at 130, 899 A.2d at 952 (emphasis added).

The Court's holding in *Willard* was thus *dicta* and, contrary to Plaintiffs' arguments, it did not create a "standard" that "the proponent demonstrate that the stipulated damages represent a reasonable estimate of the likely damages that would flow from a breach." Pls.' Opp'n p. 34. Nor has the ruling been "consistently followed in Maryland courts," as Plaintiffs claim. *See* Pls.' Opp'n p. 34. Maryland state courts have cited the *Willard* opinion a mere three times, and only once on the issue of who bears the burden with respect to liquidated damages. *See CAS Severn* 213 Md. App. at 701, 75 A.3d at 392. Contrary to Plaintiffs' representation, that sole Maryland case specifically recognized that *Willard*'s "narrow" holding was contrary to the Court of Appeals' "indisputable statement that it is the challenger's burden to prove that the liquidated

damages provision is invalid and unenforceable." *CAS Severn*, 213 Md. App. at 701, 75 A.3d

382, 392 (citing *Barrie Sch. v. Patch*, 401 Md. 497, 507–508, 933 A.2d 382, 388 (2007)).

> 2. *The stipulated damages in the Non-Disparagement clause are legal because*
> *they are not grossly excessive and are reasonably related to the uncertain or*
> *unmeasurable harm from Ms. Overbey's undisputed breach of contract.*

The general rule remains that the burden to prove liquidated damages are an illegal

penalty rests with the challenger. *See id.* As the Court of Appeals explained in *Barrie School v.*

*Patch*, "Placing the burden of proof on the challenger is consistent with giving the non-breaching

party the advantage inherent in stipulated damages clauses, that of eliminating the need to prove

damages, and with the general principle of Maryland law that assumes that bargains are

enforceable and that the party asking the court to invalidate a bargain should demonstrate the

justice of his or her view." 401 Md. at 507-08, 933 A.2d at 388 (citing *Dashiell v. Meeks*, 396

Md. 149, 167, 913 A.2d 10, 20 (2006)). As Judge Bell noted in his dissent from *Barrie*,

"liquidated damages clauses are 'useful commercial tool[s] to avoid litigation to determine actual

damages[.]'" 401 Md. at 523, 933 A.2d at 398 (Bell, J., dissenting) (quoting *Mattingly Bridge*

*Co. v. Holloway & Son Const. Co.*, 694 S.W.2d 702, 705 (Ky. 1985)). Further, they "serve a

particularly useful function when damages are uncertain in nature or amount or are

unmeasurable, as is the case in many government contracts." *Priebe & Sons v. United States*,

332 U.S. 407, 411, 68 S. Ct. 123, 126, 92 L. Ed. 32 (1947). Because stipulated damages aid the

efficient administration of justice and are generally proper, Maryland courts will enforce them

unless the amount is "grossly excessive and out of all proportion to the damages that might

reasonably have been expected to result from such breach of the contract … or when there is a

large disparity between the amount payable under the provision and the actual damages likely to

be caused by a breach, so that it in effect seeks to coerce performance of the underlying

agreement … ." *Barrie*, 401 Md. at 509-10, 933 A.2d at 389-90 (quoting *Baltimore Bridge Co.*

*v. United Rys. & Elec. Co. of Baltimore*, 125 Md. 208, 215, 93 A. 420, 422 (1915); 24 WILLISTON ON CONTRACTS § 65:1 (4th ed.)) (internal quotation marks omitted).  Plaintiffs have not met their burden to show why the Court should now act in contravention of the explicit bargain they made when settling this dispute.

In the present case, Plaintiffs attempted to shift their burden to the City, rather than demonstrate that the liquidated damages in the Non-Disparagement clause are an illegal penalty. Hence, there is no basis for this Court to rule in their favor on that issue.  But even if the City did bear the burden on this issue, there is ample reason to uphold the liquidated damages at issue. The Settlement Agreement as a whole—and the Non-Disparagement clause's liquidated damages in particular—are designed to save the parties the time and expense of further argument and litigation over liability and damages.  The cost of continued debate over Ms. Overbey's case was difficult to estimate at the time that the parties negotiated the Settlement Agreement, and it remains difficult to ascertain even now.  Beyond doubt, however, is the fact that the permanent resolution of the case was of fundamental importance to the entire $63,000.00 settlement.  With pending litigation, the Court's truth-finding mechanisms provided both an incentive to tell the truth, and a means to bring the matter to a conclusive end.  Without the Non-Disparagement clause, the parties would be extremely unlikely to settle, or would do so at a vastly lower amount.  In light of how difficult it would be to measure actual harm for breach of the Non-Disparagement clause, and the fact that it is central to the entire Settlement Agreement, both parties acted reasonably when they stipulated that damages for breach would be fifty percent of the total settlement amount.  Plaintiffs have failed to meet their burden to show that this was an illegal penalty, and the liquidated damages they challenge must be held reasonable as a matter of law.

**II.     Plaintiff Baltimore Brew lacks standing because it is not a third-party beneficiary to Ms. Overbey's—or anyone else's— contractual Settlement Agreement with the City.**

"Standing is a threshold issue; a party may proceed only if he demonstrates that he has a real and justiciable interest that is capable of being resolved through litigation.  In order to have standing, a party must demonstrate an 'injury-in-fact,' or 'an actual legal stake in the matter being adjudicated.'"  *Norman v. Borison*, 192 Md. App. 405, 420, 994 A.2d 1019 (2010), *aff'd,* 418 Md. 630, 17 A.3d 697 (2011) (citing *Mayor & City Council of Ocean City v. Purnell-Jarvis, Ltd.*, 86 Md. App. 390, 403, 586 A.2d 816 (1991); *Hand v. Manufacturers & Traders Tr. Co.*, 405 Md. 375, 399, 952 A.2d 240 (2008)) (internal citations omitted) (emphasis added).  A "litigant must have standing 'to invoke the judicial process in a particular instance.'"  *Long Green Valley Ass'n v. Bellevale Farms, Inc.*, 205 Md. App. 636, 652, 46 A.3d 473 (2012), *aff'd,* 432 Md. 292, 68 A.3d 843 (2013) (quoting *Adams v. Manown*, 328 Md. 463, 480, 615 A.2d 611 (1992)).

Plaintiffs argue that the Baltimore Brew's alleged injury-in-fact "is the restriction of access to specific and essential sources of information—the victims of police brutality—by the gag order, not any form of self-censorship."  Pls.' Opp'n p. 26.  But the Baltimore Brew does not claim standing to sue based on the alleged facts of Ms. Overbey's case, for the apparent reason that she has provided them with ample information about her interaction with police.  Rather, Plaintiff Baltimore Brew bases its standing on allegations about other, unspecified settling parties who "rarely agreed to comment on the incident or settlement."  Am. Compl. (ECF No. 5) ¶ 75.  Plaintiff Baltimore Brew is thus attempting to fashion standing out of the assertion that an unspecified number of unnamed parties allegedly honored their voluntary, contractual obligations.  The City did not infringe upon citizen speech or freedom of the press in any of these cases; instead, it entered into mutually-agreeable settlements that terminated those disputes.

Plaintiff Baltimore Brew has no more standing to challenge these contractual agreements between settling parties than it did to challenge Ms. Overbey's.[2]

III.   **Plaintiffs' novel constitutional argument that private parties cannot accept Non-Disparagement clauses offered by government entities is unsupported by legal precedent and contrary to logic, common sense, and sound public policy.**

Plaintiffs have gone to great length to frame this case as a complex First Amendment issue with important public policy implications.   In so doing, they have been forced to manufacture a new and novel constitutional theory that would altogether *prohibit* parties to municipal contracts from agreeing to limit their public comments.  *See* Pls.' Opp'n p. 4.  This theory, however, stumbles out of the gate.  The sudden pounding of the drum by Plaintiffs that their constitutional rights have been violated, and that the Non-Disparagement clause flouts public policy, is utterly unsupported by any legal precedent and firmly at odds with logic, common sense, and good governance.

A.   **Plaintiffs concede that constitutional rights can be knowingly, voluntarily, and intelligently waived through contract.**

Preliminarily, Plaintiffs have conceded that individuals can waive their constitutional rights. *See* Pls.' Opp'n pp. 13-14 (citing *Erie Telecommunications, Inc.*, 853 F.2d at 1095; *Lake James Cmty. Volunteer Fire Dep't, Inc. v. Burke Cty., N.C.*, 149 F.3d 277, 280 (4th Cir. 1998)). This concession is fundamentally at odds with their novel constitutional theory.  To reconcile this apparent disconnect, Plaintiffs assert that settlement agreements with the City are inherently

---

[2] If one of these unnamed settling individuals did speak to Baltimore Brew, and the City then sued or took some other action to enforce the liquidated damages provision of the Non-Disparagement clause, the settling party would have standing to challenge the contract, but not Baltimore Brew.  A key distinction here is that the City simply has not "restrained free and lawful speech," Am. Compl. ¶ 92, even if the unspecified and unnamed parties never speak to Baltimore Brew.   These settling parties have simply chosen to enter into—and to retain—the benefits of their contractual agreements with the City.

suspect because they constitute non-negotiable contracts of adhesion that can never be entered

into knowingly and voluntarily.  This is incorrect as a matter of law.

>   1.  *Ms. Overbey and the City were on a level playing field when negotiating the terms of her Agreement.*

Plaintiffs have completely disregarded Ms. Overbey's ability to bargain over and

negotiate the terms of her Settlement Agreement.  They choose to ignore the express language of

contract, which states that the Settlement Agreement (and the terms contained therein) was the

"product of negotiations" and not "drafted exclusively by one party."  *See* Def.'s Mot. to

Dismiss, Ex. 3 ¶ 13 (ECF No. 11-3).  They also conveniently overlook the fact that Ms.

Overbey's signature on the document acknowledged that she and her counsel had every

opportunity to investigate or inquire into its subject matter, prior to its execution.  *See id*. at ¶ 16.

And they avoid the fact that Ms. Overbey could have pursued alternative options if she was

unhappy with the proposed terms of the Settlement Agreement, either by rejecting the Settlement

Agreement outright or informing her counsel that she desired to change or modify certain terms.

The fact that she did not pursue these options is immaterial; what matters is that these options

existed.  Taken together, these arguments clearly demonstrate that the parties were on a level

playing field when negotiating the terms of the Settlement Agreement.

Rather than address these arguments, Plaintiffs instead claim that the City places

"dispositive weight on Ms. Overbey's representation by counsel" and argue that because her

counsel was supposedly incompetent, her decision to waive her First Amendment rights must be

held invalid. Pls.' Opp'n p. 18. But the single case they cite does not support their position.  To

the contrary, the Court in *Atlantic Leasing & Financial, Inc. v. IPM Tech., Inc.*, focused on

whether the party seeking to invalidate a contractual waiver of its rights had *access* to, among

other things, competent legal counsel.  885 F.2d 188, 192 (4th Cir. 1989) (holding that there was

no evidence of grossly unequal bargaining position because "there is nothing to suggest that IPM lacked *access* to alternative computer suppliers, to alternative financing sources, or to competent legal counsel.") (emphasis added).  Unlike Ms. Overbey, IPM did not seek any assistance from legal counsel in reviewing its contractual agreement.  *See id*.  Nonetheless, the Court upheld IPM's waiver, noting that its decision to not utilize counsel in reviewing this contract "hardly excuses its officers and directors from an obligation to read the contract carefully on their own and to seek legal assistance if something is not clearly understood." *Id.*

Ms. Overbey, on the other hand, sought access to and received legal assistance from counsel. *See* Am. Compl. ¶ 52; *see also*, Pls.' Opp'n p. 3.  She personally selected this attorney to represent her interests.  The City had no role in this selection process and did not restrict her options in any way. In addition, Ms. Overbey had the option of seeking and obtaining access to alternative counsel if she was displeased with her attorney's representation.  She did not and, in fact, never once raised the issue of her counsel's legal assistance during the litigation of her claims, the settlement negotiations with the City, or the nearly two years subsequent to the execution of the Agreement.  If Ms. Overbey was truly dissatisfied with her attorney's representation, the appropriate recourse would be to pursue a malpractice claim, rather than bring this contract action against the City.

> 2. *Ms. Overbey knew she was waiving her First Amendment rights by executing her Agreement with the City.*

Because the City's settlement agreements are negotiable contracts and not contracts of adhesion, Plaintiffs are left to argue that Ms. Overbey did not fully understand the consequences of the Non-Disparagement clause.  This argument, however, is without merit.  First, it is undisputed that Ms. Overbey was represented by counsel throughout the underlying litigation and during all settlement negotiations with the City. *See* Am. Compl. ¶ 52; *see also*, Pls.' Opp'n

p. 3.  Second, the Settlement Agreement that she signed stated plainly that she had been advised about its consequences and that she was *knowingly* entering into the agreement. *See* Def.'s Mot. to Dismiss, Ex. 3 ¶ 3 (ECF No. 11-3) (expressly acknowledging that each party "voluntarily executed this agreement with the consent and/or on the advice of [] legal counsel" and has had an "adequate opportunity to make whatever investigation or inquiry they may deem necessary or desirable in connection with the subject matter of this Agreement prior to the execution hereof ….").  Third, the language of the Non-Disparagement clause was sufficiently clear and devoid of any complicated "legalese."  Ms. Overbey must have understood the plain meaning of the limitation imposed on certain public statements that she might make, especially with the assistance of her personally-selected counsel.

Regardless, Ms. Overbey's claims that she was unaware of the significance or scope of the Non-Disparagement clause are irrelevant.  What matters is that she has acknowledged, and still does, that she was aware she was waiving a general right to make public statements concerning the alleged facts and circumstances of her encounter with certain members of the Police Department. *See* Pls.' Opp'n Ex. A, Aff. of Ashley A. Overbey ¶ 4 (ECF No. 18-1) (attesting that Ms. Overbey understood that by signing the Agreement with the City she was giving up her right to speak on matters concerning her underlying litigation to the news media). Courts have held that it is possible to "knowingly waive a general right without contemplating the specific circumstances under which that waiver will be enforced." *Davies v. Grossmont Union High Sch. Dist.*, 930 F.2d 1390, 1395 (9th Cir. 1991); *see also Erie Telecommunications, Inc.*, 853 F.2d at 1097–98 (enforcing a contractual release of constitutional claims, including supposedly "unknown" claims, where the release unambiguously applied to "any" claims). This is exactly what Ms. Overbey claims happened here, and it is thus irrelevant whether Ms. Overbey

or her attorney misunderstood the clear language of the Non-Disparagement clause.  She knew, at the very least, that by signing the Agreement in exchange for substantial compensation, she was contractually waiving her general right to speak about the facts and circumstances underlying her case.  Moreover, Ms. Overbey admits that she understood she could not speak to the press, Aff. of Ashley A. Overbey ¶ 4, yet she made public comments on the *Baltimore Sun*'s website and Facebook pages, in clear violation of her Settlement Agreement.  The fact that she did not contemplate "the specific circumstances under which that waiver will be enforced" does not make her waiver any less knowing, and it does not excuse her undisputed breach of contract.

> **B. Plaintiffs ignore the significant public interests served by the Non-Disparagement clause, and assume that government accountability and transparency depend on press conferences and internet comments.**

As with many of the City's other arguments, Plaintiffs brush aside the valid public interests favoring the inclusion of the Non-Disparagement clause as "nonsensical."  *See* Pls.' Opp'n pp. 19-22, 30-32.  But these interests cannot be so readily overlooked. Aside from upholding an individual's right to autonomously enter into contractual agreements and to privately settle individual disputes, the closure and finality associated with the Non-Disparagement clause advances the important public interests of avoiding future conflict and expensive litigation.  Further, voluntary settlements promote the effective and reliable operation of governmental services.  *See Town of Newton v. Rumery*, 480 U.S. 386, 395–96, 107 S. Ct. 1187, 94 L. Ed. 2d 405 (1987) (highlighting the significant public interest favoring the settlement of litigation against governmental bodies); *Lake James Community Volunteer Fire Dept., Inc.*, 149 F.3d at 281 (noting that the effective and reliable operation of public services is a "strong public policy").

In furtherance of these two interests, the City resolved to end Ms. Overbey's underlying litigation and stop the drain on legal, financial, and police resources greatly needed by the

citizens of Baltimore at large.  Without a commitment from Ms. Overbey not to publicly speak on certain, disputed aspects of her litigation, the City and the Officers would not have had any reasonable assurance of closure.  Ms. Overbey would have been able to pursue a trial in the court of public opinion, despite having settled her claims in fair exchange for $63,000.00 in compensation.  The Settlement Agreement was not a shrewd or opportunistic purchase of Ms. Overbey's silence; the Non-Disparagement clause was simply a means of upholding the integrity of the entire settlement, as agreed by all parties.  By making possible the prospect of settlement, the Non-Disparagement clause helped the parties avoid the expensive and protracted litigation that would have otherwise followed.  The City and the Police Department could put the dispute behind them and return their focus to serving the Baltimore community.

Rather than recognize the important law and public policies favoring settlement—not to mention the practical benefits they create—Plaintiffs choose to see villains where none exist. They claim that the Non-Disparagement clause undermines police accountability and transparency, Pls.' Opp'n p. 19, and that it contravenes Maryland public policy favoring freedom of information, Pls.' Opp'n p. 31.  But to prevail under the "highly elusive" public policy doctrine, Plaintiffs must show that the Non-Disparagement clause is "patently offensive to the public good," and that "'the common sense of the entire community would . . . pronounce it' invalid."  *Maryland-Nat'l Capital Park & Planning Comm'n v. Washington Nat. Arena*, 282 Md. 588, 605–07, 386 A.2d 1216, 1228–29 (1978) (quoting *In re Woods, Weeks & Co.'s Estate*, 52 Md. 520, 536 (1879)).  *See also Finci v. Am. Cas. Co. of Reading, Pennsylvania*, 323 Md. 358, 378, 593 A.2d 1069, 1079 (1991) ("[T]he lesser the relationship becomes . . . between a statute and a contractual provision, the greater is the reluctance of this Court to invalidate the provision on the basis of the public policy embraced in statute.").  Neither of Plaintiffs' arguments is

availing, and they cannot meet their burden as a matter of law.  *See, e.g., Livingstone v. N. Belle Vernon Borough*, 91 F.3d 515 (3d Cir. 1996) (question of whether release-dismissal agreement is in the public interest is a question of law for the court to decide); *St. Paul Fire & Marine Ins. Co. v. F.D.I.C.*, 968 F.2d 695 (8th Cir. 1992) (whether a contractual provision violates public policy is a question of law); *Am. Cas. Co. of Reading, Pennsylvania v. F.D.I.C.*, 39 F.3d 633, 638 (6th Cir. 1994).

First, Plaintiffs argue that the Non-Disparagement clause "undermines the accountability and transparency that is necessary to the effective operation of the Police Department."  Pls.' Opp'n p. 19.  Plaintiffs do not, however, allege that the Non-Disparagement clause interferes with the Police Department's formal complaint process, or with any other official investigation or legal proceeding.[3]  Instead, Plaintiffs assume that the Police Department and its Officers cannot be held accountable unless this Court effectively compels settling parties to hold press interviews, and to make comments in public venues (such as the Baltimore Sun's website and its Facebook profile page).  And Plaintiffs completely ignore the reality that all parties to litigation have an incentive to speak truthfully while litigation is ongoing, to protect their credibility as witnesses.  Once a case has been resolved through settlement, these incentives inherent in the judicial process no longer exist.

_____

[3] Nowhere in the Department of Justice report that Plaintiffs cite at length is there any mention of the Non-Disparagement clause.  Instead, it found that "the current leadership of the City and the BPD already have taken laudable steps to … toward enhancing accountability and transparency throughout the Department by, for example, beginning to equip officers with body worn cameras …"  U.S. Dep't of Justice, Civil Rights Division, "Investigation of the Baltimore City Police Dep't" p. 5 (2016), https://www.justice.gov/opa/file/883366/ download.  Further, the City and the Police Department are legally committed to work together towards a comprehensive set of reforms, including extensive changes to misconduct investigations and discipline.  *U.S. v. Police Department of Baltimore City, et al.*, Civil Action No. 1:17-cv-00099-JKB, Consent Decree pp. 112-149 (ECF No. 2, January 12, 2017).  Already, citizens can go online to report possible Police misconduct. *See* https://www.baltimorepolice.org/citizen-complaint-form.

Second, Plaintiffs argue that the Non-Disparagement clause interferes with the public policy behind the Maryland Public Information Act.  But Plaintiffs do not describe any of the Act's provisions, nor do they explain how the Non-Disparagement clause inhibits public access to government records.  Instead, they merely state their familiar refrain that the Non-Disparagement clause "prevent[s] full accountability of police misconduct."  Pls.' Opp'n p. 31.

Plaintiffs' arguments regarding police accountability are merely speculative and do not establish that the Non-Disparagement clause is void as a matter of law.  The Non-Disparagement clause did not prevent Ms. Overbey, or any other settling party, from holding the Police Department accountable.  It is completely incongruous for Plaintiffs to argue that Ms. Overbey should retain the right to settle her legal claims in exchange for monetary payment, while maintaining that this Court should have prevented her from voluntarily agreeing—as part of that same contract—not to make further public comments.  This contradiction belies the fact that Ms. Overbey's lawsuit is simply an attempt to extract $31,500.00 from the City, after she indisputably violated her Settlement Agreement.  Plaintiffs' public policy arguments do not satisfy their legal burden to show that the Non-Disparagement clause is patently offensive to the public good.

## CONCLUSION

Plaintiffs' constitutional and contract claims have no basis in state or federal law or public policy, and their Amended Complaint must therefore be dismissed with prejudice and without leave to amend.  In the alternative, this Court must enter summary judgment against Plaintiffs and in favor of the City on all counts in the Amended Complaint.  Additionally, the City's Motion to Strike Jury Demand has been unopposed and thus, must be granted.

Respectfully submitted,

_____/s/_____
Jason R. Foltin, Assistant Solicitor (No. 29855)
Lydie E. Glynn, Assistant Solicitor (No. 29902)
Frederic Smalkin, Jr., Assistant Solicitor (No. 19240)
BALTIMORE CITY LAW DEPARTMENT
100 N. Holliday Street, Room 101
Baltimore, Maryland 21202
(410) 396-4431 office
(410) 547-1025 facsimile
Jason.Foltin@baltimorecity.gov
Fred.Smalkin@baltimorecity.gov
Lydie.Glynn@baltimorecity.gov

*Attorneys for the Mayor and City Council of Baltimore, Defendant*

# TABLE OF AUTHORITIES

## Cases

*Atlantic Leasing & Financial, Inc. v. IPM Tech., Inc.*, 885 F.2d 188 (4th Cir. 1989)............ 14, 15

*Adams v. Manown*, 328 Md. 463, 615 A.2d 611 (1992)................................................................ 12

*Am. Cas. Co. of Reading, Pennsylvania v. F.D.I.C.*, 39 F.3d 633 (6th Cir. 1994) ...................... 19

*Baltimore Bridge Co. v. United Rys. & Elec. Co. of Baltimore*, 125 Md. 208, 93 A. 420 (1915) 10

*Barrie Sch. v. Patch*, 401 Md. 497, 933 A.2d 382 (2007) ........................................................ 8, 10

*CAS Severn, Inc. v. Awalt*, 213 Md. App. 683, 75 A.3d 382 (2013) .................................... 8, 9, 10

*Cochran v. Norkunas*, 398 Md. 1, 919 A.2d 700 (2007) .............................................................. 6

*Creamer v. Helferstay*, 294 Md. 107, 448 A.2d 332 (1982)......................................................... 7

*Dashiell v. Meeks*, 396 Md. 149, 913 A.2d 10 (2006)................................................................. 10

*Davies v. Grossmont Union High Sch. Dist.*, 930 F.2d 1390 (9th Cir. 1991)............................... 16

*Desser v. Woods*, 266 Md. 696, 296 A.2d 586 (1972).................................................................... 4

*Erie Telecommunications, Inc. v. City of Erie, Pa.*, 853 F.2d 1084 (3d Cir. 1988)............ 6, 13, 16

*Finci v. Am. Cas. Co. of Reading, Pennsylvania*, 323 Md. 358, 593 A.2d 1069 (1991).............. 18

*Goodman v. Praxair, Inc.*, 494 F.3d 458 (4th Cir. 2007) .............................................................. 4

*Hand v. Manufacturers & Traders Tr. Co.*, 405 Md. 375, 952 A.2d 240 (2008)......................... 12

*Harbor Court Assocs. v. Leo A. Daly Co.*, 179 F.3d 147 (4th Cir. 1999)....................................... 4

*In re Woods, Weeks & Co.'s Estate*, 52 Md. 520 (1879) ............................................................. 18

*Kitchings v. Mayor & Common Council of Inc. Town of Capitol Heights*, 22 F. App'x 118 (4th

    Cir. 2001) .................................................................................................................................... 5

*Lake James Cmty. Volunteer Fire Dep't, Inc. v. Burke Cty., N.C.*, 149 F.3d 277 (4th Cir. 1998)13,

    17

*Livingstone v. N. Belle Vernon Borough*, 91 F.3d 515 (3d Cir. 1996) ........................................ 19

*Loh v. Safeway Stores, Inc.*, 47 Md. App. 110, 422 A.2d 16 (1980) ............................... 5

*Long Green Valley Ass'n v. Bellevale Farms, Inc.*, 205 Md. App. 636, 46 A.3d 473 (2012), *aff'd,*

    432 Md. 292, 68 A.3d 843 (2013) ..................................................................... 12

*Manning v. Mercatanti*, 898 F. Supp. 2d 850 (D. Md. 2012) ....................................... 6

*Maryland-Nat'l Capital Park & Planning Comm'n v. Washington Nat. Arena*, 282 Md. 588, 386

    A.2d 1216 (1978) ........................................................................................ 18

*Mattingly Bridge Co. v. Holloway & Son Const. Co.*, 694 S.W.2d 702 (Ky. 1985) ................... 10

*Mayor & City Council of Ocean City v. Purnell-Jarvis, Ltd.*, 86 Md. App. 390, 586 A.2d 816

    (1991) ......................................................................................................... 12

*Norman v. Borison*, 192 Md. App. 405, 994 A.2d 1019 (2010), *aff'd,* 418 Md. 630, 17 A.3d 697

    (2011) ......................................................................................................... 12

*Paragould Cablevision, Inc. v. City of Paragould, Ark.*, 930 F.2d 1310 (8th Cir. 1991) .............. 5

*Priebe & Sons v. United States*, 332 U.S. 407, 68 S. Ct. 123, 92 L. Ed. 32 (1947) ................... 10

*Richmond, Fredericksburg & Potomac R. Co. v. Forst*, 4 F.3d 244 (4th Cir. 1993) ................... 4

*Schaeffer v. Anne Arundel Cty.*, 338 Md. 75, 656 A.2d 751 (1995) ................................. 4

*Smelkinson Sysco v. Harrell*, 162 Md. App. 437, 875 A.2d 188 (2005) ......................... 7

*St. Paul Fire & Marine Ins. Co. v. F.D.I.C.*, 968 F.2d 695 (8th Cir. 1992) ......................... 19

*State Ctr., LLC v. Lexington Charles Ltd. P'ship*, 438 Md. 451, 92 A.3d 400 (2014) ................. 4

*Town of Newton v. Rumery*, 480 U.S. 386, 107 S. Ct. 1187, 94 L. Ed. 2d 405 (1987) .............. 17

*Traylor v. Grafton*, 273 Md. 649, 332 A.2d 651 (1975)............................................. 8

*Walton v. Mariner Health of Maryland, Inc.*, 391 Md. 643, 894 A.2d 584 (2006)................... 7

*Willard Packaging Co. v. Javier*, 169 Md. App. 109, 899 A.2d 940 (2006)....................... 8, 9

*Zukowski v. Dunton*, 650 F.2d 30 (4th Cir. 1981)....................................................... 4

**Statutes**

§ 5-5A-01(a) and (c) of the Maryland Code, Courts and Judicial Proceedings..............................3

**Other Authorities**

24 WILLISTON ON CONTRACTS § 65:1 ........................................................................................11

**<u>CERTIFICATE OF COMPLIANCE</u>**

I HEREBY CERTIFY that on this 29th day of September, 2017, the foregoing Defendant Mayor and City Council of Baltimore's Reply Memorandum in Further Support of Motion to Dismiss or for Summary Judgment and to Strike Jury Demand was filed in accordance with the Electronic Filing Requirements and Procedures, as established by the United States District Court for the District of Maryland.

_____/s/_____

Jason Foltin, *Assistant Solicitor*
BALTIMORE CITY LAW DEPARTMENT
