IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ASHELY OVERBEY, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No: DKC 17-1793 |
| MAYOR AND CITY COUNCIL OF BALTIMORE, *et al.*, | * | |
| | * | |
| Defendants. | | |
| * * * * * * * | | |

**OPPOSITION OF THE MAYOR AND CITY COUNCIL OF BALTIMORE
TO PLAINTIFF OVERBEY'S MOTION FOR SUMMARY JUDGMENT**

Defendant Mayor and City Council of Baltimore ("the City"), by its undersigned counsel, respectfully files this opposition to Plaintiff Overbey's motion for summary judgment. After careful and thoughtful study of and reflection on the Fourth Circuit's opinion in this case, counsel for the City have concluded this opposition is best limited substantially to a reiteration of the contentions the City outlined to the court in its October 2019 status report, coupled with a request that the court simply proceed to decide this matter on the existing record without a jury.

In its opinion vacating the court's judgment of dismissal in this case, the Fourth Circuit equated an arms-length agreement with "a government-defined and government-enforced restriction on government-critical speech." *Overbey v. Mayor and City Council of Baltimore*, 930 F.3d 215, 224 (4th Cir. 2019). Even while assuming that Ms. Overbey's counseled waiver of her speech rights was voluntary and knowing (which it was, every bit as much as the waiver of her Seventh Amendment jury trial right), the Court held, nonetheless, that the particular non-disparagement clause previously employed by the City was not only unenforceable, but that its inclusion rendered the very act of entering into the contract a violation of the First Amendment.

In other words, even if a municipality wished to pay settlement premiums in amounts that were orders of magnitude in excess of the value of the settlement *sans* a non-disparagement provision, and even if the settling party desperately wished to accept the municipality's offer, the resulting agreement would run afoul of the Fourth Circuit version of the First Amendment. It is an astonishing rule of constitutional law.

The City remains stunned by the boundlessness of the Court's ostensible balancing test and its resultant holding. Two distinguished and experienced judges of this court with a combined tenure of well over more than a half century of federal judicial service (following, in each instance, distinguished careers as litigators in some of the most complex civil and criminal cases adjudicated in this district) had sustained the City's use of the previous non-disparagement clause under the circumstances of this case. Likewise, the dissenting circuit judge on the Fourth Circuit panel, another distinguished former lawyer (who for more than twenty-five years defended claims in complex, "bet-the-company" civil litigation) found no infirmity in the City's use of the prior clause in the circumstances presented here. Nevertheless, in response to the City's petition for rehearing, not only did the Fourth Circuit deny rehearing en banc, but no judge on the Court even requested a poll of the Court. The panel majority's published opinion is the law of this Circuit.

The question now before this court on remand is, "what's next?" The City will abide whatever determination the court reaches. The gravamen of Ms. Overbey's surviving claim is that she was unable to freely exercise her right to speak. But of course she did speak, exactly as she wanted to speak. And she was not "punished" or retaliated against for speaking; she was simply not paid for abstaining from particular speech (because she chose not to so abstain). But she argues, concededly not without plausible support in the open-textured opinion of the Fourth

Circuit, that she was indeed "punished" because the City's exercise of its contractual, bargained-for right to pay less in settlement if she breached the settlement agreement by speaking publicly amounts to "punishment." This court will make the call on that issue based on the whole record.

In that light, it is quite unclear what the Fourth Circuit truly intended by its rather curious mandate that "the City is not entitled to summary judgment on Overbey's First Amendment claim," *id*. at 226, and then "remand[ing] for further proceedings consistent with [its] opinion." *Id*. at 230. The Fourth Circuit pointedly did not "render judgment" and simply remand the case for this court to enter an order awarding appropriate relief identified by the panel majority, although it surely could have (and presumably would have) had it thought she was entitled to relief as a matter of law, notwithstanding that she did not earlier move for summary judgment. *See Sharp Elecs. Corp. v. Deutsche Fin. Servs. Corp*., 216 F.3d 388, 398 (4th Cir. 2000).

In any event, the City frankly has no genuine idea whether Ms. Overbey is entitled to judgment as a matter of law, and it therefore opposes the motion for summary judgment in good faith. Rather, in the City's view, by virtue of Plaintiffs' earlier failure to oppose the City's motion to strike their prayer for a jury trial (and in keeping with the plain language of the settlement agreement), the case is before this court for decision on the facts and the law by the court sitting without a jury. The City therefore submits on the issue of its liability, encompassing all the relevant factual and legal questions the court deems at issue, and it does so on the basis of the factual record presently before the court, including any reply by Ms. Overbey.

The City candidly acknowledges, as mentioned above, that one view of the Fourth Circuit's opinion (but not its *mandate*) is that Ms. Overbey is entitled to the balance of her agreed settlement sum, $31,500, which constitutes the damages she sought in the amended complaint. Such a measure of damages would amount to breach-of-contract damages, however,

not a measure of damages "taken from the common law of torts," *see Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 306 (1986), *cited by* Pl., Mem. at 9, and the parties are in absolute agreement that there is no viable breach of contract claim in this case, i.e., any such claim is barred by limitations. It would appear that the better view is that Ms. Overbey is entitled, at most, to nominal damages of one dollar for a presumed infringement (somehow) of her First Amendment right to speak (even though, as set forth above, she did indeed speak), perhaps coupled with a formal declaration to that effect. *See KH Outdoor, LLC v. City of Trussville*, 465 F.3d 1256, 1261 (11th Cir. 2006)(cleaned up):

> [A]lthough the Supreme Court's decision in [*Carey v. Piphus,* 435 U.S. 247, 264 (1978)] involved nominal damages after a procedural due process violation, nominal damages are similarly appropriate in the context of a First Amendment violation. *See Familias Unidas v. Briscoe*, 619 F.2d 391, 402 (5th Cir.1980) (holding that "the rationale of the Supreme Court's decision in *Carey* similarly requires an award of nominal damages upon proof of infringement of a fundamental First Amendment liberty"); *see also Risdal v. Halford*, 209 F.3d 1071, 1072 (8th Cir.2000) (noting that nominal damages are required "upon proof of an infringement of the first amendment right to speak"). Quite simply, "[w]hen constitutional rights are violated, a plaintiff may recover nominal damages even though he suffers no compensable injury." *Kelly v. Curtis*, 21 F.3d 1544, 1557 (11th Cir.1994).

Again, this court will make an appropriate finding and enter an appropriate judgment.

Finally, the City opposes in the strongest permissible terms an award of prejudgment interest to Ms. Overbey. Although the Fourth Circuit's opinion in this case gave rise to an outpouring of celebratory glee among the activist community that had been strategizing for years to combat the then City Solicitor's devotion to so-called "gag orders," no reasonable person ever expected that the challenge would bear fruit. As mentioned above, a majority of the five federal judges to have examined the City's former approach to non-disparagement clauses

did not remotely discern any incompatibility with existing First Amendment jurisprudence. In short, Ms. Overbey's victory in this lawsuit is in the nature of a virtual lightning strike.[1]

The City's good faith reliance on even the strict non-disparagement clause employed until the present City Solicitor revised the provision and significantly loosened constraints on post-settlement speech in the fall of 2017 cannot be doubted.[2] The local media reporting during the widespread public criticisms of the City's approach to non-disparagement provisions during 2014 and 2015 show that neither members of the local Civil Rights Bar that regularly sued city police officers, including Ms. Overbey's own counsel,[3] nor the lawyers in the City Law department,[4] ever thought the use of the provision was illegal, to say nothing of *unconstitutional*.

---

[1] The City does not exaggerate. If Ms. Overby had timely sued the then City Solicitor in his individual capacity to recover the balance of her settlement payment on the theory that the Fourth Circuit validated by its opinion in this case, the then City Solicitor unquestionably would have been entitled to qualified immunity because no one has ever suggested that there previously existed (as of 2014) a "clearly established . . . constitutional right" supportive of her claim. *See generally Meyers v. Baltimore Cty.*, 713 F.3d 723, 731 (4th Cir. 2013).

[2] More recently, in December 2019, the City Law Department abandoned the use of any form of non-disparagement clause entirely, so whether or not they caught lightning in a bottle at the Fourth Circuit, Ms. Overbey and her activist colleagues have undoubtedly achieved their goal.

[3] *See* Mark Puente, *City Withholds Part of Settlement in Police Brutality Lawsuit*, Balt. Sun, (Oct. 10, 2014) https://www.baltimoresun.com/news/investigations/bs-xpm-2014-10-10-bs-md-overbey-settlement-20141010-story.html:

> Ronald L. Smith, Overbey's co-counsel and a retired police officer, said city officials should have taken the issue to court so a judge could decide whether Overbey violated the agreement. It would be costly for Overbey to file another lawsuit to try to get the money, he said.
> "They had the power to do it," Smith said. "They hadn't released the check. It seems that it was a rush to judgment."

[4] *See* Mark Puente, *Baltimore to Continue Limiting Comments About Police Brutality Settlements*, Balt. Sun, (May 22, 2015) https://www.baltimoresun.com/maryland/bs-md-settlement-clause-20150522-story.html:

It only became "illegal" when two of the judges on the Fourth Circuit concluded it was in an opinion issued on July 11, 2019.

Moreover, in the interest of demonstrating beyond any doubt the City's good faith throughout the underlying litigation involving Ms. Overbey and in this very case, the City has elected to waive its privilege and attendant confidentiality and has attached to this memorandum the private analysis of Ms. Overbey's claims and the settlement recommendation made by the privately-retained attorneys who represented the three defendant law enforcement officers against whom Ms. Overbey asserted her claims.

As can be seen in that attachment, hotly contested facts infused the dispute between Ms. Overbey and the officers. Without in any manner seeking to diminish the indignity and humiliation (as well as the physical pain and suffering) that Ms. Overbey no doubt experienced

---

> On Friday, [City Solicitor] Nilson said the city's nondisparagement clause is comparable to those in cities of similar size, including Atlanta, Boston, Minneapolis and Colorado Springs, Colo.
>
> He recommended some changes, including one making clear that plaintiffs can comply with subpoenas and speak with local, state and federal investigators.
>
> \*   \*   \*
>
> The city Law Department proposed modifications Friday to a controversial clause in settlement agreements, one that lets the city reclaim part of the payout if plaintiffs talk about the allegations — even those contained in court documents. By breaking silence, plaintiffs could lose tens of thousands of dollars.
>
> According to proposed revisions backed by Mayor Stephanie Rawlings-Blake, those who settle lawsuits would explicitly be allowed to discuss the cases with accountants, tax preparers and financial consultants — but not publicly or with the news media.
>
> > "We have concluded that the use of non-disparagement clauses is generally in the city's best interest as part of the process of resolving litigation without going to a court trial, but we will use our discretion on a case-by-case basis as part of our review of each individual settlement," City Solicitor George A. Nilson said in a statement.

in her encounter with the officers resulting in her arrest and physical injuries, real and substantial questions are presented when an officer responding to a burglary call is expelled from the premises, but who attempts to assist the understandably upset resident, including by dispatching a crime scene technician. When the technician himself, working alone in the premises, feels sufficiently threatened in the course of his work and calls for police protection, there would have been much for a jury to ponder and consider on both sides.  How could things go so badly so quickly?  How could an officer end up with bite marks?  Or the citizen end up with a black eye?

One can disagree with the prior City Solicitor's decision to enforce the non-disparagement clause under the circumstances of this case, the only occasion when that was done, as many citizens have and still do, but it was not an action taken in a malicious effort to "punish" Ms. Overbey, but was a judgment reached based on the totality of the circumstances that at least three federal judges found amply defensible under the circumstances of this case.

At the end of the day, assuming this court finds the City liable for more than nominal damages, whether prejudgment interest should be awarded and the amount thereof are left to the sound discretion of the court, here as the finder of fact. As the Maryland Court of Appeals has reasoned:

> The intermediate appellate court correctly observed that pre-judgment interest as a matter of right is the exception rather than the rule, *see Buxton v. Buxton*, 363 Md. 634, 770 A.2d 152 (2001), and that "[w]hether a party is entitled to pre-judgment interest generally is left to the discretion of the fact finder." As we explained in *Buxton*, "[p]re-judgment interest is allowable as a matter of right when 'the obligation to pay and the amount due had become certain, definite, and liquidated by a specific date prior to judgment so that the effect of the debtor's withholding payment was to deprive the creditor of the use of a fixed amount as of a known date.'" 363 Md. at 656, 770 A.2d at 165. Here, applying *Buxton*, the Court of Special Appeals rightly determined that John and Lisa's obligation to repay the Ver Bryckes was uncertain prior to the date of judgment. As such, the trial judge was left to her discretion to determine whether pre-judgment interest was warranted.

*Ver Brycke v. Ver Brycke*, 379 Md. 669, 702, 843 A.2d 758, 777-78 (2004)(cleaned up). As in *Ver Brycke*, for all the reasons set forth above, the City's "obligation to [pay Ms. Overbey] was uncertain until the date of [the Fourth Circuit's] judgment," at the earliest. Accordingly, this court should decline to award any prejudgment interest or, in the alternative, award prejudgment interest only from the date of the Fourth Circuit's mandate, September 5, 2019.[5]

For the reasons stated above, the City asks the court to deny the motion for summary judgment, proceed to make findings of fact and conclusions of law on the record before it, and render such judgment as the facts and the law compel or allow.

                    Respectfully submitted,

                    __/s/_____
                    Andre M. Davis
                    City Solicitor

                    Christopher Russell Lundy
                    Chief Solicitor
                    Baltimore City Law Department
                    100 N. Holiday Street
                    Baltimore, Maryland 21202
                    Telephone:   (410) 371-9883
                    Fax:           (410) 396-1457
                    christopher.lundy@baltimorecity.gov
                    *Counsel for Defendant*
                    *Mayor and City Council of Baltimore*

---

[5] The City offers this brief mention of attorney's fees. In a private communication between counsel, Ms. Overbey has suggested that she intends to seek an award of attorney's fees. There will be time enough for the parties to join battle over that issue should she follow up on her threat. The City merely mentions here that nowhere in the original or amended complaint did Plaintiffs invoke 42 U.S.C. § 1983 as the source of their claims. Even more fundamentally, they have never asserted a claim for attorney's fees pursuant to 42 U.S.C. § 1988. And, on top of all of that, Plaintiffs have never complied with this District's *Rules and Guidelines for Determining Attorneys' Fees in Certain Cases*. Plaintiffs will likely argue that the City never requested compliance with the *Guidelines*, but the City can hardly be faulted for not requesting information on fees that are never sought in any pleading or motion. As mentioned, there will be time enough for those issues to come before this court, which will surely disfavor gamesmanship of any kind.

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that the forgoing Opposition of the Mayor and City Council of Baltimore to Plaintiff Overbey's Motion for Summary Judgment was this 8th day of January, 2020, served on all counsel of record through the Electronic Court Filing system of the United States District Court for the District of Maryland.

>                    /s/ Andre M. Davis
>                    Andre M. Davis