## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ASHLEY AMARIS OVERBEY, *et al.*, | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. DKC-17-cv-1793 |
| | ) | |
| THE MAYOR AND CITY COUNCIL | ) | |
| OF BALTIMORE, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM IN SUPPORT OF PLAINTIFFS'
## MOTION FOR ATTORNEYS' FEES AND COSTS

Deborah Jeon (No. 06905)
Nicholas Steiner (No. 19670)
ACLU of Maryland
3600 Clipper Mill Rd, Suite 350
Baltimore, MD 21211
Telephone: (410) 889-8555
Fax: (410) 366-7838
jeon@aclu-md.org
steiner@aclu-md.org

Daniel W. Wolff (No. 19940)
Nkechi Kanu
Tyler O'Connor
Brian C. Lewis
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
dwolff@crowell.com
nkanu@crowell.com
toconnor@crowell.com
blewis@crowell.com

*Attorneys for Plaintiffs Ashley
Overbey and Baltimore Brew*

November 9, 2020

**TABLE OF CONTENTS**

INTRODUCTION ....................................................................................................1

I.    PLAINTIFFS' HAVE ACHIEVED EXCEPTIONAL SUCCESS
      IN THIS CASE, WARRANTING FULL REIMBURSEMENT OF
      THEIR REASONABLE ATTORNEYS' FEES AND EXPENSES. ..................2

      A.    Course of Litigation. ...............................................................2

      B.    Plaintiffs are the Prevailing Parties. ........................................7

      C.    Basis for Plaintiffs' Fee Request ..............................................8

      D.    The Hourly Rates Sought by Plaintiffs Reflect the
            Prevailing Market Rates in the Relevant Legal
            Community. ............................................................................12

      E.    The Case Staffing and Number of Hours Billed are
            Reasonable and Appropriate. ................................................16

            1.    Case Development, Background Investigation, and
                  Case Administration ...................................................18

            2.    Pleadings ....................................................................19

            3.    Motions Practice (Round I) ........................................21

            4.    Appellate Practice ......................................................22

            5.    Settlement ..................................................................24

            6.    Motions Practice (Round II) .......................................25

            7.    Fee Petition Preparation ............................................26

      F.    Plaintiffs Should Also Recover Their Costs. .........................28

CONCLUSION....................................................................................................29

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Barber v. Kimbrell's, Inc.*,
577 F.2d 216 (4th Cir. 1978) .................................................................... 9

*Blum v. Stenson*,
465 U.S. 886 (1984) .................................................................. 8, 12, 13

*Board of Education of Frederick County v. I. S.*,
358 F.Supp. 2d 462 (D. Md. 2005) .................................................... 7, 9

*Buffington v. Baltimore Cnty.*,
913 F.2d 113 (4th Cir. 1990), *cert. denied*, 499 U.S. 906 (1991) ............................ 9

*Cato Inst. v. United States Sec. & Exch. Comm'n*,
438 F. Supp. 3d 44 (D.D.C. 2020) ........................................................ 11

*Daly v. Hill*,
790 F.2d 1071 (4th Cir. 1986) ...................................................... 13, 28

*Dameron v. Sinai Hosp. of Baltimore, Inc.*,
644 F. Supp. 551 (D. Md. 1986) .......................................................... 13

*Doe v Odenton Volunteer Fire Co.*,
No. RDB-08-1281, 2009 WL 3418567 (D. Md. Oct. 20, 2009) ................................. 9

*Ganey v. Garrison*,
813 F.2d 650 (4th Cir. 1987) .............................................................. 26

*Hensley v. Eckerhart*,
461 U.S. 424 (1983) ............................................................. 7, 8, 9, 17

*Johnson v. Georgia Highway Express, Inc.*,
488 F.2d 714 (5th Cir. 1974) ............................................................. 9

*Mattos v. Am. Fed'n of State, Cty. & Mun. Employees, AFL-CIO,
Council 3*,
No. CV GLR-19-2539, 2020 WL 2027365 (D. Md. Apr. 27, 2020) ........................ 11

*Missouri v. Jenkins*,
491 U.S. 274 (1989) ..................................................................... 13

*Nat'l Wildlife Fed'n v. Hanson,*
  859 F.2d 313 (4th Cir. 1988) ................................................................. 12

*Overbey v. Mayor of Balt.,*
  930 F.3d 215 (4th Cir. 2019) ...................................................... 1, 6, 22

*Pennsylvania v. Del. Valley Citizens' Council for Clean Air,*
  478 U.S. 546 (1986) ............................................................................... 9

*People for the Ethical Treatment of Animals, Inc. v. Stein,*
  No. 1:16CV25, 2020 WL 3130158 (M.D.N.C. June 12, 2020) .............................. 11

*Plyler v. Evatt,*
  902 F.2d 273 (4th Cir. 1990) ................................................................. 12

*Pruett v. Harris Cnty. Bail Bond Bd.,*
  593 F. Supp. 2d 944 (S.D. Tex. 2008) ..................................................... 12

*Rocky Mountain Christian Church v. Bd. of Cnty. Comm'rs of Boulder Cnty., Colo,*
  No. 06-CV-00554-REB-BNB, 2010 WL 148289 (D. Colo. Jan. 11, 2010) ................................................................................... 12

*Rodriguez-Garcia v. Municipality of Caguas,*
  787 F. Supp. 2d 135 (D.P.R. 2011) ......................................................... 12

*Rum Creek Coal Sales, Inc. v. Caperton,*
  31 F.3d 169 (4th Cir. 1994) ................................................................. 12

*Salazar v. District of Columbia,*
  809 F.3d 58 (D.C. Cir. 2015) ............................................................... 14

*Thompson v. U.S. Dep't of Hous. & Urban Dev.,*
  No. CIV.A. MJG-95-309, 2001 WL 1636517 (D. Md. Dec. 12, 2001) ........ 11, 12, 14

*Wheeler v. Durham City Bd. of Educ.,*
  585 F.2d 618 (4th Cir. 1978) ............................................................... 28

*Young v. Sarles,*
  197 F. Supp. 3d 38 (D.D.C. 2016) .................................................. 14, 16

**Statutes**

28 U.S.C. § 1920............................................................................................ 28

42 U.S.C. § 1988.............................................................................................. 2

**Other Authorities**

122 Cong. Rec. (daily ed. Oct. 1, 1976) ........................................................ 28

Brad Kutner, "Nondisclosure deals with police fought at Fourth
    Circuit," *Courthouse News Service*, January 30, 2019, https://www.
    courthousenews.com/nondisclosure-deals-with-police-fought-at-4th-
    circuit/ ....................................................................................................... 6

Delaney E. Anderson, *Overbey v. Mayor of Baltimore: The Cost of
    Silence and the Impact of Restricting Speech in Police Brutality
    Settlements*, 79 Md. L. Rev. 1122 (2020) ........................................... 1, 11

Fern Shen, *Scott backs bill ending Baltimore's use of "gag orders" to
    settle police misconduct, discrimination suits*, Baltimore Brew (Jul.
    18, 2019) ................................................................................................... 7

*Fourth Circuit Holds That Nondisparagement Clause in Settlement
    With the Government Violates the First Amendment*, 33 Harv. L.
    Rev. 1460 (Feb. 10, 2020) ................................................................. 1, 11

H. Cobun, "Baltimore Native Andre Davis eager to guide hometown
    through consent decree as new City Solicitor," *Maryland Daily
    Record*, Oct. 15, 2017, https://thedailyrecord.com/2017/10/15/davis-
    city-solicitor-newsmaker/ .......................................................................... 4

Rachael L. Jones, Virginia Hamrick, *Reporting on NDAs and #metoo:
    How the Press May Obtain Standing to Challenge NDAs* ................................. 1, 11

Rodney A. Smolla, 2 *Smolla & Nimmer on Freedom of Speech* §
    15:59.50 (2020 updated ed.) ..................................................................... 1

Transparency and Oversight in Claims and Litigation § 5-5,  City of
    Baltimore Council Bill 19-0409, Ord. 19-320 (enacted Dec. 2, 2019) ..................... 7

## INTRODUCTION

As the City of Baltimore has noted repeatedly, this is a First Amendment and racial justice case of "exceptional importance."[1] Through their successful legal challenge to governmental use of non-disparagement and nondisclosure clauses to shield law enforcement abuses from disclosure, plaintiffs Ashley Overbey and Baltimore Brew set a precedent with lasting implications—here in Maryland and across America. By ensuring protection for the constitutional rights of misconduct victims to speak freely and the media to report on police discrimination and violence, the Court rulings in this litigation help ensure government transparency and accountability at a critical moment of racial reckoning in our nation.[2]

Plaintiffs filed this lawsuit against the Mayor and the City Council of Baltimore, alleging violations of their fundamental rights arising under the First Amendment. Plaintiffs' claims stemmed from a City of Baltimore policy, used

---

[1] *See, e.g.,* Pet. for Reh'g and Reh'g *En Banc*, No. 17-2444 (4th Cir. Jul. 23, 2019), ECF 79 at 2, 14.

[2] *See First Amendment – Nondisparagement Clauses – Fourth Circuit Holds That Nondisparagement Clause In Settlement With The Government Violates The First Amendment – Overbey v. Mayor of Baltimore*, 930 F.3d 215 (4th Cir. 2019), 133 Harv. L. Rev. 1460 (Feb. 2020); Delaney E. Anderson, Note, *Overbey v. Mayor of Baltimore: The Cost of Silence and the Impact of Restricting Speech in Police Brutality Settlements*, 79 Md. L. Rev. 1122 (2020); Rodney A. Smolla, 2 *Smolla & Nimmer on Freedom of Speech* § 15:59.50 (2020 updated ed.) ("The Fourth Circuit's decision in *Overbey* is quite powerful. It stands for the proposition that First Amendment values inform the public policy considerations that animate judicial decisions over the enforceability of contracts—and that those considerations may trump enforcement of a non-disparagement clause."); *Reporting On NDAs And #MeToo: How the Press May Obtain Standing to Challenge NDAs*, 35 Communications Lawyer 7 (Fall 2019) (noting the importance of the *Overbey* ruling to the media's ability to engage in reporting on misconduct shielded by NDAs).

pervasively in police abuse cases, conditioning settlement of claims against the Baltimore Police Department ("BPD") on plaintiffs—the vast majority of whom are Black and Brown—agreeing to a non-disclosure/non-disparagement clause ("NDA") requiring them to keep silent about all aspects of their lawsuit, including the precipitating events. The policy further empowered the City to claw back half of a settling plaintiff's settlement proceeds if it deemed the NDA to have been violated; or, as in Ms. Overbey's case, to pay only half of the agreed-upon proceeds in the first place (since as of the time the City deemed Ms. Overbey to be in violation it had not yet paid her).

Three years of litigation, highlighted by a precedent-setting appellate decision by the Fourth Circuit and successful motions practice on remand, has resulted in complete vindication of plaintiffs' rights. Accordingly, consistent with 42 U.S.C. § 1988, plaintiffs—as prevailing parties—are entitled to recovery of their reasonable attorneys' fees and costs incurred in achieving this excellent result.

## I. PLAINTIFFS' HAVE ACHIEVED EXCEPTIONAL SUCCESS IN THIS CASE, WARRANTING FULL REIMBURSEMENT OF THEIR REASONABLE ATTORNEYS' FEES AND EXPENSES.

### A. Course of Litigation.

The ACLU began work on this case in summer of 2015, when Ashley Overbey raised the possibility of challenging the City's enforcement of an NDA against her to withhold half of settlement proceeds from her underlying police abuse case. Following a search for cooperating counsel that lasted several months, ACLU engaged Crowell & Moring in winter of 2016 to join with the ACLU in litigating the

2

case.[3]  Because the City's treatment of Ms. Overbey reflected a broader policy of

prohibiting victims of police brutality who filed and then settled lawsuits against

the BPD from discussing the facts and circumstances of their lawsuits, Crowell &

Moring and the ACLU were also hired by the Baltimore Brew, a local news

organization, to challenge the City's policy more broadly.

On June 30, 2017, plaintiffs filed suit[4] against the defendants, the Mayor and

City Council of Baltimore, and the BPD.  The Complaint challenged the

constitutionality and propriety of the defendants' use of the NDA in its settlement

agreements with victims of police brutality.

In Ms. Overbey's case, when she purportedly breached the NDA by

responding to derisive comments made about her on a *Baltimore Sun* message

board, following the newspaper running an online article about her settlement in

which the City Solicitor disparaged her, the City withheld $31,500 of her $63,000

settlement.  In the complaint filed in this lawsuit, Ms. Overbey alleged that through

the NDA, as enforced through the liquidated damages provision of the settlement

agreement, the City punished her for her exercise of protected speech.  She

---

[3] As attested by ACLU of Maryland Legal Director Deborah Jeon, the ACLU legal
program is dependent on law firm collaboration with the organization in order to
staff its litigation. In cases like this one, involving complex constitutional claims
against the State of Maryland or the City of Baltimore, many Maryland law firms
hesitate to work with the ACLU due to conflicts with the firms' other clients or
governmental work. Decl. of Deborah A. Jeon ¶¶ 6, 11, attached hereto. In such
instances, the ACLU has no other choice but to partner with Washington, D.C. or
New York law firms for which those conflicts do not arise.

[4] Plaintiffs filed their Amended Complaint (ECF 5) on June 30, 2017, immediately
after their incorrectly filed initial Complaint (ECF 1) on June 29, 2017.

therefore challenged the NDA as an infringement of her First Amendment right to freedom of speech.[5]  Intertwined with Ms. Overbey's claims and similarly grounded in the First Amendment, the Baltimore Brew broadly challenged the City's use of NDAs generally from its standpoint as a media organization, emphasizing the effect that the City's use of NDAs in more than 95% of its police abuse settlements had on the news journal's ability to gather newsworthy information from victims of police abuse, directly impinging its own First Amendment rights.  The Brew alleged that, on multiple occasions, plaintiffs who settled lawsuits against the BPD refused to speak to the Brew about their lawsuits expressly because of the non-disparagement provisions in their respective settlement agreements. The Brew's First Amendment claim challenged the City's institutional use of NDAs as an unconstitutional impingement on the ability of the press to collect and report on facts of public concern.

Shortly after filing suit, defendants moved to dismiss plaintiffs' claims. After this motion was filed, but before it was ruled on, retired Fourth Circuit Judge Andre Davis took over as Baltimore City Solicitor, publicly declaring that his top priority in that role would be implementation of police reform in the City.[6]  For this reason, plaintiffs reached out to Mr. Davis and invited discussion of the issues at stake in the case, to determine whether a negotiated resolution of the issues could be

---

[5] She also brought related contract and other state-law claims against the City.

[6] *See* H. Cobun, "Baltimore Native Andre Davis eager to guide hometown through consent decree as new City Solicitor," *Maryland Daily Record*, Oct. 15, 2017, available at: https://thedailyrecord.com/2017/10/15/davis-city-solicitor-newsmaker/

achieved.  Counsel met to discuss such an option, but unfortunately, no compromise could be reached, and the City pressed on with efforts to dismiss the case.

Judge J. Frederick Motz was initially assigned to the case and issued an unreasoned decision granting defendants' motions. (ECF No. 24, 25). The case was *sua sponte* reinstated by Chief Judge James Bredar, and Judge Marvin Garbis was assigned to replace Judge Motz, who retired the day of Judge Bredar's ruling. Judge Garbis reconsidered Judge Motz's decision, but, after a hearing, dismissed plaintiffs' claims, on the theory that Ms. Overbey had knowingly and voluntarily executed the Settlement Agreement. (Mem., ECF 32.). The Court never addressed whether the public interest in enforcing the NDA outweighed the public interest in free speech on matters of public importance. The Brew's First Amendment claims were dismissed for lack of standing. (*Id.* at 15).

Ms. Overbey and the Brew appealed Judge Garbis' Order to the United States Court of Appeals for the Fourth Circuit.  Upon filing of the appeal, Mr. Davis entered his appearance and took over as lead counsel for the City.  The appeal was briefed by the parties, as well as numerous *amici curiae*, including myriad media and civil rights organizations, who weighed in in support of the plaintiffs, raising the profile of the case and signifying its importance.  The appeal was argued by the parties on January 30, 2019, with Mr. Davis personally arguing for the City before

5

his former colleagues.[7] The Fourth Circuit reversed the district court's order and remanded for further proceedings consistent with its opinion. Likening the City's use of NDAs to payment of "hush money," the Court of Appeals held that "the non-disparagement clause in Overbey's settlement agreement amounts to a waiver of her First Amendment rights and that strong public interests rooted in the First Amendment make it unenforceable and void." *Overbey v. Mayor of Balt.*, 930 F.3d 215, 222 (4th Cir. 2019). As to the Brew's First Amendment claim, the Fourth Circuit reversed the district court's finding that the Brew lacked standing.  The City petitioned for a panel rehearing and a rehearing *en banc,* but both requests were summarily denied. (Mandate, No. 17-2444, (4th Cir. Jul. 11, 2019), ECF 84.)

Expressly based on the Fourth Circuit's decision, the City of Baltimore enacted legislation prohibiting the use of NDAs in future settlements of police misconduct cases and voiding the applicability of the policy as to any outstanding NDAs. On remand, plaintiffs filed a Motion for Summary Judgment citing the Fourth Circuit's opinion and requesting damages due to Ms. Overbey, plus interest arising from the City's withholding of her settlement amount. This Court granted that Motion on September 21, 2020. Because of the City's legislation prohibiting the use of the offensive provisions, effectively granting the Brew the very relief it had sought in this litigation, the Court dismissed its claim as moot. The City has since

---

[7] *See, e.g.,* Brad Kutner, "Nondisclosure deals with police fought at Fourth Circuit," *Courthouse News Service,* January 30, 2019, https://www. courthousenews.com/nondisclosure-deals-with-police-fought-at-4th-circuit/.

paid Ms. Overbey all outstanding amounts. Plaintiffs' efforts to resolve their attorneys' fees reimbursement without litigation were rebuffed by the City.

### B.    Plaintiffs are the Prevailing Parties.

As the U.S. Supreme Court has emphasized, "[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *See Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983). Indeed, this Court has stated, "a litigant is a prevailing party for purposes of an attorney's fees award 'if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.'" *Bd. of Educ. of Frederick Cnty. v. I. S.*, 358 F. Supp. 2d 462, 465 (D. Md. 2005) (quoting *Hensley*, 461 U.S. at 433) (hereafter "*BOE*"). The sweeping relief won by the plaintiffs here leaves no doubt as to their satisfaction of the prevailing plaintiff standard.

Plaintiffs successfully appealed dismissal of their First Amendment claims to the U.S. Court of Appeals for the Fourth Circuit, which reversed and remanded, establishing an important precedent in the fight against governmental use of NDAs to facilitate potential cover-up of police misconduct. As a result of the Fourth Circuit's decision—expressly *because of* this litigation—the City of Baltimore enacted legislation prohibiting the use of its former NDA policy in all future settlements of police misconduct cases and voiding the applicability of any outstanding NDAs under the earlier policy. *See* Transparency and Oversight in Claims and Litigation § 5-5,  City of Baltimore Council Bill 19-0409, Ord. 19-320 (enacted Dec. 2, 2019); *see also* Fern Shen, *Scott backs bill ending Baltimore's use of "gag orders" to settle police misconduct, discrimination suits*, Baltimore Brew (Jul.

7

18, 2019, 9:09 AM), https://www.baltimorebrew.com (reporting on Baltimore City councilmembers' announcement, one week after Fourth Circuit's decision, of plan to introduce legislation prohibiting City's non-disparagement policy). The Fourth Circuit's decision holding Ms. Overbey's NDA unenforceable, and the subsequent legislative action by the City, fully vindicated the plaintiffs' litigation position. Yet, still, the City refused to pay Ms. Overbey the money it had denied her due to her alleged violation of the unlawful NDA.

On remand, the Court granted summary judgment in Ms. Overbey's favor and entered judgment against the Mayor and City of Baltimore in the amount of $31,500 (the entirety of the settlement amount withheld from her by the City), plus prejudgment interest.

Plaintiffs are prevailing parties. The Court's finding of liability and grant of the requested damages, combined with the Fourth Circuit's decision holding Ms. Overbey's NDA unenforceable and the City's subsequent legislation voiding and prohibiting any use of its former non-disparagement policy, constitute full vindication of the relief sought by Ms. Overbey and the Baltimore Brew and justify a fully compensatory attorneys' fee. *See Hensley*, 461 U.S. at 435 (Excellent results justify a fee award encompassing "all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified.").

C.     **Basis for Plaintiffs' Fee Request**

In *Hensley v. Eckerhart*, 461 U.S. 424 (1983), and *Blum v. Stenson*, 465 U.S. 886 (1984), the Supreme Court established the framework and methodology for

8

calculation of the amount of a reasonable attorneys' fee to be awarded the prevailing party. This "lodestar" calculation is based upon "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate" for the attorney's services. *Hensley*, 461 U.S. at 433; *accord BOE*, 358 F. Supp. 2d at 465. As guideposts in determining the lodestar, the Fourth Circuit and this Court have each adopted the factors articulated by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). *See Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 (4th Cir. 1978); *BOE*, 358 F. Supp. 2d at 465; *Doe v Odenton Volunteer Fire Co.*, No. RDB-08-1281, 2009 WL 3418567, at *1-2 (D. Md. Oct. 20, 2009).[8] The Fourth Circuit has emphasized that the lodestar represents a presumptively reasonable fee award. *Buffington v. Baltimore Cnty.*, 913 F.2d 113, 127 n.11 (4th Cir. 1990), *cert. denied*, 499 U.S. 906 (1991); *accord Pennsylvania v.*

_____

[8] The *Johnson* factors are:

1) time and labor expended;
2) novelty and difficulty of the questions;
3) skill required to perform properly the legal services rendered;
4) attorney's opportunity costs in pressing the litigation;
5) customary fee for like work;
6) attorneys' expectations at the outset of the litigation;
7) time limitation imposed by the client or circumstances;
8) amount in controversy and the results obtained;
9) experience, reputation, and ability of the attorneys;
10) undesirability of the case;
11) nature and length of the attorneys' relationship with the client; and
12) attorneys' fees awards in similar cases.

*BOE*, 358 F. Supp. at 465-66.

9

*Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986) (there is a strong presumption that the lodestar figure represents a reasonable fee).

After considering the relevant factors under this formula, and a reduction of time and rates charged in counsel's exercise of billing judgment, the lodestar fee requested here is **$643,966.21** based upon hours spent on the litigation to date by plaintiffs' attorneys, multiplied by their hourly rates. Additionally, plaintiffs request reimbursement of **$20,378.42** in litigation costs, for a total of **$664,344.63**.

These fees are justified in litigation of this nature, which turned on complex questions at the intersection of constitutional law and the law governing agreements between private and government actors. The City itself acknowledged the novelty and cutting-edge nature of this case, as well as the substantial burden plaintiffs faced in succeeding.  *See* Pet. for Reh'g and Reh'g *En Banc*, No. 17-2444 (4th Cir. Jul. 23, 2019), ECF 79 at 10 ("In the words of Overbey's counsel Deborah Jeon, Esq., this is 'a cutting edge case at the intersection between free speech and racial justice.' In truth, the [Fourth Circuit's] decision cuts much more than the edge – it slices deep into areas of previously settled law . . ."); Opp. to Pl. Overbey's Mot. for Summ. J., No.  1:17-cv-1793-DKC (D. Md. Jan. 8, 2020), ECF 62 at 4 ("[N]o reasonable person ever expected that [plaintiff's] challenge would bear fruit."). More so, the events precipitating this lawsuit—concerning an earlier civil rights lawsuit brought by Ms. Overbey, an African American woman of limited economic means, against several police officers, for physical abuse and violations of her civil liberties—gave this case heightened importance, both because of the inherent

10

injustice of the NDA policy about which Ms. Overbey and the Brew were complaining, and because of the heightened attention at this moment in history being given (rightly) to the fraught relationship between police departments and Black communities more generally.

Even putting aside the particular facts of this case that make it historically important, a First Amendment challenge to a government law or policy, particularly in connection with restriction of speech concerning alleged police misconduct, raises critical issues of public concern requiring adept and diligent lawyering, patience, and perseverance. The importance of the constitutional issues in this case are readily apparent, as the Fourth Circuit's opinion has been cited in at least 19 federal court decisions[9] and five secondary sources, including the Harvard Law Review.[10]  Against the factual backdrop of this case, the requested award is well within established standards, and consistent with awards that have been granted by courts in comparable cases.  *See, e.g.*, *Thompson v. U.S. Dep't of Hous. & Urban Dev.*, No. CIV.A. MJG-95-309, 2001 WL 1636517, at *2 (D. Md. Dec. 12, 2001)

---

[9] *See, e.g., Cato Inst. v. United States Sec. & Exch. Comm'n*, 438 F. Supp. 3d 44, n.6 (D.D.C. 2020); *People for the Ethical Treatment of Animals, Inc. v. Stein*, No. 1:16CV25, 2020 WL 3130158, at *6 (M.D.N.C. June 12, 2020); *Mattos v. Am. Fed'n of State, Cty. & Mun. Employees, AFL-CIO, Council 3*, No. CV GLR-19-2539, 2020 WL 2027365, at *3 (D. Md. Apr. 27, 2020); Rachael L. Jones, Virginia Hamrick, *Reporting on NDAs and #metoo: How the Press May Obtain Standing to Challenge NDAs*, Comm. Law., Fall 2019, at 7, 9.

[10] *See Fourth Circuit Holds That Nondisparagement Clause in Settlement With the Government Violates the First Amendment*, 33 Harv. L. Rev. 1460 (Feb. 10, 2020); *see also* Delaney E. Anderson, *Overbey v. Mayor of Baltimore: The Cost of Silence and the Impact of Restricting Speech in Police Brutality Settlements*, 79 Md. L. Rev. 1122 (2020).

(awarding $1,496,597.85 in interim fees in constitutional litigation); *Rocky Mountain Christian Church v. Bd. of Cnty. Comm'rs of Boulder Cnty., Colo*, No. 06-CV-00554-REB-BNB, 2010 WL 148289, at *7 (D. Colo. Jan. 11, 2010) (awarding $1,252,327 in RLUIPA action); *Pruett v. Harris Cnty. Bail Bond Bd.*, 593 F. Supp. 2d 944, 946 (S.D. Tex. 2008) (awarding $557,989 in fees and $30,473.83 in costs in action challenging constitutionality of state statute on First Amendment grounds); *Rodriguez-Garcia v. Municipality of Caguas*, 787 F. Supp. 2d 135, 149 (D.P.R. 2011) ($417,550.87 awarded in § 1983 action after appeal).

### D.   The Hourly Rates Sought by Plaintiffs Reflect the Prevailing Market Rates in the Relevant Legal Community.

The hourly rates used in calculating the lodestar should be the "prevailing market rates in the relevant community." *Blum*, 465 U.S. at 895; *accord Plyler v. Evatt*, 902 F.2d 273 (4th Cir. 1990). The "relevant" market for determination of hourly rates "is ordinarily the community in which the court where the action is prosecuted sits." *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 175 (4th Cir. 1994) (citing *Nat'l Wildlife Fed'n v. Hanson*, 859 F.2d 313 (4th Cir. 1988)). However, where the nature of the case requires using attorneys from outside the local community, the court may determine hourly rates by looking to the market of counsel located elsewhere. *Thompson v. U.S. Dep't of Hous. & Urban Dev.*, 2001 WL 1636517, at *2 (D. Md. Dec. 12, 2001) (using Washington, D.C. market rates in determining award of attorneys' fees was appropriate where ACLU turned to D.C. firm after its efforts to locate a Baltimore firm to take on complex civil rights case were unsuccessful). The market rate for a particular attorney "may be proved by the

12

rate which clients normally and willingly pay the petitioning attorneys." *Id.* For lawyers at a nonprofit public interest organization like the ACLU, who have no normal hourly billing rate, market rates for similarly situated private firm lawyers are used as a gauge.[11] The lodestar should be calculated using current, rather than historic, rates, in order to offset the effects of inflation and lost interest resulting from delay in payment of fees. *Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989); *Daly v. Hill*, 790 F.2d 1071 (4th Cir. 1986).

Plaintiffs in this case were represented by attorneys from the ACLU and the Washington, D.C. office of Crowell & Moring. As explained by ACLU Legal Director Deborah A. Jeon, given that this was a significant First Amendment case against the City of Baltimore, the ACLU included firms in Washington, D.C. rather than just Maryland in its search to recruit *pro bono* co-counsel because local Maryland firms are less willing to take on *pro bono* matters for the ACLU of Maryland when the target of the suit is the City government. *See* Jeon Decl. ¶ 11.  Over a search that lasted several months, no Baltimore firm signed on to assist with the case, leading ultimately to the ACLU's engagement with Crowell & Moring.

As set forth in the Declaration of Daniel W. Wolff, the Crowell & Moring attorneys have requested the following *Laffey* billing rates, which are substantially lower than those that they regularly charge to their paying clients:

---

[11] It is well established that the amount of a fee award should not "vary depending on whether plaintiff was represented by private counsel or by a nonprofit legal services organization." *Blum*, 465 U.S. at 894; *accord Dameron v. Sinai Hosp. of Baltimore, Inc.*, 644 F. Supp. 551, 557 (D. Md. 1986).

13

| Name | Yrs. in Practice | Firm Rate | *Laffey* Rate | Percentage Reduction |
|------|------------------|-----------|---------------|----------------------|
| Daniel W. Wolff | 19 | $850 | $759 | 10.71% |
| Alexandra Nkechi Kanu | 6 | $740 | $465 | 37.16% |
| Tyler A. O'Connor | 6 | $740 | $465 | 37.16% |
| Brian C. Lewis | 5 | $705 | $465 | 34.04% |
| Benjamin Wastler[12] | 10 | $655 | $440 | 32.82% |

These rates are reasonable in light of the experience and expertise of the Crowell attorneys who worked on this case. *See* Decl. of Daniel W. Wolff, attached hereto; *see also* Decl. of Susan Hoffman, attached hereto. Moreover, these rates are in line with the Updated *Laffey* Matrix (also known as the LSI/*Salazar Laffey* Matrix),[13] which has been recognized as "provid[ing] reimbursement rates that are broadly in line with prevailing rates for legal services in complex federal litigation in the Washington, D.C. area." *Young v. Sarles*, 197 F. Supp. 3d 38, 49 (D.D.C. 2016); *see, e.g.*, *Salazar v. District of Columbia*, 809 F.3d 58, 65 (D.C. Cir. 2015) (approving use of the Updated *Laffey* Matrix for calculating attorneys' fee award in 42 U.S.C. § 1983 lawsuit); *Young*, 197 F. Supp. 3d at 46-50 (use of LSI/*Salazar* Matrix rates to determine attorneys' fees in First Amendment civil rights case was presumptively reasonable); *Thompson v. U.S. Dep't of Hous. & Urban Dev.*, 2001 WL 1636517, at *8 (D. Md. Dec. 12, 2001) (finding it appropriate to award attorneys'

---

[12] Whereas the general practice is to use current rates in calculating the lodestar, the rate listed for Mr. Wastler is the rate he charged paying clients at the time of his departure from Crowell in 2018.

[13] The Updated *Laffey* Matrix (available at http://www.laffeymatrix.com/see.html) is adjusted for inflation using the Legal Services Index of the nationwide Consumer Price Index. *Young v. Sarles*, 197 F. Supp. 3d 38, n.1 (D.D.C. 2016).

fees at Washington, D.C. market rates and that federal courts in Washington, D.C. employ the annually adjusted *Laffey* Matrix rates in determining market rates).

ACLU Legal Director Deborah A. Jeon—a graduate of Yale Law School with 34 years of experience as a civil rights lawyer—seeks fees based on an hourly rate of $475, a rate significantly lower than the $625 rate she could charge as an attorney at a private firm in Baltimore. *See* Jeon Decl.; and Decl. of Andrew Freeman, attached hereto. Likewise, legal fees are sought on behalf of the following ACLU personnel:  ACLU attorney Nicholas Taichi Steiner, a 2015 law school graduate, at the reduced rate of $240 per hour; and ACLU paralegals Amy Cruice and Gina Elleby, at the reduced rates of $150 per hour. *Id.*

As set forth in the Declaration of Andrew Freeman—an attorney with substantial experience and knowledge concerning market rates for attorneys' fees litigation in the Baltimore area—the rates sought by plaintiffs for the ACLU lawyers and paralegals are below the prevailing market rates in the relevant local legal community for attorneys and paralegals of similar experience and qualifications. *See* Freeman Decl. ¶ 12. The reduced Washington, D.C. market rates sought by Crowell & Moring attorneys are higher than the Maryland guideline rates in the *Rules and Guidelines for Attorneys' Fees in Certain Cases*, U.S. Dist. Ct. Rules Md. App. B (Dec. 1, 2018), but the guideline rates have not been adjusted since 2014.  As attested to by Mr. Freeman, the reduced rates sought for Crowell & Moring's attorneys are only slightly higher than current Baltimore market rates. As attested to by Mr. Wolff, those reduced rates are substantially below Crowell &

Moring's standard rates (Wolff Decl. ¶23), and have been recognized by courts as being in line with market rates for complex federal litigation in the Washington, D.C. area. *E.g.*, *Young*, 197 F. Supp. 3d at 49. The guidelines explicitly recognize that they are "intended solely to provide practical guidance," and that "[t]he factors established by case law [i.e., evidence of market rates] obviously govern over them," and "[t]he Court recognizes that there are attorneys for whom . . . the market rate differs from these guidelines rates. *Id.* at n.6.

### E. The Case Staffing and Number of Hours Billed are Reasonable and Appropriate.

Three ACLU staff attorneys—Deborah Jeon, David Rocah, and Nicholas Taichi Steiner—were involved in the development and litigation of this case. Throughout the course of litigation, up until the most recent phase involving recovery of attorneys' fees, attorneys from Crowell & Moring have taken the role as lead counsel, with ACLU attorneys serving in a more limited capacity on the case. *See* Jeon Decl. ¶ 12. As Mr. Wolff attests in his declaration, Crowell & Moring staffed this *pro bono* case in the same manner as the firm would staff a comparable matter for a paying client. *See* Wolff Decl. ¶ 19. Crowell & Moring staffed the case with a supervising partner and several counsel and associate lawyers, at different levels of experience, and support staff.[14] *See id.*

---

[14] Over the course of three-plus years, the case was staffed by the following Crowell attorneys: partner Daniel Wolff (a 2001 law school graduate), who supervised the case for the firm; counsel Alexandra Nkechi Kanu (2014 graduate); counsel Tyler O'Connor (2014 graduate); associate Benjamin Wastler (2010 graduate); and associate Brian Lewis (2015 graduate). Mr. Wastler left the firm in early 2018, so no billing is included for him after that time. Although these five Crowell attorneys are (Continued...)

A fully compensatory fee "will encompass all hours reasonably expended." *Hensley*, 461 U.S. at 435. Even though all the time expended and work performed by plaintiffs' counsel was reasonable and necessary, counsel have exercised billing judgment by eliminating time involving duplicative work or excessive work.  For example, plaintiffs have eliminated charges for all time spent on the case by three Crowell & Moring partners, three Crowell & Moring associates, and numerous Crowell & Moring support staff, resulting in a reduction of 506 hours, as well as all time spent on the case by ACLU attorney David Rocah[15] and ACLU law clerk Abby Nyantaki, resulting in a reduction of 51.2 hours.

As previously detailed above, plaintiffs' counsel necessarily performed extensive legal work in this case. Plaintiffs' counsel have carefully documented their time expenditures and exercised billing judgment to ensure the reasonableness of their overall fee request.  *See* Jeon Decl, Ex. 1; and Wolff Decl., Ex. 1.  Plaintiffs' counsel has taken care to organize this fee application and its supporting records in accordance with this Court's *Rules and Guidelines*.

---

the only ones for whom fee recovery is sought, several additional firm personnel worked on the matter, including partners Clifton Elgarten (1979 graduate), Richard Lehfeldt (1982 graduate), and Thomas Lorenzen (1985 graduate); and associates Charles Austin (2013 graduate), Michelle Adesola Onibokun (2018 graduate), and John Arszulowicz (2019 graduate); as well as various support staff. Plaintiffs, in diligently exercising billing judgment, have decided to forego recovery for the work of these additional personnel.

[15] Mr. Rocah is an attorney with First Amendment expertise and more than twenty-five years of experience.

Compensation is sought for work in the following categories:[16]

### 1.   Case Development, Background Investigation, and Case Administration

Plaintiffs' initial case investigation began in late 2015, when Ashely Overbey contacted the ACLU and raised the possibility of challenging the City of Baltimore's enforcement of its NDA against her in order to withhold half of settlement proceeds from her underlying police abuse case.  The ACLU subsequently discussed this issue with journalists, including the Baltimore Brew, who raised their own concerns about how these clauses chilled their First Amendment rights to engage in newsgathering activity. In February of 2016, the ACLU engaged with Crowell & Moring to begin working on the case. For the remainder of 2016 and into 2017, the ACLU staff and Crowell & Moring attorneys investigated the issues and worked on developing the theory for the novel legal challenge to the government-imposed NDAs.

In their exercise of billing judgment, plaintiffs' counsel are reducing time spent in the case development phase by eliminating numerous charges for work by the Crowell & Moring attorneys listed below, as well as also eliminating all time for work done by Crowell & Moring support staff. This accounts for a deduction of 91.75 hours and $30,633. To ensure against duplication or overlap of efforts among counsel in this phase of the case, plaintiffs are also voluntarily applying a 10 percent across-the-board reduction to the remaining fees being charged by Crowell

---

[16] If a litigation phase is omitted, no compensation is sought for work in that category.

& Moring attorneys for work done during this phase, resulting in a savings of $12,733.80. Furthermore, plaintiffs are entirely cutting out time by ACLU attorney David Rocah and ACLU law clerk Abby Nyantakyi, for an additional reduction of 49 hours.

Plaintiffs seek recovery of **323** (of 463.75) hours spent by plaintiffs' counsel in the Case Development, Investigation, and Administration phase, at a value of **$146,363.70**, broken down as follows:

| Case Development, Background Investigation, and Case Administration | | | |
|---|---|---|---|
| **Name** | **Hours Expended** | **Hours Billed** | **Fees Charged** |
| Daniel W. Wolff | 59.75 | 55.50 | $42,125.00 |
| Alexandra Nkechi Kanu | 60.00 | 46.25 | $21,506.00 |
| Tyler A. O'Connor | 69.75 | 59.75 | $27,784.00 |
| Benjamin Wastler | 94.50 | 79.0 | $34,760.00 |
| Brian C. Lewis | 3.250 | 2.50 | $1,162.50 |
| Crowell support staff | 47.50 | 0.00 | $0.00 |
| *Crowell Totals* | *334.75* | *243.00* | *$127,338.00* |
| | *After 10% reduction to fees:* | | *$114,604.20* |
| | | | |
| Deborah Jeon | 60.3 | 60.3 | $28,642.50 |
| David Rocah | 0.5 | 0.0 | $0.00 |
| Nicholas Steiner | 1.8 | 1.8 | $432.00 |
| Gina Elleby | 17.3 | 17.3 | $2,595.00 |
| Amy Cruice | 0.6 | 0.6 | $90.00 |
| Abby Nyantakyi | 48.5 | 0.0 | $0.00 |
| *ACLU Totals* | *129.0* | *80.0* | *$31,759.50* |
| | | | |
| **Grand Totals** | **463.75** | **323.0** | **$146,363.70** |

## 2. Pleadings

Counsel devoted necessary time examining the facts and researching the law to prepare the complaint and related papers.

In their exercise of billing judgment, plaintiffs' counsel are reducing time spent in the pleadings phase by not seeking fees for any of the work done by Crowell & Moring summer associate Michelle Onibokun or any Crowell & Moring support staff, and eliminating a substantial number of charges for work by the Crowell & Moring attorneys listed below. This accounts for a deduction of 116 hours and $42,206. Moreover, to ensure against duplication or overlap counsels' efforts in this phase of the case, plaintiffs are voluntarily applying a 10 percent across-the-board reduction to the remaining fees charged by Crowell & Moring attorneys for work done during this phase, resulting in an additional deduction of $9,795.20.

Plaintiffs seek recovery of **229.3** (of 345.3) hours spent by plaintiffs' counsel in the Pleadings phase, at a value of **$102,559.30**, broken down as follows:

| Pleadings | | | |
|---|---|---|---|
| Name | Hours Expended | Hours Billed | Fees Charged |
| Daniel W. Wolff | 37.50 | 30.75 | $23,339.00 |
| Alexandra Nkechi Kanu | 54.50 | 44.00 | $20,460.00 |
| Tyler A. O'Connor | 17.50 | 14.50 | $6,743.00 |
| Benjamin Wastler | 150.00 | 107.75 | $47,410.00 |
| Michelle Onibokun | 32.25 | 0 | $0.00 |
| Crowell support staff | 21.25 | 0 | $0.00 |
| *Crowell Totals* | *313* | *197* | *$97,952.00* |
| | *After 10% reduction to fees:* | | *$88,156.80* |
| | | | |
| Deborah Jeon | 28.3 | 28.3 | $13,442.50 |
| Nicholas Steiner | 4.0 | 4.0 | $960.00 |
| *ACLU Totals* | *32.3* | *32.3* | *$14,402.50* |
| | | | |
| **Grand Totals** | **345.3** | **229.3** | **$102,559.30** |

### 3.   Motions Practice (Round I)

After plaintiffs filed their complaint, the Baltimore Police Department and the City each filed motions to dismiss or for summary judgment.  Plaintiffs' counsel devoted a significant amount of time to researching and drafting plaintiffs' opposition papers to the defendants' motions.  The case was initially dismissed by Judge Motz, without argument on the motions papers, but soon thereafter was re-opened and re-assigned to Judge Garbis.  *See* ECF 26; ECF 28. Plaintiffs drafted and filed a motion for reconsideration, then prepared for and presented argument on behalf of plaintiffs at a hearing before Judge Garbis in November 2017.  *See* Wolff Decl. ¶ 16.

While the time expended all was necessary to the case, in their exercise of billing judgment, plaintiffs have elected to reduce the time spent in the Motions Practice (Round I)[17] phase by eliminating from this request numerous charges for work by the Crowell & Moring attorneys to address potential duplication of efforts and communications among counsel, as well as also eliminating all time for work done by Crowell & Moring support staff. This accounts for a deduction of 93.25 hours and $27,335. Plaintiffs also are applying a 10 percent across-the-board

---

[17] In the interest of clarity, this memorandum separates time entries for the "motions practice" litigation phase into two rounds: one for motions work done before the appeal, and one for motions work done after remand. The ACLU "Motions practice" phase time entries with dates on or before November 30, 2017 are included in Motions Practice (Round I) and "Motions practice" phase time entries with dates on or after December 14, 2019 are included in Motions Practice (Round II).

reduction to the remaining fees for work by Crowell & Moring attorneys during this phase, resulting in an additional deduction of $11,894.40.

Plaintiffs seek recovery of **270.1** (of 363.35) hours spent by plaintiffs' counsel in the Motions Practice (Round I) phase, at a value of **$117,306.60**, broken down as follows:

| Motions Practice (Round I) | | | |
|---|---|---|---|
| **Name** | **Hours Expended** | **Hours Billed** | **Fees Charged** |
| Daniel W. Wolff | 46.25 | 42.75 | $32,447.00 |
| Alexandra Nkechi Kanu | 28.75 | 26.75 | $12,439.00 |
| Tyler A. O'Connor | 56.00 | 49.50 | $23,018.00 |
| Benjamin Wastler | 136.00 | 116.00 | $51,040.00 |
| Crowell support staff | 61.25 | 0.00 | $0.00 |
| *Crowell Totals* | *328.25* | *235.00* | *$118,944.00* |
| | *After 10% reduction to fees:* | | *$107,049.60* |
| | | | |
| Deborah Jeon | 7.8 | 7.8 | $3,705.00 |
| Nicholas Steiner | 27.3 | 27.3 | $6,552.00 |
| *ACLU Totals* | *35.1* | *35.1* | *$10,257.00* |
| | | | |
| **Grand Totals** | **363.35** | **270.1** | **$117,306.60** |

### 4.   Appellate Practice

Upon dismissal by Judge Garbis, plaintiffs pursued an appeal before the Fourth Circuit. *See* ECF 34. Plaintiffs' counsel devoted significant time to researching and drafting an opening brief, analyzing defendants' response brief, researching and drafting a reply brief, and preparing for and presenting oral argument on behalf of plaintiffs-appellants to the Fourth Circuit in January 2019. The Fourth Circuit reversed Judge Garbis and remanded the matter to this Court. *See* Wolff Decl. ¶ 18; *Overbey v. Mayor of Balt.*, 930 F.3d 215 (4th Cir. 2019). Defendants then sought *en banc* reconsideration of the panel decision. Plaintiffs'

counsel devoted additional time and effort to rebutting defendants' request. The Fourth Circuit denied reconsideration on July 11, 2019.

Although the time expended on the successful appeal was vital to the case, in their exercise of billing judgment, plaintiffs have elected to reduce the time spent in the Appellate Practice phase by eliminating numerous charges for work by Crowell & Moring attorneys, including all time for work done by Crowell & Moring partners Clifton Elgarten, Richard Lehfeldt, and Thomas Lorenzen—who, consistent with Crowell & Moring's appellate practice for any client, assisted with moot arguments—as well as all time for associates Charles Austin and Ben Wastler.[18] This accounts for a deduction of 317 hours and $110,383.25. Plaintiffs also have applied a 10 percent across-the-board reduction to the remaining fees for work by Crowell & Moring attorneys during this phase, resulting in a savings of $19,002.

Plaintiffs seek recovery of **414.6** (of 639.5) hours spent by plaintiffs' counsel in the Appellate Practice phase, at a value of **$209,118.50**, broken down as follows:

---

[18] Mr. Elgarten is an experienced appellate attorney and former U.S. Supreme Court law clerk; Mr. Lorenzen also has extensive appellate experience, having briefed, argued, or supervised hundreds of appellate matters in private practice and the U.S. Department of Justice; and Mr. Austin previously served as a law clerk at the U.S. Court of Appeals for the Fourth Circuit.  Wolff Decl. ¶¶ 11-12.

23

| Appellate Practice | | | |
|---|---|---|---|
| Name | Hours Expended | Hours Billed | Fees Charged |
| Daniel W. Wolff | 143.25 | 136.25 | $103,413.75 |
| Alexandra Nkechi Kanu | 103.75 | 80.75 | $37,548.75 |
| Tyler A. O'Connor | 125.25 | 105.50 | $49,057.50 |
| Other Crowell attorneys[19] | 67.75 | 0.00 | $0.00 |
| Crowell support staff | 199.50 | 0.00 | $0.00 |
| *Crowell Totals* | *639.5* | *322.50* | *$190,020.00* |
| | After 10% reduction to fees: | | *$171,018.00* |
| | | | |
| Deborah Jeon | 68.3 | 68.3 | $32,442.50 |
| Nicholas Steiner | 23.2 | 23.2 | $5568.00 |
| Gina Elleby | 0.6 | 0.6 | $90.00 |
| *ACLU Totals* | *92.1* | *92.1* | *$38,100.50* |
| | | | |
| **Grand Totals** | **731.6** | **414.6** | **$209,118.50** |

5.    **Settlement**

Shortly after initially filing suit, and again after the Fourth Circuit held the challenged NDA unenforceable on policy grounds rooted in the First Amendment, reversing and remanding to this Court, plaintiffs and their counsel made good faith efforts to avoid further litigation and resolve the matter by settling with the City. However, settlement talks concluded without the parties able to reach an agreement.

In order to be as reasonable as possible, plaintiffs have exercised billing judgment to reduce the time being sought for the Settlement phase by eliminating all time for work done by Crowell & Moring attorneys Tyler O'Connor and Ben Wastler, and Crowell & Moring support staff. This accounts for a deduction of 6.75

---

[19] This includes the combined time for Messrs. Elgarten, Lorenzen, Lehfeldt, Austin, and Wastler.

hours and $2,710. Plaintiffs are applying a 10 percent across-the-board reduction to the remaining fees for work by Crowell & Moring attorneys during this phase, resulting in an additional deduction of $1,043.60.

Plaintiffs seek recovery of **30.15** (of 37.4) hours spent by plaintiffs' counsel in the Settlement phase, at a value of **$17,182.40**, broken down as follows:

| Settlement | | | |
|---|---|---|---|
| **Name** | **Hours Expended** | **Hours Billed** | **Fees Charged** |
| Daniel W. Wolff | 14.5 | 13.75 | $10,436.00 |
| Tyler A. O'Connor | 2.25 | 0.00 | $0.00 |
| Ben Wastler | 1.50 | 0.00 | $0.00 |
| Crowell support staff | 2.25 | 0.00 | $0.00 |
| *Crowell Totals* | *20.5* | *13.75* | *$10,436.00* |
| | *After 10% reduction to fees:* | | *$9,392.40* |
| | | | |
| Deborah Jeon | 16.4 | 16.4 | $7,790.00 |
| Sonia Kumar | 0.5 | 0.0 | $0.00 |
| *ACLU Totals* | *16.9* | *16.4* | *$7,790.00* |
| | | | |
| **Grand Totals** | **37.4** | **30.15** | **$17,182.40** |

## 6.    Motions Practice (Round II)

After remand to this Court and unsuccessful settlement efforts, it was necessary for plaintiffs' counsel to research and prepare Ms. Overbey's motion for summary judgment on liability and damages, to analyze defendants' opposition brief, and to research and draft a brief in reply.

In their exercise of billing judgment, plaintiffs' counsel are reducing time spent in this litigation phase by eliminating from this request numerous charges for work by the Crowell & Moring attorneys listed below, as well as all work done by counsel Alexandra Nkechi Kanu, associate John Arszulowicz, and Crowell & Moring

multiple support staff. This accounts for a deduction of 55 hours and $18,653.75.

Plaintiffs are applying a 10 percent across-the-board reduction to the remaining

fees charged for Crowell & Moring attorneys work in this phase, resulting in a

savings of $2,281.72.

Plaintiffs seek recovery of **55.65** (of 110.65) hours spent by plaintiffs' counsel

in the Motion Practice (Round II) phase, at a value of **$25,120.53**, broken down as

follows:

| Motions Practice (Round II) | | | |
|---|---|---|---|
| **Name** | **Hours Expended** | **Hours Billed** | **Fees Charged** |
| Daniel W. Wolff | 6.75 | 5.25 | $3,984.75 |
| Tyler A. O'Connor | 27.00 | 25.50 | $11,857.50 |
| Brian C. Lewis | 16.50 | 15.00 | $6,975.00 |
| Other Crowell attorneys[20] | 29.00 | 0.00 | $0.00 |
| Crowell support staff | 21.50 | 0.00 | $0.00 |
| *Crowell Totals* | *100.75* | *45.75* | *$22,817.25* |
| | *After 10% reduction to fees:* | | *$20,535.53* |
| | | | |
| Deborah Jeon | 9.4 | 9.4 | $4,465.00 |
| Nicholas Steiner | 0.5 | 0.5 | $120.00 |
| *ACLU Totals* | *9.9* | *9.9* | *$4,585.00* |
| | | | |
| **Grand Totals** | **110.65** | **55.65** | **$25,120.53** |

### 7.    Fee Petition Preparation

The time and expenses required for the preparation of a motion requesting

attorneys' fees and costs are compensable. *Ganey v. Garrison*, 813 F.2d 650, 652

(4th Cir. 1987).  Preparing a proper fee application is necessarily time-consuming,

nevertheless, plaintiffs' counsel nevertheless have exercised billing judgment by

---

[20] This includes the combined times for counsel Ms. Kanu and associate Mr.
Arszulowicz.

deducted a portion of the hours spent in the Fee Petition phase by eliminating a number of charges for work by the Crowell & Moring attorneys among counsel, including all work done by counsel Alexandra Nkechi Kanu and Crowell & Moring support staff. This accounts for a deduction of 45.50 hours and $12,395.25. Additionally, plaintiffs are making a 10 percent across-the-board reduction to the remaining fees charged by Crowell & Moring attorneys for this phase, resulting in an additional deduction of $2,335.57.

Plaintiffs seek recovery of **58.65** (of 104.15) hours[21] spent by plaintiffs' counsel in the Fee Petition phase, at a value of **$26,315.18**, broken down as follows:

| Fee Petition Preparation | | | |
|---|---|---|---|
| **Name** | **Hours Expended** | **Hours Billed** | **Fees Charged** |
| Daniel W. Wolff | 6.75 | 5.50 | $4,174.50 |
| Tyler A. O'Connor | 6.50 | 5.25 | $2.441.25 |
| Brian C. Lewis | 40.75 | 36.00 | $16,740.00 |
| Alexandra Nkechi Kanu | 3.00 | 0.00 | $0.00 |
| Crowell support staff | 35.25 | 0.00 | $0.00 |
| *Crowell Totals* | *92.25* | *46.75* | *$23,355.75* |
| | *After 10% reduction to fees:* | | *$21,020.18* |
| | | | |
| Deborah Jeon | 10.8 | 10.8 | $5,130.00 |
| Amy Cruice | 1.1 | 1.1 | $165.00 |
| *ACLU Totals* | *11.9* | *11.9* | *$5,295.00* |
| | | | |
| **Grand Totals** | **104.15** | **58.65** | **$26,315.18** |

---

[21] Plaintiffs are seeking recovery in this memorandum of the ACLU's fees and costs through October 17, 2020, and Crowell & Moring's fees and costs through October 30, 2020, and will provide a supplement in their reply memorandum.

**F.      Plaintiffs Should Also Recover Their Costs.**

The Fourth Circuit has held that plaintiffs who are entitled to attorneys' fees are also entitled to recover their reasonable expenses as part of the award of attorneys' fees.  *See, e.g.*, *Daly*, 790 F.2d at 1084; *Wheeler v. Durham City Bd. of Educ.*, 585 F.2d 618 (4th Cir. 1978). Other costs also may be awarded pursuant to 28 U.S.C. § 1920.

Under the Fourth Circuit standard articulated in *Daly* and *Wheeler*, plaintiffs should be awarded all reasonable expenses as part of their attorneys' fees:

> Litigation expenses such as supplemental secretarial costs, copying, telephone costs and necessary travel, are integrally related to the work of an attorney and the services for which outlays are made may play a significant role in the ultimate success of litigation . . . .

*Wheeler*, 585 F.2d at 623-24; *see also* 122 Cong. Rec. at 12,160 (daily ed. Oct. 1, 1976) (quoting the House debate on §1988 as follows: "the phrase 'attorneys' fee' would include the value of the legal services provided by counsel, including all necessary expenses incurred in furnishing effective and competent representation.").

As reflected in the accounting of costs attached to the Declarations of Mr. Wolff (Exhibit 2 thereto) and Ms. Jeon (Exhibit 2) plaintiffs seek a total of **$20,378.42** in litigation-related expenses.  These expenses are of the type normally charged to fee-paying clients, and are documented by contemporaneous records. Moreover, these expenses are of the sort specifically covered by this Court's *Rules and Guidelines. See* U.S. Dist. Ct. Rules Md. App. B at 4.a-4.c (Dec. 1, 2018).

## CONCLUSION

For all the foregoing reasons, plaintiffs ask this Court to grant this motion and award plaintiffs the attorneys' fees and costs as detailed herein.  Plaintiffs' counsel seek compensation only for work reasonably necessary to successful pursuit of plaintiffs' claims, and should be awarded attorneys' fees commensurate with the substantial public service they have achieved.  Plaintiffs should be granted the full compensation requested in this reasonable Memorandum in Support of Plaintiffs' Motion Requesting Attorneys' Fees and Costs. This includes attorneys' fees of **$643,966.21**, and expenses of **$20,378.42**, for a total of **$664,344.63**.

Respectfully submitted,

 */s/ Daniel W. Wolff*

| | |
|---|---|
| Deborah Jeon (No. 06905) | Daniel W. Wolff (No. 19940) |
| Nicholas Steiner (No. 19670) | Nkechi Kanu |
| ACLU of Maryland | Tyler O'Connor |
| 3600 Clipper Mill Rd, Suite 350 | Brian C. Lewis |
| Baltimore, MD 21211 | CROWELL & MORING LLP |
| Telephone: (410) 889-8555 | 1001 Pennsylvania Avenue, N.W. |
| Fax: (410) 366-7838 | Washington, D.C. 20004 |
| jeon@aclu-md.org | dwolff@crowell.com |
| steiner@aclu-md.org | nkanu@crowell.com |
| | toconnor@crowell.com |
| | blewis@crowell.com |

*Attorneys for Plaintiffs Ashley Overbey and Baltimore Brew*

November 9, 2020

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing Memorandum In Support of Plaintiffs' Motion Request Attorneys' Fees and has been served via the CM/ECF electronic filing system on this 9th day of November, 2020, upon all parties of record:

              */s/ Daniel W. Wolff*
              Daniel Wolff (Attorney of Record)
              dwolff@crowell.com
              CROWELL & MORING LLP
              1001 Pennsylvania Avenue, N.W.
              Washington, D.C. 20004
              Telephone:   (202) 624-2500
              Facsimile:    (202) 628-5116