# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| ASHLEY AMARIS OVERBEY, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Civil Action No. DKC-17-cv-1793 |
| | ) |
| THE MAYOR AND CITY COUNCIL | ) |
| OF BALTIMORE, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## DECLARATION OF DEBORAH A. JEON

I, Deborah A. Jeon, am over 18 years of age and am competent to testify.

**A.     Professional Background and Qualifications**

1.     I am an attorney admitted to practice in the State of Maryland and before this Court. In cooperation with attorneys from Crowell & Moring LLP, I represent the plaintiffs in this case.

2.     I am a 1986 graduate of Yale Law School, where I was a senior editor of the *Yale Law and Policy Review*. I did my undergraduate work at Cornell University, from which I graduated *with distinction* and *with honors*, and I hold a master's degree in print journalism from Boston University. I have been licensed to practice law since 1987, and have an "AV" rating from the Martindale Hubbell Law Directory, indicating "very high to preeminent" legal ability and "very high" ethical standards. I am the recipient of a "Leadership in Law" Award from Maryland's *Daily Record* newspaper, subsequently selected by the *Daily Record* to judge the Leadership in Law Awards. I am currently admitted to practice in the United States Supreme

Court, the United States Courts of Appeal for the Fourth and Fifth Circuits, the United States District Courts of Maryland and Arkansas, and to the state bars and courts of Georgia (1987), Maryland (1990), and the District of Columbia (1990).

3. Immediately following law school, I served for a year as judicial clerk to the Honorable Myron H. Thompson, United States District Judge for the Middle District of Alabama. As clerk to Judge Thompson, I routinely dealt with complex civil rights litigation.

4. From October 1987 until the end of 1989, I was an attorney with the Little Rock, Arkansas law firm of Youngdahl & Youngdahl, P.A., where I practiced labor and civil rights law. The firm served as counsel to international and local labor unions throughout the South and Southwest. I was involved extensively in complex employment litigation, and appeared before federal courts in the states of Arkansas, Texas, Louisiana, Mississippi, Oklahoma, New Mexico, Georgia, New York, and Missouri.

5. Since January 1990, I have been an attorney with the American Civil Liberties Union Foundation of Maryland, initially directing the organization's Eastern Shore legal program, and since 2005, as the organization's Legal Director. As an ACLU attorney, I practice exclusively civil rights and constitutional law. During my tenure here, I have supervised and served as counsel in dozens of civil rights and civil liberties cases in addition to the instant case, the great majority in federal court.

6. Due to the small staff of the Maryland ACLU, our legal program operates by enlisting the cooperation of private firm attorneys in each case in which litigation is undertaken, enabling the ACLU to greatly expand the number of cases in which the organization provides counsel to civil rights litigants. In all ACLU cases, at least one staff attorney serves as co-counsel with our "cooperating attorneys", thus requiring staff counsel on each case to meet all ethical obligations owed to clients and the courts as counsel of record. Due to my years of

experience co-counseling ACLU cases with lawyers at private law firms, I have developed skill at providing efficient, quality representation to ACLU clients through partnerships with private firms. Thus, in cases like the instant case in which a large law firm devotes substantial personnel and resources to representation of ACLU clients, I am able to minimize time expended by ACLU personnel on general litigation of the matter, and to focus our time on areas in which our particular expertise is most useful. In other cases, where, for example, we co-counsel a case with a small firm practitioner, ACLU staff lawyers and personnel often are substantially more involved in the case. Generally, however, ACLU staff are the first point of contact for the clients, serve as experts on civil rights law and litigation, and provide oversight for the organization's cases.

7. In the course of this case, I worked with other ACLU personnel, including attorneys David Rocah and Nicholas Taichi Steiner, and paralegals Gina Elleby and Amy Cruice.[1] Their qualifications are as follows:

    a) David Rocah is a 1994 honors graduate of the New York University Law School, where he was a Root-Tilden-Snow Scholar and was inducted into the Order of the Coif. He has spent his entire legal career doing civil rights work, most of it with the ACLU. Following graduation from law school, David served as a judicial clerk to Chief Judge Harold Barefoot Sanders of the U.S. District Court for the Northern District of Texas. After spending four years as a staff attorney with the ACLU of New Jersey, David worked as a Trial Attorney, and then Senior Trial Attorney in the Special Litigation Section of the Civil Rights Division at the U.S. Department

---

[1] Although David Rocah did not bill extensively on the case, he lent his First Amendment expertise to numerous strategy discussions, especially in the case development phase. Nevertheless, in an exercise of billing judgment, no compensation is sought for his time. Additionally, law clerk Abby Nyantakyi assisted in case development and administration, but we are not charging for her time.

Justice. David has been on staff at the ACLU of Maryland since 2001, and is widely regarded as an expert on the First Amendment. In 2008, he was chosen by the *Daily Record* as one of Maryland's most influential leaders in the field of law, in recognition of his work exposing and addressing a pattern of police spying on peaceful protesters here in Maryland.

b) Nicholas Taichi Steiner is a 2015 honors graduate of the American University Washington College of Law School, and the recipient of a 2017 Master's Degree in International Politics with a focus on United States Immigration Policy from the American University School of International Service. Following graduation from law school, Nick secured a one-year JD Distinguished Fellowship through the Washington College of Law, focusing on a variety of different civil rights and civil liberties issue areas, including free speech, government transparency, and immigrants' rights. Two years later, he won a second prestigious fellowship through the Equal Justice Works Foundation, to work with immigrant communities in Maryland in challenging unlawful and unconstitutional local law enforcement actions related to immigration enforcement. First through these fellowships and then transitioning to a position as Staff Attorney, Nick has worked at the ACLU of Maryland since 2015, where he currently focuses on immigrants' rights, government transparency, and police accountability issues.

c) Amy Cruice has been a paralegal at the ACLU of Maryland for 20 years, taking on increasing responsibility over time for case investigation and client communications, as well as legal program management. In 2006, the Daily Record newspaper recognized Ms. Cruice as its paralegal of the year, through its "Unsung

Heroes" program. Ms. Cruice is a 2000 graduate of Michigan State University, with a B.A. in Criminal Justice.

d) Gina Elleby has been a paralegal at the ACLU of Maryland for five years, managing the organization's intake program, reviewing and responding to legal requests, investigating cases, and providing litigation assistance. Ms. Elleby is a 2011 graduate of Howard University School of Law, with a B.A. in art history from Spelman College.

**C.      Rates of Compensation Sought**

8.      Lawyers at public interest organizations like the ACLU do not have regular billing rates, as we work on a salary basis and do not bill our clients for representation. When we are successful in litigation, however, we recover at prevailing market rates under statutory fee provisions. ACLU recovery of fees is crucial to the organization's ability to continue providing quality legal representation to victims of civil rights and civil liberties violations. All fees go directly to our litigation fund.

9.      The hourly rates we are charging for ACLU personnel who worked on this matter are as follows:

| | |
|---|---|
| Deborah Jeon | $475 |
| David Rocah | $450 |
| Nicholas Taichi Steiner | $240 |
| Amy Cruice | $150 |
| Gina Elleby | $150 |
| Abby Nyantakyi | $125 |

Based upon my knowledge of the local legal community, these rates reflect significant reductions from those typically charged by private firm attorneys and paralegals of comparable backgrounds

within the Maryland market -- even for work that is not performed on a risky, contingent basis such as this. Additionally, these rates fall within the range of presumptive rates established in the Maryland federal court's *Rules and Guidelines for Determining Attorneys' Fees in Certain Cases*, even though those guidelines have not been updated for several years. As attested by Andrew Freeman, in his Declaration, if his law firm, Brown, Goldstein & Levy, was billing for my work on this case as lead ACLU attorney, the hourly rate billed would be $625, rather than $475, a $150 per hour reduction. The rate for Nicholas Steiner is similarly being reduced from $360 to $240 per hour.

D. **Work for Which Compensation is Sought**

10. During the course of my work on this case, I kept contemporaneous notes of the services and hours expended by me personally, and I supervised timekeeping by other ACLU personnel. Appended hereto as Exhibit 1 is an itemization of work by all ACLU personnel through October 17, 2020, indicating time for which compensation is sought, as well as showing discounted time.[2] In accordance with the Court's Rules and Guidelines, we have organized this itemization on a phase-by-phase basis, with records chronologically. All of this time was spent on work necessary to the case, but I have nevertheless chosen not to seek reimbursement for all of our time nor at rates as high as we might legitimately charge, in my exercise of billing judgment.

11. The ACLU was initially contacted about Baltimore City's use of unconstitutional nondisclosure/nondisparagement clauses (hereafter NDAs) in civil rights settlements in summer of 2015, when Ashley Overbey raised the possibility of challenging the City's enforcement of this clause against her in order to withhold half of settlement proceeds from her underlying police abuse case. Subsequently, we discussed this issue with journalists, including staff at the

---

[2] Because work on petitioning for attorneys' fees is continuing, we will supplement our time with work dating after October 17 during the reply phase of briefing on the petition.

Baltimore Brew, who raised their own concerns about the way these clauses chilled their First Amendment rights to engage in newsgathering activity. We spent several months investigating the case internally, before reaching decision to undertake a legal challenge. Because we did not think this matter lent itself to resolution without litigation in light of positions the City had taken publicly about its commitment to continued use of NDAs, we then began recruitment of a law firm to work with the ACLU on the matter. Given that this was a significant First Amendment matter and that it involved City of Baltimore, we searched for firms both in the Washington, D.C. and Maryland markets, rather than limiting our initial search to Maryland firms. We did this because our long experience with *pro bono* recruitment is that local firms often have more conflicts and are less willing to take on *pro bono* matters for the ACLU when the target of the lawsuit is the City or State government. This proved true here, in that no Maryland firm volunteered to take on the case, over several months. In winter of 2016, we reached a tentative arrangement with Crowell & Moring LLP, and firm lawyers readied themselves to begin work on the case.

12. Over the remainder of 2016 and into 2017, I worked with ACLU staff and Crowell lawyers to investigate the issues, and develop this novel legal challenge to government imposed NDAs. In 2017, we prepared and filed a Complaint, undertook pre-motion efforts to settle the matter which the City rebuffed, then worked collaboratively during the motions phase in the district court. Following dismissal of the case by Judge Motz, reinstatement by Judge Bredar, and a second dismissal by Judge Garbis, we pursued an appeal to the Fourth Circuit. This entailed briefing and oral argument, as well as responding to inquiries about the matter from numerous interested *amici curiae*. The critical importance and complexity of the issues at stake on appeal were plain from the fact that the Baltimore City Solicitor, retired Fourth Circuit Judge Andre Davis, appeared as lead counsel and personally argued the appeal – his first appellate

argument since retirement from the bench. Overall, this work led to a successful and precedent-setting outcome in court, and the City's enactment of sweeping government transparency legislation addressing civil rights settlements, expressly based on the Fourth Circuit ruling. Thereafter, on remand, we undertook additional unsuccessful settlement efforts, and successful motions practice. Given the clarity of the plaintiffs' entitlement to recovery of attorneys' fees and costs for our successful work in this important case, we endeavored to settle the fee matter without the additional work of this attorneys' fees petition. Unfortunately, however, City lawyers refused even to entertain negotiations about fee recovery. The overall result of our work on this case has been a sweeping success – forcing the City to abandon its longstanding policy of imposing NDAs on 95 percent of all police misconduct plaintiffs as a condition of settlement, and securing a full award of damages to Ms. Overbey due to the City's violation of her First Amendment rights.

13. Following the initial case development phase of litigation in this case, lawyers from Crowell & Moring have taken the role as lead counsel, with ACLU lawyers serving in a more limited capacity on the case, sufficient to satisfy our ethical obligations as co-counsel, but so as not to overstaff the case or duplicate efforts. Only with regard to the initial case-development stage and this final stage of the case, involving attorneys' fees, have I taken on a larger role, given my extensive past experience in this specialized area. This division of labor is evident from review of our time records, and has helped to ensure against our overstaffing of the case despite the ACLU's collaboration with the firm. Time spent on the case by ACLU staff, and fees charged, are as follows:

| Litigation Phase | Hours Expended | Fees Billed |
|---|---|---|
| Case Development | 129.0 | $ 31,894.50 |
| Pleadings | 32.3 | $ 14,402.50 |
| Motions Practice | 45.0 | $ 14,842.00 |
| ADR/Settlement | 16.9 | $  7,790.00 |
| Fee Petition | 11.9 | $  5,295.00 |
| Appellate Practice | 92.1 | $ 38,100.50 |
| **Total All Phases** | **327.2 hours** | **$112,324.50** |

### E.  Deductions Made to the Fee Petition

14. As detailed below, the reductions we are making to this fee request are substantial ones.

15. <u>Cuts in personnel for whom fees are sought</u>: We are excluding from this request all time spent on the case by ACLU attorney David Rocah, a First Amendment expert and attorney with more than 25 years of experience who greatly assisted our work on the matter, and law clerk Abby Nyantakyi.

16. Due to these reductions we are seeking recovery for just about 86 percent of time actually spent on the case, cutting 51.2 hours of time from the hours expended, for a total of 276 hours. The monetary value of this reduction in hours totals **$6,562.50**.

17. <u>Reductions in the rates being charged</u> – As noted above, as part of my exercise of billing judgment, I am reducing my rate for this case from what would be charged by a private firm, from $625 to $475 per hour. Similarly, I am reducing Nick Steiner's rate from the $360 he could charge at a private firm to $240. Given my expenditure of 201.3 hours, and Mr. Steiner's

113.6 hours, on this case, this accounts for a fee reduction of $30, 195 for me and $13,632 for Mr. Steiner, for a total of **$43,827** in rate reductions**.**

F.      **Total ACLU Time, Fees, and Costs Sought and Deductions Made**

18.     In sum, the ACLU is requesting reimbursement for fees of **$112,324.50** covering 307.6 hours of attorney time, and 19.6 hours of paralegal time.  This represents an overall fee *reduction* of **31 percent** from the total of $162,804 actually incurred in our successful representation of the plaintiffs in this important case. The ACLU is seeking reimbursement of just **$593.94** in expenses, as shown in Exhibit 2.  Fees and costs combine sought by the ACLU total **$112,918.44**. The American Civil Liberties Union has not received any payment for its work in this case, having been engaged by the plaintiffs on a *pro bono* basis.

I declare under penalty of perjury that the foregoing is true and correct.

Dated:   November 9, 2020

Deborah A. Jeon