UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Northern Division

| | | |
|---|---|---|
| Ashley Amaris Overbey, et al. | * | |
| Plaintiffs, | * | |
| v. | * | Civil No.: 1:17-cv-01793-DKC |
| Mayor & City Council of Baltimore, et al. | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**DEFENDANT'S OPPOSITION TO
PLAINTIFFS' MOTION FOR ATTORNEYS' FEES**

The Mayor and City Council of Baltimore ("the City"), pursuant to Rule 54 of the Federal Rules of Civil Procedure and Local Rule 109.2, hereby submits its Opposition to Plaintiffs' Motion for Attorneys' Fees and Costs ("Motion," ECF No. 67, 69). The Motion seeks to impose on the City taxpayer more than $650,000 worth of extravagant legal costs purportedly expended to secure a judgment of less than $45,000. The sums sought by Plaintiffs' counsel are excessive and the City respectfully urges this Court to deny Plaintiffs' Motion.

**PROCEDURAL HISTORY AND FACTUAL BACKGROUND**

In 2013, Plaintiff Ashley Overbey ("Overbey") filed a complaint against Officers of the Baltimore Police Department ("BPD") alleging that she was physically detained and injured by the BPD Officers. ECF No. 5. This suit ultimately settled and Overbey freely and willingly, with the benefit of legal counsel, entered into a Settlement Agreement that admitted no fault on BPD's part and contained a standard non-disparagement agreement. *Id.*

Although the settlement contemplated a $63,000 payment to Ms. Overbey, the City learned that Overbey violated the terms of the Settlement Agreement prior to receiving the full settlement

1

sum. As a result, the City tendered $31,500 to Overbey, withholding the remainder for Overbey's breach of the non-disparagement provision. *Id.*

As a result, Overbey and Baltimore Brew[1] filed the instant suit in June 2017 seeking, among other things, remittal of the remaining $31,500. ECF No 1. Plaintiffs' subsequently amended five-count complaint alleged First Amendment violations, violation of public policy, unlawful liquidated damages, and breach of contract. ECF No. 5. Plaintiffs' amended complaint sought declaratory and injunctive relief, in addition to $31,500 plus interest.

On November 29, 2017, the Court granted judgment in favor of Defendants against both Plaintiffs, and dismissed all claims with prejudice. ECF. No. 33. On Plaintiffs' appeal, the Fourth Circuit reversed the judgment of the District Court and remanded the matter for further proceedings. ECF No. 39-1. Overbey then moved for summary judgment against Defendants, seeking that the Court "enter summary judgment in her favor and award damages of $31,500 plus interest." ECF No. 61.

This Court issued a Memorandum Opinion on September 21, 2020 dismissing all claims by Baltimore Brew and granting Overbey's summary judgment motion. ECF No. 64. By separate Order, the Court entered judgment in favor of Overbey "in the amount of $31,500, plus prejudgment interest at the rate of 6% per annum dating from October 8, 2014." ECF No. 65. In addition, the Court ordered that "all other claims for relief BE, and the same hereby ARE,

---

[1] Plaintiff Baltimore Brew ("Baltimore Brew") is a media organization that has reported on affairs of Baltimore City since at least 2011. *Id.* Baltimore Brew alleges that, because of non-disparagement clauses historically included in certain City Settlement Agreements involving allegations of police misconduct, it is required to expend effort in covering City affairs. *Id.* As a result, the Baltimore Brew believes that it has been be "severely limited" in fully and accurately reporting on the issue of police brutality. *Id.*, at para. 76.

DISMISSED and all prior rulings are incorporated herein, making this judgment final for purposes of Fed.R.Civ.P. 58." *Id.*

Although Plaintiffs requested multiple forms of relief across multiple pleadings and motions, at no point in any pleading or brief, prior to the entry of judgment, did Plaintiffs request attorneys' fees or costs. On October 5, 2020, Plaintiffs Overbey and Baltimore Brew filed the instant Motion for Attorney Fees and Costs, to which Defendants now respond. ECF Nos. 67, 69.

## **ARGUMENT**

After omitting fees and costs from multiple detailed requests for relief, and after the Court resolved all of Plaintiffs' claims for relief, Plaintiffs' attorneys now ask for a windfall.[2] Counsel contends that their recovery of $31,500 necessitated expenditure of over 2,000 attorney hours at rates as high as $759 per hour. Indeed, Counsel maintains that it is "reasonable" for them to charge more than half of what they recovered for their client as compensation for drafting their fee petition alone.

With no paying client incentivized to monitor the reasonableness of this legal work, Plaintiffs' attorneys let an army of legal staff run the meter.[3] "Exercising billing judgment," Plaintiffs' counsel now identifies several instances in which they declined to seek payment for redundant work, purportedly rendering the resulting billings of *only* nine legal staff "reasonable." This approach, and the necessity for ACLU to routinely partner with a Washington-based

---

[2] Any request for fees made by Plaintiff Baltimore Brew can be easily dispensed of, as all claims brought by Baltimore Brew were categorically dismissed by the Court. ECF No. 64. Any fees or costs expanded on behalf of Baltimore Brew should be denied, as Baltimore Brew was not a prevailing party.

[3] For example, an actual paying client receiving a bill of over $5,000 for the preparation of a research memorandum on a legal doctrine not asserted in the litigation could be expected to object. *See* Dkt. No. 69-5, p. 65 (detailing the research and drafting of a memo regarding *Monell* liability).

3

international law firm whose impressive fees have made it one of the 100 highest grossing firms in the country, is not simply about providing good legal representation to Overbey, Baltimore Brew, and plaintiffs in other matters jointly represented by ACLU and Crowell & Moring. Rather, it is about coercing the City (and other defendants) to give up on legitimate legal arguments, and give up early.

Punishing a defendant like the City for litigating legitimately disputed legal issues is not a legitimate purpose of a fee award. In this instance, Plaintiff Overbey's arguments carried the day and her attorneys may be entitled to a reasonable fee award.[4] What they are not entitled to is a windfall that dwarfs the result obtained for their client, at the expense of the City taxpayer. It is well within the Court's discretion to deny Plaintiff's request. *See Arnold v. Burger King Corp.*, 719 F.2d 63, 67 (4th Cir. 1983) (the Fourth Circuit "has reiterated that the amount of an attorneys' fee award 'is within the judicial discretion of the trial judge who has close and intimate knowledge of the efforts expended and the value of the services rendered.'"). It should do so here.

## I. Plaintiff is not automatically entitled to attorneys' fees.

As the Fourth Circuit has noted, the underlying purpose of section 1988, which must always guide the awarding of fees, is to ensure effective access to the judicial process for persons with civil rights grievances without simultaneously producing windfalls to the attorneys. *Daly v. Hill*, 790 F.2d 1071, 1077 (4th Cir. 1986). The City opposes the relief sought because: (1) Overbey has not provided sufficient evidence that the hourly rate is the "prevailing market rate" for attorneys in the area; (2) the hours billed for the delineated tasks are unreasonable and are often

---

[4] As noted above, only Plaintiff Overbey received favorable judgment from this Court. Thus, Defendants will only refer to Plaintiff Overbey, as Plaintiff Baltimore Brew can not be part of the request for fees.

4

double-billed; (3) Plaintiff was not successful as to each count and relief sought in her complaint; (4) Plaintiff seeks fees for appellate work that is not within the discretion of the trial court; and (5) the disproportionality of the fee award to the relief obtained is excessive; and (6) as the City voluntarily ceased use of the non-disparagement clause at issue, it should not face a punitive fee award, especially in light of the financial difficulties faced by the City at this time.

There is no automatic entitlement to attorneys' fees in § 1983 cases. The plaintiff must prevail, and the fee must be reasonable. A "prevailing party" in a § 1983 case may be entitled to recover a "reasonable attorney's fee:" The authorizing statute states: "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). The fee is discretionary and, as a result, is unlike other mandatory fee shifting statutes. To calculate an appropriate award of attorneys' fees, the Court must first determine the lodestar amount, defined as a "reasonable hourly rate multiplied by hours reasonably expended." *Grissom v. The Mills Corp.*, 549 F.3d 313, 320-21 (4th Cir. 2008). A trial court may exercise its discretion in determining the lodestar amount because it possesses "superior understanding of the litigation," and the matter is "essentially" factual. *Thompson v. HUD*, No. MJG–95–309, 2002 WL 31777631, at *6 n.18 (D. Md. Nov. 21, 2002) (quoting *Daly v. Hill*, 790 F.2d 1071, 1078-79 (4th Cir. 1986)). Once the lodestar amount has been determined, the Court determines whether or not it constitutes a reasonable fee, and makes any necessary adjustments. *See Carroll v. Wolpoff & Abramson*, 53 F.3d 626, 629 (4th Cir. 1995). In evaluating both the lodestar calculations and the overall reasonable fee, this Court uses "the twelve well-known factors articulated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974) and adopted by the Fourth Circuit in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 (4th Cir. 1978)." *Thompson*, 2002 WL

31777631, at *6 (footnotes omitted). Those factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to properly perform the legal service; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at *6 n.19 (citing *Johnson*, 488 F.2d at 717-19).

A plaintiff has the burden of proving entitlement to the amount of attorneys' fees sought and must document the appropriate hours expended, which includes maintaining records that will enable a court to identify distinct claims. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); *See also Blum v. Stenson*, 465 U.S. 886, 898 (1984) ("The issue remaining is the appropriateness of an upward adjustment to the fee award in this case."). A starting point for determining the amount of reasonable fees is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. *Hensley*, 461 U.S. at 433. Importantly, Plaintiff's burden necessarily includes the burden of demonstrating that the number of hours spent on a particular task is "reasonable." *See Salaza v. District of Columbia*, 809 F.3d 58, 61 (D.C. Cir. 2015) (noting that as part of showing entitlement to fee award the fee applicant has the burden of …. "documenting the appropriate hours, and justifying the reasonableness of the rates," with the opposing party remaining "free to rebut [the] fee claim." (quoting *Covington v. District of Columbia*, 57 F.3d 1101, 1107–08 (D.C. Cir. 1995), cert. denied, 516 U.S. 1115 (1996)); *see also Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1327 (D.C. Cir. 1982) ("An applicant for attorneys' fees is only entitled to an award for time reasonably expended. Thus, the fee application must also contain sufficiently detailed information about the hours logged and the work done. This

is essential not only to permit the District Court to make an accurate and equitable award but to place government counsel in a position to make an informed determination as to the merits of the application."); *Tillman v. District of Columbia*, 123 F. Supp. 3d 49, 55 (D.D.C. 2015) ("The party seeking fees has 'the burden of demonstrating that the number of hours expended on particular tasks was reasonable.'") (quoting *Holbrook v. District of Columbia*, 305 F. Supp. 2d 41, 45 (D.D.C. 2004)); *Spell v. McDaniel*, 824 F.2d 1380, 1402 (4th Cir. 1987)("The § 1988 fee applicant bears the burden of establishing the reasonableness of the hourly rates requested. Specifically, the applicant must produce specific evidence of the "prevailing market rates in the relevant community" for the type of work for which he seeks an award)(citing *Blum v. Stenson*, 465 U.S. 886, 895-96 (1984).

The plaintiff may satisfy this burden by submitting an invoice with sufficient detail so that the Court can determine "with a high degree of certainty" that the hours were actually and reasonably expended, that the hourly rate charged was reasonable in view of the attorney's reputation and level of skill and experience with respect to this type of case, and that the matter was appropriately staffed to do the work required efficiently and without duplicative billing. *Rooths v. District of Columbia*, 802 F. Supp. 2d 56 (D.D.C. 2011). As the Supreme Court pointed out in *Hensley*, cases may be overstaffed, and the skill and experience of lawyers vary widely. *Hensley*, 461 U.S at 434. For these reasons, "[c]ounsel for the prevailing party should therefore make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as lawyers in private practice are ethically obligated to exclude such hours from his fee submission." *Id*. Furthermore, any activity that an attorney may bill a private client is not necessarily reasonably billed pursuant to a fee-shifting statute. "In the private sector, 'billing judgment' is an important component in fee setting. It is no less important here. Hours

7

that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority." *Id.* (quoting *Copeland v Marshall*, 205 U.S. App. D.C. 390, 401; 641 F.2d 880, 891 (1980)(en banc)(emphasis in original).

> II. **The hourly rate presented is not the "prevailing market rate" for attorneys in Baltimore, Maryland.**

Plaintiff's entire motion focuses on the market rate for attorneys in the Washington, D.C. area and that municipality's use of the Updated *Laffey* Matrix (also known as the LSI/Salazar Laffey Matrix). ECF No. 69 at 14. This case, however, was litigated in Baltimore, Maryland, and this Court has set forth clear guidance on appropriate rates in its Local Rules. *See Rates and Guidelines for Attorney's Fees in Certain Cases*, U.S. Dist. Ct. Rules Md. Appendix B (December 1, 2018). Those rates are as follows, and stand in stark contrast to the inflated rates provided by Plaintiff:

| Name | Years in Practice | Plaintiffs' Proposed Rate | Local Rules Rate |
|---|---|---|---|
| Daniel W. Wolff | 19 | $759 | $275 to $425 |
| Alexandra Nkechi Kanu | 6 | $465 | $165 to $300 |
| Tyler O'Connor | 6 | $465 | $165 to $300 |
| Brian C. Lewis | 5 | $465 | $165 to $300 |
| Benjamin Wastler | 10 | $440 | $225 to $350 |
| | | | |
| Deborah A. Jeon | 34 | $914 | $300 to $475 |
| Nicholas Taichi Steiner | 5 | $465 | $165 to $300 |
| Amy Cruice | Paralegal | $206 | $95 to $150 |
| Gina Elleby | Paralegal | $206 | $95 to $150 |

ECF No. 69 at 14, 15 cf. Local Rules Appendix B., 3.

Reducing Plaintiff's attorneys' billing rates to bring them in conformity with the Local Rules guidelines, with no other adjustment, would result in a 24 – 55% reduction of the value of the claimed fees, depending where in the range the Court fixed the rate for each biller. *See* Comparison Chart, attached as Exhibit A (computing the value of time billed by each

8

timekeeper, at each stage of the litigation, based on Plaintiffs' proposed rates and the high and low ends of the Local Rules ranges).

Plaintiff has not offered a compelling justification for using rates that, in some instances, double or triple those authorized by this Court's guidance. Indeed, Plaintiff ignores the existence of that guidance entirely. Although Plaintiff alleges that the rates for her attorneys are only "slightly higher" than those for the Baltimore area, they provide no indication that fees in this ballpark have been awarded in other cases.

It is also notable that Plaintiff elected to reduce the billing rates of the ACLU to comport with Appendix B of the Local Rules, despite one named attorney (Ms. Jeon) having significantly more years of related litigation experience than any other attorney listed in Plaintiffs' Motion for Fees. ECF. No. 69-1, at 5; *see also* ECF. No. 69, at 20. Yet, when determining the rates for Crowell and Moring, a successful international law firm who entered this case on a *pro bono* fee arrangement, Plaintiffs reduced those rates only to the level of the Laffey Matrix, which lists billing rates significantly higher than those listed in Appendix B of the Local Rules. ECF. No. 69, at 19; *see also* Local Rules, Appendix B at 3. According to the Laffey Matrix, Ms. Jeon's "34 years as a civil rights lawyer" would be reasonable to charge $914.00 per hour, yet Plaintiffs chose to submit her time at a rate of only $465.00, the top range of those listed in Appendix B. In contrast, Plaintiffs submitted Mr. Wolff's time, with his 19 years of practice, at a rate of $759.00 per hour.

Furthermore, even if this Court were to accept Washington D.C. rates, Plaintiff has not provided sufficient evidence that the rates sought are prevailing market rates in Washington D.C. The only evidence provided are self-serving affidavits from the attorneys' own firms—there is no indication in Mr. Freeman's affidavit that he practices in Washington, D.C. or is familiar with

market rates in Washington D.C. *See Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990) ("In addition to the attorney's own affidavits, the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award.") (citation and internal quotations omitted).

In *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 244 (4th Cir. 2009), the Court held that the plaintiff failed to establish the prevailing market rate where, as here, plaintiff asked for the *Laffey* rate, and filed billing records and an affidavit of her attorney. As the Court explained:

> *In addition to the attorney's own affidavits, the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award.* Although the determination of a market rate in the legal profession is inherently problematic, as wide variations in skill and reputation render the usual laws of supply and demand largely inapplicable, the Court has nonetheless emphasized that market rate should guide the fee inquiry. *Plyler,* 902 F.2d at 277 (emphasis added) (internal quotation marks and citations omitted). Thus, "[t]he market rate should be determined by evidence of what attorneys earn from paying clients for similar services in similar circumstances, which, of course, may include evidence of what the plaintiff's attorney actually charged his client.

*Depaoli v. Vacation Sales Assocs., L.L.C.,* 489 F.3d 615, 622 (4th Cir.2007) (internal quotation marks and citation omitted). *Robinson*, 560 F.3d at 244. The *Robinson* Court further stated that "examples of the type of specific evidence that we have held is sufficient to verify the prevailing market rates are affidavits of other local lawyers who are familiar both with the skills of the fee applicants and more generally with the type of work in the relevant community. In this case, 'beyond the affidavit of [Mr. Blankingship], [Robinson] offered no specific evidence that the hourly rates sought for h[er] attorneys coincided with the then prevailing market rates of attorneys in the Eastern District of Virginia of similar skill and for similar work, which our case law required h[er] to do.'" *Id*. at 245 (quoting *Grissom,* 549 F.3d at 323).

10

Plaintiff has not provided any evidence of prevailing market rates in Washington D.C., aside from affidavits from the attorneys' law firm which the *Robinson* Court held to be insufficient. Thus, the Court should dismiss the motion in its entirety. Alternatively, the Court should reduce the requested rates to the reasonable hourly rates that are within the applicable Guideline range.

### III. Additional reductions are warranted because staffing and time expenditures are unreasonable.

Plaintiff's counsel requests compensation for simultaneous billing by multiple attorneys for conference calls, travel time, and hearing attendance.

As Guideline 2(c) in Appendix B to the Local Rules states, "only one lawyer for each party shall be compensated for attending hearings." The billing statements in this case request nearly $25,000.00 in compensation for the time expended by three attorneys, for travel, attendance, and participation in their appellate argument, although only one actively participated on the record at the hearing. *See* Exhibit B, at 2-3; *see also* ECF No. 69-5, at 65-66; ECF No. 69-2, at 9-10.

Guideline 2(d) in Appendix B to the Local Rules provides, "generally, only one lawyer is to be compensated for client, third party, and intra-office conferences, although if only one lawyer is being compensated the time may be charged at the rate of the more senior lawyer." The statements in this case are rife with charges for conferences with both among and between ACLU lawyers and Crowell Moring lawyers, moot court preparations, and the like. *See, e.g., Trimper v. City of Norfolk*, 58 F.3d 68, 76-77 (4th Cir. 1995) ("Properly reducing allowable hours because of overstaffing of attorneys is not an abuse of discretion."). *See* Chart of Disputed Billing Entries, attached as Exhibit B (detailing instances, totaling over 103 hours or more than $54,000.00, in which multiple attorneys billed for the same activities.[5]) Guideline 2(d) aptly

---

[5] In identifying duplicate billing entries, Defendants have not objected to instances where two attorneys or staff, one from the ACLU and one from Crowell and Moring, each billed for related

11

reflects that principle, and this case presents no reason to deviate from it.

In another example of egregious and unnecessary billing, 16 months after filing their complaint, Plaintiffs billed 11 hours, totaling more than $5,000, to research and draft a memorandum on a legal doctrine not even asserted in the litigation. *See* Dkt. No. 69-5, p. 65 (detailing the research and drafting of a memo regarding *Monell* liability). Of course, an underlying dispute over a breach of contract has nothing at all to do with *Monell* liability. As a paying client would have good cause to object to such a ridiculous charge, it is unreasonable to ask Defendants to compensate Plaintiff for the same expense.

**IV. Plaintiffs did not prevail on all their claims, thus necessitating further reduction in fees.**

As noted above, Plaintiff Baltimore Brew was dismissed from the action without any judicial rulings in their favor. As such, Plaintiff Baltimore Brew is not a prevailing party, as they did not "obtain[] an enforceable judgment, consent decree, or settlement giving some of the legal relief sought." *S–1 and S–2 v. State Bd. of Ed. of N. C.*, 21 F.3d 49, 51 (4th Cir. 1994). Any request for fees on behalf of this Plaintiff may be dismissed out of hand.

Plaintiff Overbey is a prevailing party, but only marginally so. Plaintiffs sought four specific remedies: A declaration that the City's non-disparagement clause ("gag order") was illegal and unenforceable, a declaration that the "gag order" included an unenforceable liquidated damages provision, an injunction preventing the Defendants from future use of the "gag order", and an order that the City remit the remaining judgment plus interest to the Plaintiff.

Plaintiffs, through this litigation, only achieved one of the four requested remedies, and only in Ms. Overbey's favor. The Court entered a judgment in favor of Plaintiff Overbey for

---

simultaneous activities. The disputed hours listed in Exhibit B to Defendant's Opposition, include only examples where at least three persons billed for related activities on the same day.

$31,500 plus prejudgment interest. The two counts brought by Plaintiff Baltimore Brew were dismissed as moot. All counts brought against Defendant Baltimore City Police Department were dismissed. Since at least November 2017, the City voluntarily stopped using the non-disparagement clause at issue in Ms. Overbey's settlement. ECF No. 56, at 2; *see also* ECF 64, at 6. An Executive Order was issued by Baltimore City Mayor Bernard "Jack" Young, memorializing this decision, in September 2019. ECF No. 56-2. Finally, in December 2019, the Baltimore City Council enacted Bill 19-0409 which prohibited the use of similar provisions in future settlement agreements. *Id*.

Plaintiffs inflate their accomplishments, asserting they achieved "exceptional success in this case, warranting full reimbursement" of their attorneys' fees and expenses. ECF No. 69, at 2. However, most of the counts, including the requested declaratory and injunctive relief, were denied as moot due to the City's actions unrelated to this litigation.

While the "catalyst theory" has been rejected by some courts, the Fourth Circuit held that the fact that a lawsuit may operate as a catalyst to change a defendant's conduct is not sufficient to establish plaintiff as a prevailing party. *S–1 and S–2 v. State Bd. of Ed. of N. C.*, 21 F.3d 49, 51 (4th Cir. 1994). Further, Plaintiffs have not asserted any facts to support the idea that their lawsuit was the catalyst that initiated the City's Executive Order or statute. The Plaintiffs achieved only one success in this case – Overbey recovered the remaining amount of the settlement sum.

After determining that the hours expended and the attendant rates requested by a lawyer for a prevailing party are reasonable, a court is obliged to "subtract fees for hours spent on unsuccessful claims unrelated to the successful ones." *Grissom*, 549 F.3d at 321. *McAfee v. Boczar*, 738 F.3d 81, 91 (4th Cir. 2013), as amended (Jan. 23, 2014). The Fourth Circuit requires the district court, when determining a reasonable attorney's fee, give primary consideration to the

amount of relief awarded as compared to the amount sought. *Hetzel v. County of Prince William*, 89 F.3d 169, 173 (4th Cir. 1996). Plaintiff Overbey no doubt prevailed on at least one count, by obtaining a monetary judgment. However, the majority of Plaintiffs' counts were dismissed. *See* ECF 65. Therefore, the fees requested by Plaintiffs must be reduced in accordance with the level of success obtained through the Courts' orders.

V.     **Appellate fees are inappropriate**

Plaintiff seeks $209,118.50 in fees related to their appeal to the Fourth Circuit. ECF No. 69, at 24. However, absent an explicit statutory provision on point, an application for appeal-related attorneys' fees must first be made to the appellate court. *Flitton v. Primary Residential Mortg., Inc.*, 614 F.3d 1173, 1180 (10th Cir. 2010).

The Fourth Circuit has yet to rule on whether appeal-related attorneys' fees can be awarded by the trial court. Other U.S. Courts of Appeals are split on the issue of whether a petition under section 1988 for appellate attorney's fees may be brought in the Court of Appeals as an original matter. *Yaron v. Twp. of Northampton*, 963 F.2d 33, 36–37 (3d Cir. 1992). While some Courts of Appeals have held otherwise, *eg. Souza v. Southworth,* 564 F.2d 609, 613–14 (1st Cir.1977); *D.C. Metro. Police Dep't v. Stanley,* 951 A.2d 65, 67–68 (D.C.2008), others have held that a district court does not have the power to award fees for work performed in the Court of Appeals in the context of federal fee shifting statutes. *See Crumpacker v. State of Kansas,* 474 F.3d 747, 755–56 (10th Cir. 2007) (holding appeal-related fees must generally be awarded by the court of appeals); *Cummings v. Connell*, 180 L.R.R.M. (BNA) 2122 (9th Cir. 2006) (District court's fee award reversed because it improperly awarded fees for work on appeal when Plaintiffs failed to move for fees in court of appeals.).

As Plaintiff did not seek an award of fees and expenses from the Court of Appeals prior to filing the instant motion, this Court should not award attorneys' fees and expenses related to appellate work.

## VI. Additional factors weigh against Plaintiff's request.

The amount of an attorneys' fee award "is within the judicial discretion of the trial judge who has close and intimate knowledge of the efforts expended and the value of the services rendered." *Arnold v. Burger King Corp.*, 719 F.2d 63, 67 (4th Cir. 1983). Though Congress intended § 1988 fee awards to be "adequate to attract competent counsel," it also wanted to avoid "produc[ing] windfalls to attorneys." *City of Riverside v. Rivera*, 477 U.S. 561, 580 (1986). Once the lodestar amount is determined, "the district court is in a position to adjust the award upward or downward in light of the relevant considerations identified in *Johnson* and elsewhere." *Arnold*, 719 F.2d at 67. If a § 1983 plaintiff achieves only part of the success she sought, the lodestar amount may be excessive. *See Farrar v. Hobby*, 506 U.S. 103, 114 (1992). In determining a fee award, the *Johnson* factors are not exhaustive of the considerations to be reviewed by the Court. In the instant matter, this Court should also consider the disproportionality between judgment to Overbey and the requested fees, as well as the current financial situation of the City of Baltimore.

### A. The proportionality of the judgment amount justify a reduction of fees.

The Court has wide discretion to adjust a fee award to prevailing plaintiffs under special circumstances. *See Hensley,* 461 U.S. at 429 (citing Senate Report, at 4). Here, the wide disparity between the modest result achieved for Overbey and the extravagant award counsel expects represents such a special circumstance. Although Congress did not require that attorneys' fees under § 1988 be proportionate to the award secured, and mildly disproportionate fee awards may

be permissible,[6] the Fourth Circuit has reversed fee awards on proportionality grounds. In *McAfee v. Boczar*, 738 F.3d 81, 94 (4th Cir. 2013), as amended (Jan. 23, 2014), Plaintiff obtained a judgment of $2,943.60 and the trial court awarded more than $322,000 in attorneys' fees. *Id*. The Fourth Circuit vacated the attorneys' fee award and remanded for an award nearly 70% lower than that awarded by the trial court. *Id*. at 84.

In the instant case, Plaintiff Overbey received only $44,600.00 in damages,[7] and seeks $664,344.63 in attorneys' fees and expenses, nearly 15 times the amount recovered by Plaintiff. Adjustment is warranted to reduce the chasm between Plaintiff Overbey's limited recovery (and no real recovery for Baltimore Brew) and attorney compensation and avoid the "windfall" that courts have warned against.

### B. The financial position of Defendant is relevant.

Plaintiffs' request for fees can only be said to be punitive in nature, and totally disregards any consideration of the City's financial position. As the Fourth Circuit has explained, "in appropriate circumstances, the district court should give weight to the relative financial positions of the litigants." *Arnold*, 719 F.2d at 68. Indeed, "the dual interests of equity and deterrence can be advanced without giving overriding consideration to the punitive value of a fee award, particularly when the reduced award still represents a substantial burden on the [losing party] and the [prevailing party] is fully capable of absorbing a reasonable share of its legal fees without hardship." *Id.*

---

[6] *See City of Riverside v. Rivera*, 477 U.S. 561, 576 (1986) (affirming an attorney's fee award of roughly seven times the plaintiff's recovered damages).

[7] $44,600 is the total amount paid to Mrs. Overbey, in satisfaction of the Court entered judgment of "$31,500, plus prejudgment interest at the rate of 6% per annum dating from October 8, 2014." *See* ECF No. 65

Plaintiff would punish the City – not for any egregious conduct, but for having the temerity to defend an ultimately unsuccessful but wholly reasonable position – without regard to the impact of a punitive award of attorneys' fees. Plaintiffs' request for over half a million dollars of attorneys' fees is even more troublesome given the fact that the attorneys did not have any paying client against which to check the reasonableness of their fees or time expenditures. The City's precarious financial position is well-known. *See* https://www.wypr.org/post/declining-revenue-amid-pandemic-baltimore-city-faces-423-million-deficit (last accessed, November 30, 2020), (noting that the City currently faces as $42.3 million deficit); https://www.baltimoresun.com/politics/bs-md-pol-budget-deficit-coronavirus-20200401-4lusscuwynhwfdebaowdj7vrku-story.html (last accessed, November 30, 2020) (same). The need for the City to provide fundamental and urgently needed services to its residents has never been greater, and the available resources to support those efforts are waning. When held in equipoise, the City's financial position weighs heavily against granting Plaintiffs' request.

## **CONCLUSION**

For the reasons set forth above, Defendant Mayor and City Counsel of Baltimore respectfully requests this Court to deny Plaintiffs' Motion for Fees or, in the alternative, award a significantly reduced fee amount in accordance with the relevant facts of this action.

    Respectfully submitted,

    Dana P. Moore
    ACTING BALTIMORE CITY SOLICITOR

    _____/s/_____

    Justin Conroy (28480)
    Deputy Chief, Legal Affairs
    Kara K. Lynch (29351)
    Chief Solicitor
    James A. H. Corley (30016)

Assistant City Solicitor
Baltimore City Department of Law
Office of Legal Affairs
  City Hall, Room 101
100 N. Holliday Street
Baltimore, MD 21202
410-274-8614 (telephone)
410-396-2126 (facsimile)
jim.corley@baltimorepolice.org
*Attorneys for Mayor and City Counsel of Baltimore*