# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

ASHLEY AMARIS OVERBEY,

    and

BALTIMORE BREW

        Plaintiffs,

    v.

THE MAYOR AND CITY COUNCIL OF
BALTIMORE,

        Defendant.

No. 1:17-cv-1793
Judge Deborah K. Chasanow

## REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS

Deborah Jeon (No. 06905)
Nicholas Steiner (No. 19670)
ACLU of Maryland
3600 Clipper Mill Rd, Suite 350
Baltimore, MD 21211
Telephone: (410) 889-8555
Fax: (410) 366-7838
jeon@aclu-md.org
steiner@aclu-md.org

Daniel W. Wolff (No. 19940)
Nkechi Kanu
Tyler O'Connor
Brian C. Lewis
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
dwolff@crowell.com
nkanu@crowell.com
toconnor@crowell.com
blewis@crowell.com

*Attorneys for Plaintiffs Ashley Overbey and Baltimore Brew*

December 21, 2020

# TABLE OF CONTENTS

ARGUMENT ........................................................................................................2

I.   THE CITY WAS ON NOTICE OF PLAINTIFFS' INTENT TO
     RECOVER ATTORNEYS' FEES. ....................................................................2

II.  PLAINTIFFS' HOURLY RATES ARE REASONABLE AND
     JUSTIFIED BY THE UNIQUE CIRCUMSTANCES OF THIS
     CASE. ...........................................................................................................3

III. PLAINTIFFS EXERCISED BILLING JUDGMENT IN
     SUBMITTING THEIR PETITION FOR ATTORNEYS' FEES
     AND THEIR FEE REQUEST DOES NOT REFLECT
     UNREASONABLE STAFFING OR TIME EXPENDITURES. ......................7

IV.  PLAINTIFFS ARE PREVAILING PARTIES AND ARE
     THEREFORE ENTITLED TO ATTORNEYS' FEES. ..................................11

V.   PLAINTIFFS ARE ENTITLED TO FEES INCURRED ON
     APPEAL. .....................................................................................................14

VI.  THE CITY'S OTHER ARGUMENTS ALSO LACK MERIT. ......................15

VII. THE UPDATED TOTAL FEES AND COSTS IS $722,483.03. ....................17

CONCLUSION ................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*City of Riverside v. Rivera,*
477 U.S. 561 (1986) ........................................................................... 1, 16

*Copeland v. Marshall,*
641 F.2d 880 (D.C. Cir. 1980) .......................................................... 1, 17

*DL v. District of Columbia,* 924 F.3d 585 (D.C. Cir. 2019) ........................................... 5

*Everhart v. Bd. of Ed. Of Prince George's Cnty.,*
2016 WL 7131469 (D. Md. Dec. 5, 2016) ............................................. 15

*Fox v. Vice,*
563 U.S. 826 (2011) ................................................................................ 16

*Goldstein v. Moatz,*
445 F.3d 747 (4th Cir. 2006) ................................................................. 13

*Grissom v. The Mills Corp.,*
549 F.3d 313 (4th Cir. 2008) .................................................................... 5

*Hensley v. Eckerhart,*
461 U.S. 424 (1983) ................................................................................ 12

*Local 391, Intern. Broth. Of Teamsters, Chauffeurs, Warehousemen &*
*Helpers of Am. v. City of Rocky Mntn.,*
672 F.2d 376 (4th Cir. 1982) .................................................................... 2

*McManama v. Lukhard,*
616 F.2d 727 (4th Cir. 1980) ................................................................. 15

*Mercer v. Duke Univ.,*
401 F.3d 199 (4th Cir. 2005) ................................................................. 16

*Miller v. Davis,*
267 F. Supp. 3d 961 (E.D. Ky. 2017)........................................................ 4

*Price v. Berman's Automotive, Inc.,*
2016 WL 4805570 (D. Md. Sept. 13, 2016) ........................................... 13

*Reed v. District of Columbia,*
843 F.3d 517 (D.C. Cir. 2016) .................................................................. 5

*Robinson v. Equifax Info. Svcs., LLC,*
   560 F.3d 235 (4th Cir. 2009) ................................................................ 5

*Rum Creek Coal Sales, Inc. v. Caperton,*
   31 F.3d 169 (4th Cir. 1994) .................................................................. 4

*Siantou v. CVS Rx Servs. Inc.,*
   2020 WL 204957 (D. Md. Jan. 14, 2020) ........................................ 6, 7

*Stone v. Thompson,*
   164 F. Supp. 2d 639 (D. Md. 2001) ....................................................... 6

*Thompson v. U.S. Dep't of Housing and Urban Dev.,*
   2002 WL 31777631 (D. Md. Nov. 21, 2002) ......................................... 4

*Vaughns v. Bd. of Ed. of Prince George's Cnty.,*
   598 F. Supp. 1262 (D. Md. 1984) ......................................................... 12

*Young v. Sarles,*
   197 F. Supp. 3d 38 (D.D.C. 2016) ......................................................... 6

**Statutes**

42 U.S.C. § 1988 ..................................................................... 1, 15, 17

**Rules**

Local Rule 109(2)(a) .................................................................... 15

**Other Authorities**

Rachael L. Jones, Virginia Hamrick, *Reporting on NDAs and #metoo:*
   *How the Press May Obtain Standing to Challenge NDAs*, Comm.
   Law., Fall 2019 ..................................................................... 14

Senate Report, U.S. Code Cong. & Admin. News 1976 ............................ 15

Plaintiffs filed suit in June 2017 alleging that the City of Baltimore's (the "City") use of non-disparagement provisions to silence victims of police brutality was inconsistent with the First Amendment and to recover damages arising from the City's punishment of Ms. Overbey for publicly speaking about her treatment by the City's police department. After three and a half years and a trip to the United States Court of Appeals for the Fourth Circuit and back, Plaintiffs have prevailed in the entirety: the Fourth Circuit held that the City's non-disparagement provision is unenforceable; Ms. Overbey has recovered the money to which she was entitled, plus interest; and a blow was struck for transparency and freedom of speech in the City of Baltimore. Plaintiffs now seek recovery of attorneys' fees to which they are statutorily entitled under 42 U.S.C. § 1988.

The City opposes Plaintiffs' request in an acerbic opposition untethered from the facts of this case. The City accuses Plaintiffs' counsel – who have litigated this case *pro bono* for almost four years – of seeking a "windfall" and "run[ning] the meter." The accusations lack factual support and fail to acknowledge that it was the City's attempt to keep half of Ms. Overbey's settlement proceeds that necessitated this litigation in this first place. As courts have held repeatedly, "'[t]he government cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response.'" *City of Riverside v. Rivera*, 477 U.S. 561, 580 n.11 (1986), (quoting *Copeland v. Marshall*, 641 F.2d 880, 904 (D.C. Cir. 1980) (en banc)). Faced now with the consequences of its actions, the City protests that paying attorneys' fees is "punishment." The Court should reject these crocodile tears and

award attorneys' fees and costs to Plaintiffs, as the prevailing parties, in accordance with the fee shifting statute. This Reply addresses each of the City's arguments in the order in which they were raised.

## ARGUMENT

### I. THE CITY WAS ON NOTICE OF PLAINTIFFS' INTENT TO RECOVER ATTORNEYS' FEES.

The City's first objection — only half-hearted at that because surely the City knows it is frivolous — is that Plaintiffs failed to put the City on notice of their intent to seek attorneys' fees until Plaintiffs filed the present Motion. The City provides neither case law nor facts to support its argument. Nor could it. Not only are attorneys' fees in civil rights cases a creature of statute, but the City's prior Solicitor — a former Fourth Circuit judge himself — openly acknowledged at oral argument he presented to the Fourth Circuit that "[o]bviously there is a question of attorneys' fees hanging out there as there always is in Section 1983 actions." *See* ECF No. 55 at 4 fn. 6. Furthermore, Plaintiffs' Amended Complaint reserved the right to seek "such other and further relief as may be just and equitable in the circumstances,"[1] ECF No. 5, and Plaintiffs explicitly informed the Court long ago that "Plaintiffs will seek attorneys' fees at the conclusion of the case." *See* ECF No. 55 at 4. It is for that reason that Plaintiffs have regularly provided the City with updated billing records in

---

[1] *See Local 391, Intern. Broth. Of Teamsters, Chauffeurs, Warehousemen & Helpers of Am. v. City of Rocky Mount*, 672 F.2d 376, 381 (4th Cir. 1982) (affirming an award of attorneys' fees in a Section 1983 case where plaintiffs sought "such . . . relief as to the court may seem just and proper").

accordance with the *Rates and Guidelines for Determining Attorneys' Fees in Certain Cases.* D. Md. Local Rules, App. B at 122, https://www.mdd.uscourts.gov/local-rules (the "Guidelines").[2]

That Plaintiffs are seeking fees is not a surprise.

## II.   PLAINTIFFS' HOURLY RATES ARE REASONABLE AND JUSTIFIED BY THE UNIQUE CIRCUMSTANCES OF THIS CASE.

The City's argument that Crowell & Moring's requested rates are unreasonable is unsupported and plainly incorrect.[3] Whether by applying the Laffey matrix to calculate the rates of the Plaintiffs' Washington, D.C.- based attorneys, or using the *Johnson* factors to upwardly adjust local market rates for the extraordinary success of this litigation and the skill required to obtain it, this Court should allow recovery at the rates requested.

First, the City's primary argument against the hourly rates sought for the Crowell attorneys is that they are higher than the local guidelines. But as the City acknowledges, the Court's *Rates and Guidelines for Attorney's Fees in Certain Cases* are just that, *i.e.*, guidelines. They are in no way binding on the Court, nor are they current, instead reflecting rates that are several years old. Indeed, the footnote to the *Guidelines*' rate suggestions explains that "the factors established by case law obviously govern over them," and that "an increase in the cost of legal services" may

---

[2] Plaintiffs started providing such records immediately upon request of the City. As set forth in the Guidelines, "[o]pposing counsel may not seek a denial or reduction of fees from the court if he/she did not first request that such statements be provided." Guidelines at 123 n.*.

[3] The City concedes the appropriateness of the Baltimore-based ACLU's rates.

support an adjustment. Further, "there are attorneys for whom, and cases for which, the market rate differs from these guideline rates." *Guidelines*, D. Md. Local Rules App. B, at 125 n.\*, https://www.mdd.uscourts.gov/local-rules. Plaintiffs have demonstrated that this case supports an adjustment, based on both the case law and market rates. Mot. at 12-16; *see also Miller v. Davis*, 267 F. Supp. 3d 961, 996 (E.D. Ky. 2017) (finding out-of-town counsel's higher-than-market rates reasonable in high-profile First and Fourteenth Amendment litigation). The City offers no case law or other authority to the contrary.

Indeed, the City largely ignores the reasons why Plaintiffs seek rates applicable to Washington D.C., and the case law supporting the request. For example, Plaintiffs established the propriety of Plaintiffs' seeking assistance outside the Baltimore area (Mot. at 12-13; Jeon Decl.), which the City does not contest. *See Thompson v. U.S. Dep't of Housing and Urban Dev.*, 2002 WL 31777631, at \*12-13 (D. Md. Nov. 21, 2002) (awarding compensation based on the Laffey rates to a D.C. law firm where the ACLU similarly had difficulty retaining Baltimore-based counsel) (Report and Recommendation). The Fourth Circuit supports the recoverability of fees at rates from other jurisdictions where agreeing to the representation "could be a politically sensitive activity for a local [] firm," *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 179 (4th Cir. 1994), which was certainly the case here. And the accolades received subsequent to Plaintiffs' success in the litigation confirm that the case was indeed groundbreaking and required particular skill and independence from local political sensitivities. *See* "Trailblazers: Political Activism/1st Amendment

Rights," The Natl. L. J. 10 (2020) (recognizing Plaintiffs' counsel Daniel W. Wolff for his work in this litigation), https://images.law.com/media/nationallawjournal/supplements/NLJTB_Political_2020/mobile/index.html; Wolff Decl. ¶ 20.

Second, because the City does not contest that this litigation was complex— nor could it, given its prior representations, *see, e.g.*, Mot. at 10[4]—the Laffey Matrix "presumptively applies." *DL v. District of Columbia*, 924 F.3d 585, 593-94 (D.C. Cir. 2019) (quoting *Reed v. District of Columbia*, 843 F.3d 517, 522 (D.C. Cir. 2016), and rejecting use of matrix with lower rates not typical for "complex federal litigators in the District"). Plaintiffs' presentation of the Laffey Matrix rates, in addition to declarations from attorneys at the ACLU and Crowell & Moring (including a former D.C. Bar President), as well as from Baltimore civil rights practitioner Andrew F. Freeman, suffices to demonstrate the reasonableness of the requested rates. As explained by the case law the City itself relies upon, the Laffey Matrix *is* the evidence of prevailing market rates, *i.e.*, it "'pertains to hourly rates of litigation attorneys in Washington, D.C.'" *Robinson v. Equifax Info. Svcs., LLC*, 560 F.3d 235, 245 (4th Cir. 2009) (quoting *Grissom v. The Mills Corp.*, 549 F.3d 313, 323 (4th Cir. 2008)). To the extent the Court requires additional support, ample evidence abounds from other

---

[4] The City has repeatedly acknowledged both the novelty and gravity of Plaintiffs' success, and has at various times described Plaintiffs as having established "an astonishing rule of constitutional law," City Opposition to Motion for Summary Judgment, ECF No. 62, at 2 (Jan. 1, 2020), and described Ms. Overbey's "victory in this lawsuit is in the nature of a virtual lightning strike" that "no reasonable person ever expected . . . would bear fruit." *Id.* at 4.

cases which this Court can use to compare the current rates claimed. *See Young v. Sarles*, 197 F. Supp. 3d 38, 46 (D.D.C. 2016) (recounting evidence presented documenting "prevailing market rates for comparable legal services in the Washington, D.C. area"); Ex. A, Declaration of Dr. Michael Kavanaugh (providing support for development of Laffey Matrix), submitted as ECF No. 33-1 in *Young v. Sarles*); Ex. B, NLJ Law Firm Billing Survey (2012 rates), submitted as ECF No. 33-6 in *Young v. Sarles*); Ex. C, Major, Lindsey & Africa Partner Compensation Survey at PDF p.9 (reflecting average 2014 D.C. rate), submitted as ECF No. 33-10 in *Young v. Sarles*)).[5] Besides referencing the *Guidelines*, which do not control here, the City has not provided any evidence to rebut the reasonableness of Plaintiffs' claimed rates. Requiring Plaintiffs here to reinvent the wheel and expend *additional* resources to marshal similar evidence is thus particularly unnecessary.

Third, even if the Court finds that the Laffey Matrix does not presumptively apply, there is ample reason to award Laffey Matrix rates based on application of the *Johnson* factors, as explained in Plaintiffs' opening brief. Mot. at 10-11; *see also Siantou v. CVS Rx Servs. Inc.*, 2020 WL 204957, at *5-6 (D. Md. Jan. 14, 2020); *Stone v. Thompson*, 164 F. Supp. 2d 639, 639-40 (D. Md. 2001) (finding application Maryland guidelines would "result in unwarranted unfairness" for "extraordinarily well-qualified," "long-term partner in a Washington law firm" requesting Laffey Matrix rates, and awarding fees at a rate higher than guidelines). This Court's ruling

---

[5] Notably, these documents reflect rates that are at least five years old, demonstrating the reasonableness of the current rates requested.

in *Siantou* is instructive in this regard. There, this Court found the Laffey Matrix rates not *presumptively* applicable, but reasonable nonetheless based on the arguments presented regarding the attorney's "noteworthy credentials and significant experience in the Washington D.C. area" in the applicable field. *Siantou*, 2020 WL 204957 at *6. In the alternative, the Court determined that the same rate requested would be appropriate as an upward adjustment from the Guidelines by applying the *Johnson* factors including the skill required, the experience of the attorney, the labor and time required, and the results obtained. *Id.* at *6-7. Similarly here, application of the *Johnson* factors demonstrates Plaintiffs' request as entirely reasonable and consistent with the type of litigation undertaken, the skill required, the need to seek counsel outside the local market, and the significant result obtained. The City attempts to deflect this Court's attention from the importance of the case, but the precedent obtained is no small matter, and extends beyond the instant case. Ultimately, the City has not provided any principled reason to depart from the requested rates.

### III. PLAINTIFFS EXERCISED BILLING JUDGMENT IN SUBMITTING THEIR PETITION FOR ATTORNEYS' FEES AND THEIR FEE REQUEST DOES NOT REFLECT UNREASONABLE STAFFING OR TIME EXPENDITURES.

The City's argument that Plaintiffs' staffing and time expenditures were unreasonable is also specious. Plaintiffs staffed this *pro bono* matter just as it would a matter for a paying client. Wolff Decl. ¶ 19. Counsel nonetheless exercised billing judgment in submitting this fee petition by writing off approximately 506 hours it spent vindicating Plaintiffs' claims, including all of the time spent by three Crowell

& Moring partners who advised on the case at various points in time, three Crowell & Moring associates who contributed work product and legal research but were not part of the core team, ACLU attorney David Rocah and law clerk Abby Nyantaki, and numerous Crowell & Moring support staff whose contributions are often overlooked but play an essential role in any litigation. Plaintiffs also unilaterally imposed an across-the-board 10% reduction on the fees sought by Crowell & Moring in this case – a further reduction of almost $60,000 – "to ensure against duplication or overlap of efforts among counsel." Plaintiffs' Mot. at 18.

Notwithstanding Plaintiffs' voluntary reductions, the City now identifies an additional 103 hours which it deems unreasonable: (i) 45.45 hours spent by three attorneys – one from Crowell & Moring and two from the ACLU – preparing for, attending, and participating in the appellate arguments at the United States Court of Appeals for the Fourth Circuit; (ii) 57.65 hours in which more than two of Plaintiffs' counsel participated in the same phone call or meeting; and (iii) research into *Monell* liability.

The Court should reject these requests for a further write-down both because Plaintiffs have already provided a 10% reduction to address any concerns about possible duplicative efforts between Crowell & Moring and the ACLU and because the City has failed to identify any unreasonable time entries.

The City first argues that Plaintiffs erred in billing 45.45 hours on January 29 and 30, 2019, for three attorneys to attend, prepare for, and participate in oral arguments at the Court of Appeals because Guideline 2(c) states that "only one lawyer

for each party shall be compensated for attending hearings." The same document clarifies, however, that departure from the Guideline may be appropriate in numerous circumstances, including if more than one attorney for the opposing party attended a hearing, and that there is no guideline as to how many lawyers may be compensated for attending trial.

Several of these exceptions are relevant here. First, the City does not contest the participation of at least one Crowell & Moring attorney and one ACLU attorney at any hearing or meeting or on any call. *See* City Oppo. at 11 n.5. The City's only objection for time spent preparing for and attending oral argument, then, is for the 10.2 hours billed by Mr. Nick Steiner of the ACLU. But the City itself sent multiple additional attorneys to Richmond to attend oral argument, and for good reason: the importance of oral argument at the Fourth Circuit, as with a trial, necessitates the presence of junior attorneys to assist both with preparations and to provide arguing counsel with case and record citations where helpful and appropriate to assist arguing counsel with the presentation of argument and in responding to the Court's questions. The Court should not require Plaintiffs to write off Mr. Steiner's time.

The City also requests the Court reduce Plaintiffs' fee recovery by 57.65 hours on the theory that under the Guidelines "generally, only one lawyer is to be compensated for client, third party, and intra-office conferences". City Oppo. at 12. The Guidelines go on to state, however, that "[c]ompensation may be paid for the attendance of more than one lawyer where justified for specific purposes such as periodic conferences of defined duration held for the purpose of work organization,

strategy, and delegation of tasks in cases where such conferences are reasonably necessary for the proper management of the litigation." *See* Guidelines Rule 2(d). The conference calls identified by the City as having too many attendees occurred on April 18, 2016; December 12, 2016; February 3, 2017; and May 26, 2017; each was a periodic call – occurring every few months for the purpose of discussing "case strategy"; "status"; and "next steps" – of the sort necessary for any team to properly manage litigation. They thus fall clearly within the types of calls for which compensation for more than one lawyer may be paid.[6]

Next, the City contests Mr. Steiner's participation on calls with *amici* and opposing counsel on January 12, 2018; February 2, 2018; and April 6, 2018. Mr. Steiner's total time billed for those three days was 1.5 hours. While Mr. Steiner was an essential part of the team and necessary in formulating Plaintiffs' amicus strategy, in the interest of narrowing the issues in dispute Plaintiffs will not contest a reduction in fees by 1.5 hours.

Lastly, the City objects to Plaintiffs' counsel billing a total of 19.55 hours for multiple attendees at its October 25, 2018 moot court. The moot court preparation for the Fourth Circuit argument does not fall within the scope of the Guidelines, which generally advises that only one lawyer should be permitted to recover for more mundane occurrences, such as "client, third-party, and intra-office conferences." Even if the Court were to consider the moot court as constituting nothing more than an

---

[6] The periodic nature of the calls and their short duration (none of which appears to have lasted much longer than one hour) also reflect a team that was conscious of spending time efficiently.

"intra-office conference," the Guidelines are only advisory, and the gravity and necessity of preparing for oral argument – especially in a case carrying as much historic and legal significance as this one – warrant a departure from the Guidelines in these circumstances.[7]

Finally, the City objects to Plaintiffs' recovery for researching *Monell* liability, which it claims "was a legal doctrine not even asserted in this litigation." City Oppo. at 12. In fact, however, *Monell* liability was raised as an argument in the Baltimore Police Department's Reply in Support of a Motion to Dismiss, *see* ECF No. 22 at 2.

## IV. PLAINTIFFS ARE PREVAILING PARTIES AND ARE THEREFORE ENTITLED TO ATTORNEYS' FEES.

The City next insists that the Court reduce Plaintiffs' fee award because Plaintiffs were only "marginally" prevailing parties. With respect, Plaintiffs suggest that the City may want to re-read (i) the Fourth Circuit's opinion holding the non-disparagement provision to be unenforceable and finding that the Baltimore Brew had standing; (ii) the Fourth Circuit's denial of the City's request for rehearing; and (iii) this Court's decision and order granting Ms. Overbey summary judgment and awarding her damages. Plaintiffs prevailed *in toto*.

The City's argument as to Ms. Overbey is that she did not prevail on *all* of her claims, and therefore is entitled to something less than prevailing party status. Courts have routinely rejected this argument. As the Supreme Court explained in

---

[7] The City also objects too many attorneys billed for time on June 29, 2017. Plaintiff disagrees, as it appears the three time entries in question pertain to similar, but distinct, activities.

*Hensley v. Eckerhart,* 461 U.S. 424, 435 (1983), "[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. . . . [T]he fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." As it further explained, "[l]]itigants of good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters." *Id.*

Because the result is what matters, the City's argument rings hollow: Ms. Overbey's success on her First Amendment claim and attendant damages, for the total amount she sought from the City, entitle her to a full fee recovery. *See also Vaughns v. Bd. of Ed. of Prince George's Cnty.*, 598 F. Supp. 1262, 1271 (D. Md. 1984) ("No reduction in fee is appropriate where the issue was all part and parcel of one matter." (internal quotation marks omitted)). Moreover, there is no need to "subtract fees for hours spent on unsuccessful claims unrelated to the successful ones" as Ms. Overbey's claims were all argued based on a common nucleus of facts and the work on one claim is not segregable from the work as a whole. *See Hensley,* 461 U.S. at 435 (explain that multiple "claims for relief will involve a common core of facts or will be based on related legal theories" and that "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis").

The City also argues that Plaintiffs' are not entitled to recover fees related to work for the Baltimore Brew. In so doing, the City ignores the interrelated nature of

the Baltimore Brew and Ms. Overbey's claims. As set forth above, Courts routinely award attorneys' fees where successful and unsuccessful claims share a common nucleus of fact. *See Hensley*, 461 U.S. at 435. Like Ms. Overbey's successful claim, the Baltimore Brew's claim arose under the First Amendment and out of the City's use of the same non-disparagement provisions challenged by Ms. Overbey. It is therefore not only impracticable, but unnecessary under *Henley*, to back out attorney hours spent on the Baltimore Brew's claims. *See id.*

Furthermore, although the catalyst theory is generally disfavored as a basis on which to find a party prevailed, the Fourth Circuit has left open the possibility that attorneys' fees are permissible where the defendant takes action, known as "tactical mooting," to moot the Plaintiff's claim as it is poised to prevail so as to avoid liability for attorneys' fees. *See Goldstein v. Moatz*, 445 F.3d 747, 752 (4th Cir. 2006) (declining to decide whether a party is entitled to recover attorneys' fees when a party tactically moots its claim).

In this instance, the City's payment of attorneys' fees arising from litigation of the Baltimore Brew's claims are also justified because the Baltimore Brew obtained from the City everything it sought through litigation. The Baltimore Brew filed suit alleging, like Ms. Overbey, that the non-disparagement provisions in the City's settlement agreements with victims of police brutality violated the First Amendment. The district court dismissed the Baltimore Brew's claim for lack of standing, but the Fourth Circuit reversed, recognizing in a significant holding in its own right the standing of news media to challenge government efforts to impede the dissemination

of newsworthy information through the use of non-disparagement agreements. *See* Rachael L. Jones, Virginia Hamrick, *Reporting on NDAs and #metoo: How the Press May Obtain Standing to Challenge NDAs*, Comm. Law., Fall 2019 at 7, 9. Given that the Fourth Circuit simultaneously held the non-disparagement provision in Ms. Overbey's contract to be unenforceable, it was a significant likelihood – indeed, all but assured – that the Baltimore Brew would prevail on the merits on remand. Recognizing this likelihood, the City passed legislation finally outlawing the use of non-disparagement provisions in settlement agreements with victims of police brutality, thereby mooting the Baltimore Brew's claim for relief and seeking to avoid the attorneys' fees that would arise from years of litigation at both the trial and appellate level.

The Court should apply the tactical mootness doctrine and award the Baltimore Brew attorneys' fees arising from its success in this case. The Baltimore Brew secured a significant decision affirming the right of media access to newsworthy information free of unreasonable governmental restraints, and its efforts resulted in a significant change to City policy. The fact that the Baltimore Brew's claims were so closely intertwined with those of Ms. Overbey and based on a common nucleus of fact only provides a further basis for awarding the Baltimore Brew's fees.

## V.    PLAINTIFFS ARE ENTITLED TO FEES INCURRED ON APPEAL.

The City's argument that Plaintiffs are not entitled to recover fees incurred on appeal without having first made a fee request to the court of appeals is wrong. Trial courts in this circuit routinely award attorneys' fees for work performed on appeal.

*See McManama v. Lukhard*, 616 F.2d 727, 730 (4th Cir. 1980) (per curiam) (remanding to the district court "for assessment of additional attorneys' fees ... to compensate the plaintiffs for the expense of their successful defense of [defendant's] appeal"); *Everhart v. Bd. of Ed. Of Prince George's Cnty.,* 2016 WL 7131469, at *4 (D. Md. Dec. 5, 2016) (awarding "attorney's fees and costs for all work performed related to the Fourth Circuit appeal"). And while the Fourth Circuit rules provide no vehicle for fee applications, the due date for fee applications in this Court are judged from the return of the appellate mandate, further confirming that this Court can award attorneys' fees incurred on appeal. *See* Local Rule 109(2)(a).[8]

## VI.     THE CITY'S OTHER ARGUMENTS ALSO LACK MERIT.

The City makes two further arguments that should be quickly discarded. First, it argues that Plaintiffs' fee request is disproportionate to Ms. Overbey's damages award and should therefore be reduced. The City's position rest on the thinnest of reeds and is inconsistent with the Supreme Court's interpretation of Section 1988.

This is not like an award of punitive damages, where the principle of proportionality comes into play. Rather, the purpose of Section 1988 is to compensate plaintiffs who remedy civil rights violations and, in so doing, "serve as a 'private attorney general,' vindicating a policy that Congress considered of the highest priority." *Fox v. Vice*, 563 U.S. 826, 833 (2011). In recognition of the fact that Section

---

[8] The City cites no legal support from this Circuit for its suggestion that Plaintiffs must bifurcate their fee petition and submit one to this Court and a second to the court of appeals. Deciding fee petitions is the job of this Court in the first instance, not the court of appeals.

1983 lawsuits often serve the public interest collective rights, Congress intended and the Supreme Court has held that "the amount of fees awarded under [§ 1988] be governed by the same standards which prevail in other types of equally complex Federal litigation . . . and *not be reduced because the rights involved may be nonpecuniary in nature.*" *City of Riverside v. Rivera*, 477 U.S. 561, 575–76 (1986) (quoting Senate Report, at 6, U.S. Code Cong. & Admin. News 1976, p. 5913) (emphasis added). In fact, courts routinely award substantial attorneys' fees to litigants who obtain only *nominal* damages but vindicate important civil rights, *see Mercer v. Duke Univ.,* 401 F.3d 199, 204 (4th Cir. 2005). And while courts may consider the extent of Plaintiffs' victory in deciding the quantum of fees to be awarded, the court does so by comparing the amount of damages sought to the amount of damages ultimately awarded. *Id.*

Plaintiffs achieved a significant First Amendment victory which protects the rights of victims of police brutality in the City of Baltimore (and elsewhere as a matter of precedent) *and* obtained the full damages amount sought in the Amended Complaint. Under the circumstance, there is no justification for reducing Plaintiffs' fee award to satisfy the City's misbegotten notion of proportionality.[9]

Second, the City argues that the Court should "give weight to the relative financial positions of the litigants." City Oppo. at 16. The City's argument is

---

[9] In the only case cited by the City for the proposition that the Court can reduce an attorneys' fee award to achieve greater proportionality, the Court reduced attorneys' fees from almost 110 times the damages awarded to 34 times that amount. *See* City Oppo. at 16. To the extent proportionality factors at all, Plaintiffs' fee petition seeks a far smaller multiplier than that upheld in the case cited by the City.

unsupported. At the time of filing this lawsuit, Ms. Overbey was a single mother who at times had been unable to afford rent (Amended Compl. ¶ 19), while the Baltimore Brew is a small online journal featuring independent reporting about the City of Baltimore. Unlike the City of Baltimore, neither Ms. Overbey nor the Baltimore Brew have multi-billion-dollar budgets. *See Copeland v. Marshall,* 641 F.2d 880, 896 (D.C. Cir. 1980) ("The government has a deep pocket . . . we think . . . that fees should be neither lower, nor *calculated* differently, when the losing defendant is the government."). And while the City pleads poverty, it is notable that it was the City of Baltimore that necessitated this litigation by refusing to pay $31,500 to then-impoverished Ms. Overbey while contending that Plaintiffs' position "infantilized less wealthy litigants" like Ms. Overbey by not holding them to their contractual commitments. *See Overbey v. City of Baltimore,* No. 17-2444, ECF No. 79, at 1 (July 23, 2019). The City pursued this litigation knowing it might lose, in which event Section 1988 authorizes an award of attorneys' fees. The City might prefer that Plaintiffs or Plaintiffs' counsel bear those costs, but the Court should not now infantilize the City by refusing to hold it responsible for fees as federal law allows.

## VII.   THE UPDATED TOTAL FEES AND COSTS IS $722,483.03.

Plaintiffs' Motion included a request to recover the ACLU's time spent through October 17, 2020 and Crowell & Moring's time spent through October 30, 2020, preparing the fee recovery motion and associated costs. Plaintiffs have since incurred additional fees of $67,241.50 in connection with preparing Plaintiffs' initial request request and responding to the City's Opposition, of which Plaintiffs now seek to

recover $58,138.00. *See* Ex. 1 to Supplemental Declaration of Deborah Jeon; Ex. 1 to Supplemental Declaration of Daniel Wolff. Plaintiffs have exercised billing judgment to arrive at that amount, for instance, by writing-off billing entries by Crowell & Moring's paralegals, not seeking additional costs, and applying the same 10% across-the-board reduction to the fees charged by Crowell & Moring as Plaintiffs applied to their initial fee request. Adding $58,138.00 to the amount requested in Plaintiffs' fee petition brings the total of fees and costs requested herein to $722,483.03.

## CONCLUSION

For all the foregoing reasons, Plaintiffs ask this Court reject the City's proposal to further reduce Plaintiff's attorneys' fees and costs. Plaintiffs' counsel seek compensation only for work reasonably necessary to the successful pursuit of the excellent results achieved in this case. Therefore, Plaintiffs should be granted the full compensation requested in its Motion for Attorneys' Fees and Costs plus the supplemental amount requested herein for work performed since October 17, 2020 (for the ACLU) and October 30, 2020 (for Crowell & Moring), less the 1.5 hours spent by Mr. Steiner organizing Plaintiffs' *amicus* strategy.

Respectfully submitted,

_/s/  Daniel W. Wolff_

Deborah Jeon (No. 06905)
Nicholas Steiner (No. 19670)
ACLU of Maryland
3600 Clipper Mill Rd, Suite 350
Baltimore, MD 21211
Telephone: (410) 889-8555
Fax: (410) 366-7838
jeon@aclu-md.org
steiner@aclu-md.org

Daniel W. Wolff (No. 19940)
Nkechi Kanu
Tyler O'Connor
Brian C. Lewis
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
dwolff@crowell.com
nkanu@crowell.com
toconnor@crowell.com
blewis@crowell.com

*Attorneys for Plaintiffs Ashley Overbey and Baltimore Brew*

December 21, 2020

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing Reply in Support

of Motion for Attorneys' Fees and has been served via the CM/ECF electronic filing

system on this 21st day of December, 2020, upon all parties of record:

> */s/ Daniel W. Wolff*
> Daniel W. Wolff (Attorney of Record)
> dwolff@crowell.com
> CROWELL & MORING LLP
> 1001 Pennsylvania Avenue, N.W.
> Washington, D.C. 20004
> Telephone: (202) 624-2500
> Facsimile: (202) 628-5116