IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| ASHLEY AMARIS OVERBEY, et al. | : | |
| | : | |
| v. | : | Civil Action No. DKC 17-1793 |
| | : | |
| THE MAYOR AND CITY COUNCIL OF BALTIMORE, et al. | : | |

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this First Amendment case is a motion for attorneys' fees filed by Plaintiffs, Ashley Amaris Overbey ("Ms. Overbey") and the Baltimore Brew ("the Brew") (collectively "Plaintiffs"). (ECF No. 67). The court now rules, no hearing deemed necessary. Local Rule 105.6. For the following reasons, the Plaintiffs' motion for attorneys' fees will be granted in part and denied in part.

**I.  Background**

This case's lengthy history arises out of a dispute over the "non-disparagement" clause contained in a settlement agreement between Ms. Overbey and the Mayor and City Counsel of Baltimore (the "City"). In August 2014, Ms. Overbey entered into a settlement agreement with the City to resolve various allegations of police misconduct following an encounter with the Baltimore City Police Department ("BPD"). (ECF Nos. 11-2 & 11-3). Pursuant to the settlement agreement, the City agreed to pay Ms. Overbey

$63,000 to resolve her claims.  The settlement agreement also included a non-disparagement clause which prohibited Ms. Overbey from publicly discussing either the underlying allegations or the settlement process.  Under the agreement, a violation of the non-disparagement clause rendered Ms. Overbey liable for damages equal to half of the settlement amount.  (ECF No. 11-4, at 5).  On October 8, 2014, Ms. Overbey received a letter from the City accusing her of violating the settlement agreement by discussing her case on the Baltimore Sun's website.  The letter contained a check payable for $31,500 and indicated that Ms. Overbey would not receive the full $63,000 settlement amount due to her comments concerning the case.

The Brew is a local newspaper that reports on lawsuits and settlement of police brutality cases involving the City.  Reporters from the Brew contacted the City in an attempt to learn about Ms. Overbey's settlement agreement but were informed that all police settlements entered into by the City prohibited the plaintiff from discussing any aspect of the case on pain of the City "clawing back" a portion of the settlement.  Further, the City prohibited its police officers, and even its public relations office, from discussing settlements, effectively leaving the Brew without any feasible way for reporting on these cases.

During the summer of 2015, Ms. Overbey and the Brew both independently contacted the Maryland American Civil Liberties

Union ("ACLU") to discuss bringing a legal challenge against the City for its use of the non-disparagement clause. (ECF No. 69, at 7). Given the complex nature of the case, the ACLU sought to engage a private law firm to assist in the litigation. Cognizant of the fact that local firms might have conflicts and be less willing to bring suit against the City, the ACLU opened its search to firms in both the Maryland and Washington, D.C. markets. After several months, no Maryland firm volunteered to take on the case. In the winter of 2016, the ACLU hired the Washington, D.C. office of Crowell & Moring, LLP to serve as co-counsel on a *pro bono* fee arrangement. (ECF No. 69-1, at 7).

On June 30, 2017, Plaintiffs, represented by the ACLU and Crowell & Moring, filed a five-count complaint against the City and the BPD in this court. (ECF No. 5). Ms. Overbey alleged that: (1) the City deprived her of her First Amendment right to free speech; (2) the settlement agreement violated the public policy of the state of Maryland; (3) unlawful liquidation of damages; and (4) breach of contract. The Brew alleged that the restrictive terms of the settlement agreement violated its right to report fully on facts of public concern as guaranteed by the First Amendment and Maryland public policy. Plaintiffs sought monetary damages, declaratory relief, and injunctive relief. The BPD moved to dismiss all claims against it, (ECF No. 10), and the City also moved to dismiss, or alternatively, for summary judgment. (ECF

No. 11).  Judge Marvin J. Garbis, to whom this case was assigned at the time, dismissed all claims against the BPD and granted summary judgment in favor of the City on all counts, finding that Ms. Overbey had voluntarily waived her First Amendment rights by entering into the settlement agreement and that the Brew lacked standing to sue. *Overbey v. Mayor & City Council of Baltimore*, No. CV MJG-17-1793, 2017 WL 5885657, at *1 (D.Md. Nov. 29, 2017), rev'd and remanded sub nom. *Overbey v. Mayor of Baltimore*, 930 F.3d 215 (4th Cir. 2019).  Plaintiffs appealed the judgment to the United States Court of Appeals for the Fourth Circuit.  (ECF No. 34).

On July 11, 2019, the Fourth Circuit reversed the judgment and remanded the case finding that the non-disparagement clause in the settlement agreement "amounts to a waiver of [Ms. Overbey's] First Amendment rights and that strong public interests rooted in the First Amendment make it unenforceable and void." *Overbey v. Mayor of Baltimore*, 930 F.3d 215, 222 (4th Cir. 2019).  Further, the Fourth Circuit held that the Brew had standing to bring suit. (*Id*. at 228-29) ("[T]he Brew has sufficiently alleged that the [c]ity's pervasive use of non-disparagement clauses in settlement agreements with police brutality claimants has interfered with its right to receive newsworthy information from willing speakers."). Although Plaintiffs' notice of appeal also included the dismissal of the claims against the BPD, they did not press that appeal, and

4

the Fourth Circuit did not review the dismissal.   Accordingly, those claims remained dismissed upon remand.

By November 2017, the City had changed the standard language in proposed settlement agreements and ceased using the non-disparagement clause.  (ECF No. 56, at 2).  In September 2019, the Baltimore City Mayor issued an executive order confirming that the City had ceased use of the non-disparagement clause used in Ms. Overbey's settlement.  (ECF No. 56-2).  In December 2019, the Baltimore City Council enacted Bill 19-0409 prohibiting the use of similar provisions in future settlement agreements entered into by the City.

On remand, the case was reassigned to this member of the bench, and, after the filing of a summary judgment motion by Ms. Overbey, an opposition by the City, and a reply, the court entered judgment in favor of Ms. Overbey in the amount of $31,500 plus prejudgment interest at the rate of %6 per annum dating from October 8, 2014.  Because the City had voluntarily ceased used of the contested non-disparagement clause prior to the circuit court's decision and because the Brew sought declaratory and injunctive relief only, the court dismissed all claims brought by the Brew as moot.  *Overbey v. Mayor & City Council of Baltimore*, No. 17-CV-1793-DKC, 2020 WL 5628987 (D.Md. Sept. 21, 2020).

On October 5, 2020, Plaintiffs filed the currently pending motion for award of attorneys' fees pursuant to 42 U.S.C. § 1988

and Local Rule 109.2. (ECF No. 67). The City responded on December 7, 2020, (ECF No. 72), and Plaintiffs replied on December 21, 2020. (ECF No. 73). Plaintiffs seek attorneys' fees and costs in the total amount of $722,483.03.

## II.  Standard of Review

In 1976, Congress passed the Civil Rights Attorney's Fees Awards Act, 42 U.S.C. § 1988, which provides that a court, within its discretion, may award reasonable attorneys' fees to a prevailing party in any action enforcing 42 U.S.C. § 1983. "The purpose of [Section] 1988 is to ensure effective access to the judicial process" for persons with civil rights grievances. *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (quotation marks and citation omitted).

In resolving a motion for attorneys' fees, "[t]he first determination to be made by the district court is whether the plaintiff is a prevailing party. The second determination is whether an award of attorney's fees should be granted to the prevailing party and what amount would be reasonable under the specific circumstances of the case." *Feldman v. Pro Football, Inc.*, 806 F.Supp.2d 845, 847 (D.Md. 2011).

"The proper calculation of an attorney's fee award involves a three-step process. First, the court must 'determine the lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate.'" *McAfee v. Boczar*, 738 F.3d

81, 88 (4th Cir. 2013) (quoting *Robinson v. Equifax Info. Servs.*,
LLC, 560 F.3d 235, 243 (4th Cir. 2009)).   In assessing
reasonableness, the United States Court of Appeals for the Fourth
Circuit has instructed district courts to consider what are known
as the *Johnson* factors, which are: (1) the time and labor expended;
(2) the novelty and difficulty of the questions raised; (3) the
skill required to properly perform the legal services rendered;
(4) the attorney's opportunity costs in pressing the instant
litigation; (5) the customary fee for like work; (6) the attorney's
expectations at the outset of the litigation; (7) the time
limitations imposed by the client or circumstances; (8) the amount
in controversy and the results obtained; (9) the experience,
reputation and ability of the attorney; (10) the undesirability of
the case within the legal community in which the suit arose; (11)
the nature and length of the professional relationship between
attorney and client; and (12) attorneys' fees awards in similar
cases.  *Id*. at 88 n.5 (citing *Barber v. Kimbrell's Inc*., 577 F.2d
216, 226 n.28 (4th Cir. 1978)).  "Next, the court must 'subtract
fees for hours spent on unsuccessful claims unrelated to successful
ones.'  Finally, the court should award 'some percentage of the
remaining amount, depending on the degree of success enjoyed by
the plaintiff.'"  *Id*. (quoting *Robinson*, 560 F.3d at 244).  The
Fourth Circuit has noted that a district court's determination of
attorneys' fees should stand unless the district court abused its

discretion by reaching a decision that is "clearly wrong" or committing an "error of law." *Id.* at 88 (*quoting Brodziak v. Runyon*, 145 F.3d 194, 196 (4th Cir. 1998)).

## III. Analysis

Plaintiffs assert that they were prevailing parties in an action involving 42 U.S.C. § 1983 and accordingly, are entitled to reasonable attorneys' fees and costs.  Plaintiffs, collectively, seek to recover $722,483.03 in fees and costs.  The City acknowledges that Ms. Overbey is a prevailing party, (*see* ECF No. 72, at 12), but argues that the Brew is not a prevailing party and as such, is not entitled to recover any fees.

### A.   The Brew is not entitled to Attorneys' Fees or Costs

The Brew alleged two counts against the City: a deprivation of its First Amendment rights (Count II), and a violation of the public policy of the state of Maryland (Count III).  Both counts were initially dismissed by the district court on the ground that the Brew lacked standing to sue.  The only claim of the Brew's that the Fourth Circuit allowed to proceed was its First Amendment challenge.  This claim, however, was ultimately dismissed again on remand on the ground that the Brew's First Amendment claim was moot because it sought only declaratory and injunctive relief which the court could not provide because the City had voluntarily stopped using the non-disparagement clause prior to the circuit

court decision and had enacted a bill prohibiting the use of similar provisions in future settlement agreements. (ECF No. 64).

The City correctly argues that because the "Brew was dismissed from the action without any judicial rulings in their favor . . . [it] is not a prevailing party" and "[a]ny request for fees on behalf of this Plaintiff must be dismissed out of hand." (ECF No. 72, at 12) (citing *S-1 and S-2 v. Bd. of Ed. of N.C.*, 21 F.3d 49, 51 (4th Cir. 1994)). Plaintiffs contend that the Fourth Circuit left open the possibility that attorneys' fees may be awarded in instances of "tactical mooting" where a defendant voluntarily acts in a way that moots the plaintiff's claim in order to avoid liability for attorneys' fees.

The Fourth Circuit's recent opinion in *Reyazuddin v. Montgomery Cty., Maryland*, 988 F.3d 794 (4th Cir. 2021), is instructive. There, a blind plaintiff brought suit against her employer alleging it refused to accommodate her disability and seeking damages and injunctive relief in the form of a department transfer. After jury verdict finding that plaintiff's employer violated the Rehabilitation Act, the court awarded $0 in compensatory damages and denied her request for injunctive relief because after trial her employer had voluntarily transferred her to her desired department. Ms. Reyazuddin then filed a motion for attorneys' fees as a prevailing party under § 1988 which the district court denied. Ms. Reyazuddin appealed. In its analysis,

the circuit court compared four cases that each contemplated whether a party who has not obtained a typical monetary judgment, may be considered a prevailing party for purposes of obtaining attorneys' fees under § 1988.

> In *Farrar*, the Supreme Court considered "whether a civil rights plaintiff who receives a nominal damages award is a 'prevailing party' eligible to receive attorney's fees" and answered in the affirmative. [*Farrar v. Hobby*, 506 U.S. 103, 105 (1992)]. The *Hewitt* Court considered "whether a party who litigates to judgment and loses on all of his claims can nonetheless be a 'prevailing party' for purposes of an award of attorney's fees" and answered in the negative. [*Hewitt v. Helms*, 482 U.S. 755, 757 (1987)]. And the *Buckhannon* Court considered "whether th[e] term ['prevailing party'] includes a party that has failed to secure a judgment on the merits or a court-ordered consent decree, but has nonetheless achieved the desired result because the lawsuit brought about a voluntary change in the defendant's conduct." [*Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 600 (2001)]. The Court again answered in the negative. *Id.*
> . . . .
> [In *Parham v. Southwestern Bell Telephone Co.*, 433 F.2d 421 (8th Cir. 1970)] the plaintiff didn't prove his claim at trial; rather, in reversing the district court's dismissal in part, the Eighth Circuit "h[e]ld as a matter of law" that the defendant company had discriminated against black Americans in violation of Title VII. *Parham*, 433 F.2d at 427. But the court also affirmed the district court's denial of injunctive relief due to changes the company made to its hiring practices after the plaintiff sued. *Id.* at 429. Nonetheless, our sister circuit reasoned that the plaintiff's "lawsuit acted as a catalyst which prompted" the company to change

> its behavior and determined that the plaintiff
> had "prevailed in his contentions of racial
> discrimination against blacks generally" such
> that he was entitled to reasonable attorney's
> fees.  *Id*. at 429-30.

*Reyazuddin*, 988 F.3d at 797-98.  The circuit court went on to conclude that Ms. Reyazuddin was a prevailing party but *not* "because she catalyzed the County to change its behavior by filing a lawsuit; rather, she's a prevailing party because she proved her claim to a jury before the County capitulated by transferring her[.]"  *Id*.  The current case is more analogous to *Buckhannon* than *Farrar*, *Parham, or Reyazuddin*.  In other words, with regard to the Baltimore Brew, it is at best a classic catalyst theory case.  The Brew received no monetary judgment, no jury verdict in its favor, and no injunctive relief.  As will be discussed more below, the opinion of the Fourth Circuit focused on Ms. Overbey's First Amendment rights in the substantive portion of the decision. For the Brew, it found that the allegations in the complaint (without regard to any evidence outside the pleadings) sufficient to allege an ongoing or future injury necessary for standing. There was no ruling on the merits of its First Amendment claim. The Brew may have been "successful" in that "it obtained from the City everything it sought through litigation," (ECF No. 73, at 17), because the City ceased use of the contested non-disparagement clause, however, this does not change the fact that there was no change at all in the *legal* relationship between these parties.

(*See Buckhannon*, 532 U.S. at 598-99)("A 'prevailing party' is one who has been awarded some relief by a court.  *See, e.g., Hanrahan v. Hampton*, 446 U.S. 754, 758 [1980].  Both judgments on the merits and court-ordered consent decrees create a material alteration of the parties' legal relationship and thus permit an award . . . [a] defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial imprimatur on the change.").  Here, while the Fourth Circuit did rule on the merits, it did so in the context of Ms. Overbey's claim, and the voluntary cessation of the practice had preceded that decision.  Thus, the Brew is not a "prevailing party" and is not entitled to compensation for any work done solely on its behalf.  The Brew contends that it would be "impractical" to back out the hours that counsel spent solely on its claims.  The court disagrees and has successfully identified 81.2 hours in Plaintiffs' submissions which bill for work done for "media plaintiff" or "the Brew" or work relating to "standing" and "News Agencies' First Amendment Rights." (*See* ECF Nos. 69-2 & 69-5).  Accordingly, it is entirely possible for the court to calculate a lodestar figure which does not include any compensations for hours devoted solely to the Brew's claims and the court will do exactly that.

**B.   Ms. Overbey is Entitled to Attorneys' Fees**

Ms. Overbey, unlike the Brew, is unquestionably a "prevailing party" as this court entered an order on September 21, 2020, granting summary judgment in her favor and awarding her $31,500 in damages plus pre-judgment interest.  (ECF No. 65).  As the City concedes, such order constitutes an enforceable judgment that materially altered the legal relationship between Ms. Overbey and the City.  (*See* ECF No. 72, at 12) ("Plaintiff Overbey is a prevailing party[.]").  Thus, Ms. Overbey is entitled to recover attorneys' fees and costs as a prevailing party under § 1988.

**A.   Lodestar Calculation**

Having concluded that Ms. Overbey is entitled to attorneys' fees, the court must next calculate the proper amount to award.

**1.   Hourly Rate**

"To determine a reasonable hourly rate, the lodestar method looks to the prevailing market rates in the community where the court sits." *Nat'l Wildlife Federation v. Hanson*, 859 F.2d 313, 317 (4th Cir. 1988).  In the District of Maryland, attorneys' fees are presumed in line with those prevailing in the community if they abide by the Guidelines Regarding Hourly Rates contained in Appendix B of the Local Rules.[1]  "[T]he burden rests with the fee

---

[1] The Local Rules provide non-binding guidelines regarding reasonable hourly rates that vary depending on how long an attorney has been admitted to the bar.  The Local Rules put forth the following guidelines: $150-225 for lawyers admitted to the bar

applicant to establish the reasonableness of a requested rate." *Robinson*, 560 F.3d at 244 (quoting *Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990)).

As discussed above, Ms. Overbey was represented in this case by counsel from both the Maryland ACLU and the Washington D.C. office of Crowell & Moring.  While the case was litigated in Baltimore, Maryland, Crowell & Moring asks that the court award its attorneys *Laffey* billing rates.  Counsel asserts that such rates "are broadly in line with the prevailing rates for legal services in complex federal litigation in the Washington, D.C. area."  (ECF No. 69, at 14) (citing *Young v. Sarles*, 197 F.Supp. 3d 38, 49 (D.D.C. 2016).  The requested *Laffey* rates for attorneys who worked on this case are as follows:

| Name | Years in Practice | Requested Laffey Rate |
|------|-------------------|-----------------------|
| Daniel W. Wolff | 19 | $759 |
| Benjamin Wastler | 10 | $440 |
| Alexandra Nkechi Kanu | 6 | $465 |
| Tyler O'Connor | 6 | $465 |
| Brian C. Lewis | 5 | $465 |

The City contends the court should reduce the requested hourly rates because, in some instances, such rates double or triple the

---

less than five years; $165-300 for lawyers admitted for five to eight years; $225-350 for lawyers admitted for nine to fourteen years; $275-425 for lawyers admitted for fifteen to nineteen years; and $300-475 for lawyers admitted for twenty years or more.  The rate for paralegals and law clerks is $95-150.

rates authorized by the guidelines.[2]  Crowell & Moring acknowledges that such rates exceed the local rates in the Baltimore market and this court's guideline rates but contends that awarding such rates is reasonable nonetheless because the politically sensitive nature of the case required the retention of independent counsel from outside the Baltimore market.  Moreover, counsel contends the higher rates are justified because the case was novel and complex; because the *Laffey* rates are significantly lower than the rates regularly charged by the firm to paying clients; and because the court's guideline rates are not binding and reflect rates that are several years old.  The court recognizes that the guideline rates were last updated some time ago, in 2014.  It also recognizes that the ACLU encountered some challenges in retaining a Baltimore-based law firm to assist in litigating a lawsuit against the City.  Nonetheless, the ACLU was not required to retain co-counsel from Washington, D.C. and could have found counsel from elsewhere in Maryland, or even, another state.  Likewise, while the case raised novel and complex constitutional issues of significant importance, the case was highly desirable for these same reasons.  Finally, Crowell & Moring voluntarily entered the case on a *pro bono* fee

---

[2]  The City also argues that even if the court did accept Washington, D.C. rates, Plaintiff has not met her burden of providing sufficient evidence that such rates are the prevailing market rates in the Washington, D.C. area.  The court need not reach this argument because it will not award the *Laffey* rates.

arrangement.   Thus, even taking the *Johnson* factors into consideration, the court is not persuaded that the *Laffey* rates are reasonable rates and will adjust the Crowell & Moring hourly rates as follows:

| Name | Years in Practice | Rate to be Awarded[3] |
|------|-------------------|----------------------|
| Daniel W. Wolff | 19 | $500 |
| Benjamin Wastler | 10 | $350 |
| Alexandra Nkechi Kanu | 6 | $300 |
| Tyler O'Connor | 6 | $300 |
| Brian C. Lewis | 5 | $300 |

The City does not contest the hourly rates sought by the ACLU attorneys and such rates fall within the court's guideline range and below local Baltimore rates.   (ECF No. 69-8, at 4-6).   The court agrees that the rates sought by ACLU attorneys, Deborah A. Jeon and Nicholas Taichi Steiner, and paralegals, Amy Cruice and Gina Elleby, are reasonable.   Thus, the court will not make any adjustments to the hourly rates sought by the ACLU team and the rates awarded will be the same as the rates sought, as follows:

| Name | Years in Practice | Rate to be Awarded |
|------|-------------------|-------------------|
| Deborah A. Jeon | 34 | $475 |
| Nicholas T. Steiner | 5 | $240 |
| Amy Cruice | Paralegal | $150 |
| Gina Elleby | Paralegal | $150 |

---

[3] These rates reflect the top of the court's guideline range, with the exception of Mr. Wolff, whose hourly rate is slightly higher than the top of the guidelines.

### 2.    Reasonable Hours Worked

The ACLU and Crowell & Moring provide itemized records that list the date of the work, who did the work, the time spent, and a brief description of the work.  (ECF Nos. 69-1 - 69-5).[4]  As instructed by the Local Rules, they divide the litigation into phases.  Specifically, counsel assert they worked a total of 1507 hours: 323 hours on case development and background; 229.3 hours on pleadings; 270.1 hours on motions practice round I; 414.6 hours on appellate practice; 30.15 hours on settlement; 55.65 hours on motions practice round II; 58.65 hours on fee petition preparation done prior to November 1, 2020; and 125.55 hours on fee petition preparation done between November 1 and December 20, 2020, including replying to the City's opposition brief.[5]  (ECF Nos. 73-4 - 73-7).  The City argues that significant reductions to this figure are warranted because none of the 414.6 hours billed for appellate-related work is recoverable and because 103 hours' worth

---

[4] Crowell & Moring has exercised billing judgment in deciding to forego recovery for all work done on this case by an additional three partners, three associates, and various support staff resulting in a reduction of 506 hours.  (*See* ECF No. 69, at 17 n.14).  Additionally, the ACLU has exercised billing judgment in its decision to forego recovery for all work done on the case by attorney, David Rocah, and law clerk, Abby Nyantaki.  (*Id.*, at n.15).

[5] Motions practice round I encompassed defending against the City and BPD's motions to dismiss or for summary judgment.  Motions practice II encompassed preparing Ms. Overbey's motion for summary judgment on liability and damages on remand following unsuccessful settlement efforts.

of time entries are objectionable for various reasons.  (*See* ECF Nos. 72, at 11-12 & 72-2, at 1-3).  The court will address these arguments in turn.

The City argues that the court may not award any fees related to work done on Ms. Overbey's appeal because any application for appeal-related attorneys' fees must first be made to the appellate court.  The City asserts that "[t]he Fourth Circuit has yet to rule on whether appeal-related attorneys' fees can be awarded by the trial court"  and that this court should follow the lead of the Ninth and Tenth Circuits in holding that a district court does not have the power to award fees for work performed in the Courts of Appeals.  (ECF No. 72, at 14) (citing *Flitton v. Primary Residential Mortg., Inc.* 614 F.3d 1173, 1180 (10th Cir. 2010); *Crumpacker v. State of Kansas*, 474 F.3d 747, 755-56 (10th Cir. 2007); *Cummings v. Connell*, 180 L.R.R.M (BNA) 2122 (9th Cir. 2006)).  Plaintiff, on the other hand, insists courts in the District of Maryland routinely award fees for appellate work.  While not entirely free from doubt, the court finds that a trial court may, in fact, award attorneys' fees for work performed on appeal.  *See McManama v. Lukhard*, 616 F.2d 727, 730 (4th Cir. 1980) (per curiam) (remanding to the district court "for an assessment of additional attorneys' fees against the appealing defendant to compensate the plaintiffs for the expense of their successful defense of [defendant's] appeal"); *Everhart v. Bd. of Educ. of Prince George's*

*Cnty.*, 2016 WL 7131469 at *4 (D.Md. Dec. 5, 2016) (awarding "attorneys' fees and costs for all work performed related to the Fourth Circuit appeal[.]").

Next, the court turns to the City's contention that further reductions in hours are warranted for: (1) 11 hours billed for research on *Monell* liability; (2) 19.55 hours billed for multiple attendees to participate in a moot court held on October 25, 2018; (2) 45.45 hours billed for three attorneys to prepare for and attend oral arguments at the Fourth Circuit on January 29-30, 2019; (3) 8.4 hours billed for ACLU associate Nicholas Steiner's participation on three *amicus* calls; and (4) 17.45 hours billed for conference calls in which multiple attorneys participated.

On November 28 and 29, 2018, Crowell & Moring associate Tyler O'Connor billed eleven hours for researching and drafting a memo on *Monell* liability. (ECF No. 69-5, at 65). The City contends that it should not be responsible for the cost of this research because the *Monell* doctrine was not asserted in the litigation and accordingly, a paying client would object to such charge. The record shows that the *Monell* doctrine *was* asserted during the course of the litigation. Specifically, the BPD raised *Monell* as a defense to liability on Plaintiffs' § 1983 claims in its original motion to dismiss. (ECF No. 22, at 2) ("A municipality may only be liable under § 1983 'when execution of a government's policy or custom . . . inflicts the injury.' *Monell v. Dep't of Soc. Servs.*

*of City of New York*, 436 U.S. 658, 694 (1978).   Yet, having acknowledged that the BPD is not a party to the settlement agreement containing the 'gag order' at issue, Plaintiffs have identified no coherent substitute theory for BPD's liability.").  Thus, while it was not inappropriate for Mr. O'Connor to research the doctrine and prepare a memo on his findings, the fees here are sought against the City, not the BPD, which was dismissed from the suit.   The court will deduct the hours spent related to this task.

    Next, the City contends that the court should strike 19.55 hours billed for four attorneys to participate in a moot court held on October 25, 2018, in preparation for argument at the Fourth Circuit.   (ECF No. 72-2, at 2).   The participants included two attorneys from the ACLU, Deborah A. Jeon and Nicholas Steiner, and two attorneys from Crowell & Moring, Daniel Wolff and Alexandra Nkechi.   The City argues that such hours constitute duplicate billings that run afoul of Local Rules, Guideline 2(d) which provides that:

> Generally, only one lawyer is to be
> compensated for client, third party, and
> intra-office conferences, although if only
> one lawyer is being compensated the time
> may be charged at the rate of the more
> senior lawyer.   Compensation may be paid
> for the attendance of more than one lawyer
> where justified for specific purposes such
> as periodic conferences of defined duration
> held for the purpose of work organization,
> strategy, and delegation of tasks in cases
> where such conferences are reasonably

>               necessary for the proper management of the
>               litigation.

Local Rules, Appendix B, Guideline 2(d).  Ms. Overbey argues, and
the court agrees, that a moot court held in preparation of a
pending oral argument, does not fall within Guideline 2(d)'s ambit
which refers only to "common occurrences" such as "intra-office
conferences."  While the court would not find it reasonable to
award fees for an unlimited number of attorneys to participate in
an unlimited number of moot courts, having four attorneys
participate in a single moot court was reasonable, even if there
were multiple attorneys from each firm involved.  Thus, the court
will not strike any of the 19.55 hours collectively expended on
the moot court.

     The City next contests the 45.45 hours billed between January
29-30, 2019, for Crowell & Moring partner, Daniel Wolff, and ACLU
attorneys, Deborah A. Jeon and Nicholas Steiner, to prepare for,
travel to, attend, and debrief oral argument at the Fourth Circuit.
The City argues that, because only one attorney (Daniel Wolff)
actively participated on the record at the hearing, Guideline 2(c)
instructs against awarding fees for any time expended by Ms. Jeon
or Mr. Steiner.  Guideline 2(c) provides that "Only one lawyer for
each party shall be compensated for attending hearings."  Mr.
Steiner billed 10.2 hours: 3 hours for travel to Richmond; 1 hour
to attend oral argument; 2 hours to debrief after oral argument;

2 hours observing other en banc cases; and 2.20 hours to travel home. Ms. Overbey responds that the court should not write off Mr. Steiner's time because "the importance of oral argument at the Fourth Circuit . . . necessitates the presence of junior attorneys to assist both with preparations and to provide arguing counsel with case and record citations where helpful and appropriate to assist arguing counsel with the presentation of argument and in responding to the [c]ourt's questions." (ECF No. 73, at 13). The court disagrees and will not award Mr. Steiner any time spent relating to oral argument, resulting in a deduction of 10.2 hours. Ms. Jeon and Mr. Wolff's time entries related to oral argument are not as clearly resolved as a single entry of time often accounts for time spent on multiple activities. For example, Mr. Wolff logged 7.75 hours on January 30, 2019 for "final prep for argument, attend and present argument, post argument conferral with ACLU-MD, and return to DC from argument in Richmond, VA; office conference with Mr. Elgarten about this." (ECF No. 72-2, at 3). The same is true for Ms. Jeon who logged 10 hours for attending oral argument, meeting with co-counsel, traveling home, and preparing a summary of the events for Plaintiffs. (*Id.*, at 2). Still, the numbers of hours requested by Ms. Jeon and Mr. Wolff are low and appear to be a reasonable amount of time for completing all the specified activities listed. Mindful of the fact that Crowell & Moring has already shaved off 506 hours from the number

of hours it requests compensation for, the court will not deduct additional hours for time spent by Mr. Wolff or Ms. Jeon.

The City also protests 8.4 hours billed by Mr. Steiner for participation in three *amicus* calls on January 12, 2018; February 2, 2018; and April 6, 2018 on the ground that such billings are redundant because Ms. Jeon was also on the calls. The court first notes that if the City contests only *Mr. Steiner's* participation on the calls, as it states,[6] it should seek a reduction of only 1.5 hours as this is the total amount of time billed by Mr. Steiner for all three calls. (ECF No. 72-2, at 2). For the sake of narrowing the issues in dispute, Ms. Overbey does not contest a reduction of 1.5 hours. Thus, the court will deduct 1.5 hours of Mr. Steiner's time.

The City also disputes 12.25 hours billed on June 29, 2017, by Crowell & Moring attorneys, Daniel Wolff and Benjamin Wastler, and ACLU paralegal, Gina Elleby on the ground that such billings are duplicative because they bill for the same work. (ECF No. 72-2, at 2). Plaintiff responds that such billings are related but not duplicative. The court finds, on the basis of the billing

---

[6] The City states that, as a general matter, it does not contest instances in which one attorney from Crowell & Moring and one attorney from the ACLU billed for the same activity, only instances in which more than one attorney from the same firm billed for the same activity. (*See* ECF No. 72, at 11 n.5).

descriptions, that such entries are similar in nature but not duplicative.  No reductions in hours will be made.

Finally, the City argues that Crowell & Moring overstaffed four conference calls resulting in 17.45 hours of duplicative billing entries in violation of Guideline 2(d).  The calls were held on April 18, 2016; December 12, 2016; February 3, 2017; and May 26, 2017.  Each lasted roughly one hour, and the billing entries describe the calls as discussing "strategy for [the] case going forward."  (ECF No. 72-2, at 1).  The April 2016 call was staffed by two ACLU attorneys and three Crowell attorneys; while the other three calls were staffed by one ACLU attorney and two or three Crowell attorneys.  (*Id.*).  The court finds that such calls, occurring roughly once a quarter, are of the type of "periodic" planning calls that Guideline 2(d) exempts as warranting participation by more than one attorney.  *See* Local Rules, Guideline 2(d) ("Compensation may be paid for the attendance of more than one lawyer where justified for specific purposes such as periodic conferences of defined duration held for the purpose of work organization, strategy, and delegation of tasks in cases where such conferences are reasonably necessary for the proper management of the litigation.").  Accordingly, the court will not deduct any hours for time spent on such calls.

The court is satisfied that, after taking into consideration the above deductions, as well as the deduction already made by

24

counsel in the exercise of their billing judgment, the number of hours remaining represents a reasonable number of hours.  For clarity, the court finds that the below reflects the number of hours appropriately expended by each attorney for purposes of calculating a fee award.  Accordingly, at the reasonable billing rates put forth in the preceding section, the initial lodestar figure is $523,416.50.

| ACLU Hours | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Name | Case Dev. | Pleadings | Motions I | Appellate Practice | Settlement | Motions II | Fee Prep. | Post-Motion | Reductions | Total Hours |
| Deborah Jeon | 60.3 | 28.3 | 7.8 | 68.3 | 16.4 | 9.4 | 10.8 | 29.3 | -3.7 | 226.9 |
| Nick Steiner | 1.8 | 4 | 27.3 | 23.2 | N/A | 0.5 | N/A | N/A | -11.7 | 45.1 |
| Amy Cruice (paralegal) | 0.6 | N/A | N/A | N/A | N/A | N/A | 1.1 | 2 | 0 | 3.7 |
| Gina Elleby (paralegal) | 17.3 | N/A | N/A | 0.6 | N/A | N/A | N/A | N/A | 0 | 17.9 |
| Crowell & Moring Hours | | | | | | | | | | |
| Name | Case Dev. | Pleadings | Motions I | Appellate Practice | Settlement | Motions II | Fee Prep. | Post-Motion | Reductions | Total Hours |
| Daniel Wolff | 55.5 | 30.75 | 42.75 | 136.25 | 13.75 | 5.25 | 5.5 | 9 | -9.25 | 289.5 |
| Alexandra Kanu | 46.25 | 44 | 26.75 | 80.75 | N/A | N/A | N/A | 8 | -30 | 175.75 |
| Tyler O'Connor | 59.75 | 14.5 | 49.5 | 105.5 | N/A | 25.5 | 5.25 | 31.25 | -11 | 280.21 |
| Brian C. Lewis | 2.5 | N/A | N/A | N/A | N/A | 15 | 36 | 30 | 0 | 83.5 |
| Ben Wastler | 79 | 107.75 | 116 | N/A | N/A | N/A | N/A | N/A | -38.25 | 264.5 |
| Leland Frost | N/A | N/A | N/A | N/A | N/A | N/A | N/A | 4.75 | 0 | 4.75 |
| Elizabeth Dawson | N/A | N/A | N/A | N/A | N/A | N/A | N/A | 11.25 | 0 | 11.25 |
| *With the exception of Nick Steiner and Tyler O'Connor's reductions, all other reductions in hours come from the backing out of hours spent on the Brew's claims. | | | | | | | | | | |

### 3.  Adjustments to the Lodestar

"The product of reasonable hours times a reasonable rate does not end the inquiry.  There remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the 'results obtained.'" *Eckerhart*, 461 U.S. at 434.  One such consideration is the extent of the plaintiff's success, i.e., whether she has succeeded on all or only some of her claims.

In this situation two questions must be addressed.  First, did the plaintiff fail to

prevail on claims that were unrelated to the claims on which he succeeded?  Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?

In some cases a plaintiff may present in one lawsuit distinctly different claims for relief that are based on different facts and legal theories.  In such a suit, even where the claims are brought against the same defendants—often an institution and its officers, [] counsel's work on one claim will be unrelated to his work on another claim.  Accordingly, work on an unsuccessful claim cannot be deemed to have been "expended in pursuit of the ultimate result achieved." *Davis v. County of Los Angeles*, 8 E.P.D. ¶ 9444, at 5049 (CD Cal. 1974). The congressional intent to limit awards to prevailing parties requires that these unrelated claims be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim.

It may well be that cases involving such unrelated claims are unlikely to arise with great frequency.  Many civil rights cases will present only a single claim. In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories.  Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis.  Such a lawsuit cannot be viewed as a series of discrete claims.  Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

*Id.*, at 434-35.  The City argues that, while Ms. Overbey was a prevailing party, she sought declaratory relief, injunctive

relief, and monetary damages but ultimately obtained only monetary damages and only on her constitutional claim. Thus, the City asserts that Ms. Overbey was only "marginally" successful and should be awarded a reduced lodestar figure to account for her unsuccessful claims. (ECF No. 72-2, at 12). While the court did not ultimately grant declaratory or injunctive relief, it is myopic to state that she "only" received monetary relief. The decision of the Fourth Circuit was a type of declaratory relief, concluding that the non-disparagement clause was unenforceable. And, while the City had stopped using the clause by November 2017, it had continued to defend its prior use vigorously.

Moreover, the billing entries do not allow for a simple procedure for segregating counsels' work on each of Ms. Overbey's claims nor can the court conceive of a non-arbitrary procedure for segregating the time spent by counsel on each claim. All of Ms. Overbey's claims arose out of the same common core of facts involving the City's use of a highly restrictive non-disparagement clause in settling police brutality cases and involved related legal theories. (*See* ECF No. 5). Moreover, the bulk of counsels' time was likely spent on Ms. Overbey's successful First Amendment claim given that it was the most complex and novel claim raised, as both parties concede. (ECF No. 62, at 2-4) (the City describing Ms. Overbey's victory as "in the nature of a virtual lightning strike" that "no reasonable person ever expected . . . would bear

fruit"). Thus, the court is satisfied that the amount of fees awarded under its initial lodestar calculation is reasonable in relation to the degree of Ms. Overbey's success. The court will not make any further adjustments on this ground.

Finally, the City argues that its "precarious" financial position warrants a downward adjustment, particularly because its "available resources" for "provid[ing] fundamental and urgently needed services to its residents" are "waning." (ECF No. 72, at 16-17) (citing *Arnold v. Burger King Corp.*, 719 F.2d 63, 67 (4th Cir. 1983). As the Court of Appeals for the D.C. Circuit noted in its opinion in *Copeland v. Marshall*, 641 F.2d 880, 894-95 (D.C. Cir. 1980), neither the statutory text of § 1988 nor the dual policies underlying the statute's enactment (vindicating civil rights and deterrence) warrant awarding a lower fee award when the defendant is the government. To the contrary, the court stated that "[i]f anything, it is even more important to provide adequate fees to [civil rights] litigants who prevail against the government . . . [because] litigants against the government face greater obstacles than litigants against private defendants." *Id.* The amount of a reasonable award in this case is unchanged by the fact that such award is to be paid from the City's tax revenues.

The City also contends that the lodestar fee award is disproportionate to the damages award and that the court should make a downward adjustment on this basis to avoid awarding

28

Plaintiff a "windfall."  The proportionality of the fee award to the damage award here is inconsequential.

> Congress did not intend for fees in civil rights cases, unlike most private law cases, to depend on obtaining substantial monetary relief.  Rather, Congress made clear that it "intended that the amount of fees awarded under [§ 1988] be governed by the same standards which prevail in other types of equally complex Federal litigation, such as antitrust cases and *not be reduced because the rights involved may be nonpecuniary in nature*.

*City of Riverside v. Rivera*, 477 U.S. 561, 575–76 (1986) (citing Senate Report, at 6, U.S. Code Cong. & Admin. News 1976, p. 5913). "Congress recognized that reasonable attorney's fees under § 1988 are not conditioned upon and need not be proportionate to an award of money damages."  *Id.*  Hence, the City is not entitled to a downward adjustment on this ground either.

**B.  Litigation Costs**

Ms. Overbey also requests reimbursement of $20,378.42[7] in litigation costs, including federal court filing fees, express delivery, transcript services, inhouse duplicating, copying and binding, process server fees, local transportation, train fare, and legal research.  A prevailing party is entitled to reasonable litigation expenses under Section 1988.  *Daly v. Hill*, 790 F.2d 1071, 1084 (4th Cir. 1986).  Costs that may be charged include

---

[7] The ACLU requests only $593.94 in costs while Crowell & Moring requests $19,784.48 in costs. (*See* ECF Nos. 69-3, at 2 and 69-6, at 4).

"those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services." *Spell v. McDaniel*, 852 F.2d 762, 771 (4th Cir. 1988). While the costs of computerized legal research are recoverable, *N. Carolina Right to Life Pol. Action Comm. v. Leake*, 939 F. Supp. 2d 526, 530-31 (E.D.N.C. 2013), Plaintiffs fail to identify which research costs are attributable to research for Ms. Overbey's claims and which are attributable to research for the Brew's claims. The total amount of costs attributable to legal research is $9,995.02. Because it is all but certain that some portion of this amount is attributable to research done on behalf of the Brew related to standing, the court will subtract 10% ($999.50) from the total amount of costs recovered for legal research. The other remaining costs are reasonable and will be awarded in full. Accordingly, the total amount of costs awarded will be $19,378.92.

## IV. Conclusion

Accordingly, Plaintiffs' motion for attorneys' fees will be granted in part and denied in part. Ms. Overbey will be awarded $523,416.50 in attorneys' fees and $19,378.92 in costs, for a grand total of $542,795.42. The Brew will be awarded nothing. A separate order will follow.

      /s/
DEBORAH K. CHASANOW
United States District Judge
